UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

LEEBER REALTY LLC,

                     Plaintiff,

        -v-

TRUSTCO BANK,

                     Defendant.
----------------------------------------------------------------x

No.  17-cv-2934

ECF Case

**COMPLAINT**

Plaintiff Leeber Realty LLC ("Plaintiff" or "Landlord"), by its undersigned attorneys, for its complaint against defendant Trustco Bank ("Defendant or "Tenant"), alleges as follows:

## INTRODUCTION

1.      Plaintiff is the owner of a commercial property located at 21 Route 59, Nyack, Rockland County, New York (the "Premises").

2.      Defendant is a federal savings bank that offers banking services to businesses and consumers.

3.      On or about December 31, 2003, Plaintiff and Defendant entered into a 20-year written lease (the "Lease") pursuant to which Defendant leased a portion of the Premises from Plaintiff for the purpose of operating a retail banking branch.

4.      On or about November 14, 2008, pursuant to the settlement agreement in a prior state court litigation between Plaintiff and Defendant, the parties agreed to extend the term of the Lease for an additional five years.

5. On or about March 27, 2017, Defendant, without any legal or contractual right to do so, notified Plaintiff that it was terminating the Lease as of March 31, 2017 and, on or about that date, abandoned the Premises.

6. On April 4, 2017, Plaintiff sent Defendant written notice that Defendant was in default under the Lease and demanded that Defendant cure its default.

7. Defendant failed to cure its default and, on April 18, 2017, Plaintiff sent Defendant a written notice declaring an "Event of Default" under the Lease based on Defendant's nonpayment of rent and abandonment of the Premises.

8. Plaintiff now brings this action to recover damages, including lost rental income, interest and late fees, arising from Defendant's breach of the Lease.

9. Plaintiff also seeks to recover its attorneys' fees and the costs of suit pursuant to an express provision of the Lease.

PARTIES

10. Plaintiff is a single-member limited liability company organized under the laws of New York.

11. Plaintiff's sole member is Bernard Cohen, a citizen of the State of Florida residing at 6380 Commons Circle, West Palm Beach, FL.

12. Upon information and belief, Defendant is a federal savings bank with its home office at 5 Sarnowski Drive, Glenville, NY.

JURISDICTION AND VENUE

13. For the purposes of diversity jurisdiction, a limited liability company's citizenship is determined by the citizenship of each of its members.

14. Pursuant 12 U.S.C. § 1464(x), a federal savings bank is deemed a citizen of the state where its home office is located.

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) insofar as Plaintiff is a citizen of Florida and Defendant is a citizen of New York, and the amount in controversy in this action exceeds $75,000, exclusive of interest and costs.

16. This Court has personal jurisdiction over Defendant pursuant to CPLR § 301 because Defendant's home office is located in New York and/or Defendant is doing business in New York.

17. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district and/or because a substantial part of property that is the subject of this action is situated in this judicial district.

## FACTS ALLEGED

### Plaintiff and the Premises

18. Plaintiff is the owner of the Premises, which contains a commercial building with approximately 3,200 in leasable square feet and a parking lot.

19. The Premises are located on a commercial thoroughfare in Nyack, Rockland County, New York.

### Defendant's Business

20. Upon information and belief, Defendant offers banking services to consumers and businesses.

21. Upon information and belief, Defendant has over 150 branch locations across five states.

### The Lease

22. On or about December 31, 2003, Plaintiff and Defendant entered into a Lease covering approximately 1,600 square feet of the building on the Premises (the "Leased Premises"). (A copy of the Lease, which includes a First Amendment to the Lease, dated January 29, 2004, is attached hereto as Exhibit 1.)

23. The Lease provides, in §§ 1.01 and 5.01, that Defendant shall occupy and utilize the Leased Premises for the operation of a retail bank branch.

24. The Lease provides, in § 5.03, that Defendant shall continuously operate and keep open its retail bank branch at the Leased Premises during the entire Lease term.

25. The Lease provides, in § 1.01, that the term of the Lease shall be 20 years starting as of the "Lease Commencement Date."

26. The Lease Commencement Date under the Lease occurred on or about October 25, 2004.

27. The Lease provides, in § 1.01, for an annual base rental payment ("Minimum Annual Rent") of $56,000.00 for Lease years 1-5, payable in 12 equal monthly installments, each due on or before the first day of each month during the Lease term.

28. The Lease further provides, in § 1.01, that the Minimum Annual Rent shall increase by 15% during Lease years 6-10, such that the Minimum Annual Rent for Lease years 6-10 was $64,400.00.

29. The Lease further provides, in § 1.01, that the Base Rent shall increase by an additional 12% for every five Lease years after Lease years 6-10, such that the Minimum Annual Rent for Lease years 11-15 is $72,128.00, and the Minimum Annual Rent for Lease years 16-20 is $80,783.36.

30. The Lease further provides, in § 1.01, that Defendant shall have the option to extend the Lease term for two consecutive terms of five years each.

31. The Lease further provides, in § 1.01, that the Minimum Annual Rent during the first option term (the "First Option") is $90,477.36.

32. The Lease further provides, in §§ 8.01, 9.02 and 14.02, that, in addition to Minimum Annual Rent, Defendant shall pay a pro rata share, based on the square footage of the Leased Premises as a percentage of the total tenantable square footage of the building, of: (a) Plaintiff's operating costs for the Premises, plus a 15% administration fee; (b) Plaintiff's real estate taxes for the Premises; and (c) Plaintiff's insurance costs for the Premises (collectively, "Additional Rent" and together with Minimum Annual Rent, "Rent").

33. Payments of Additional Rent, under § 4.02 of the Lease, are due within 10 days of demand or with the Minimum Annual Rent installment payment in the month following the date Additional Rent is due.

34. For any Rent payment that is not paid within ten days of its due date, § 4.03 of the Lease provides for a late fee of $0.05 for each dollar in Rent that is overdue.

35. The Lease provides, in § 4.03, that all overdue payments shall accrue interest at the lesser of 8% per annum or the highest lawful interest rate allowed under New York law.

36. The Lease provides, in § 4.02(d), that Tenant's obligation to pay rent shall survive any termination of the Lease.

37. The Lease provides, in § 7.01, that during the Lease term, "Landlord shall not be required to make any repairs or improvements of any kind" to the Leased Premises "except for necessary exterior or structural repairs," and that during the term of the Lease, "Tenant shall, at its own cost and expense, take good care of and make necessary non-structural repairs to the interior of" the Leased Premises as well as "the fixtures and equipment therein and appurtenances thereto, including, but not limited to the exterior and interior windows, doors and entrances; store fronts; signs, showcases; floor coverings, interior walls, columns, partitions; electrical, lighting, heating, plumbing, sewage facilities and air conditioning and ventilating equipment."

38. The Lease provides, in § 16.01, that if the Leased Premises are damaged, in whole or in part, such that the Leased Premises are rendered wholly or partially untenantable, the sole remedy available to Defendant is an abatement of Minimum Annual Rent to the extent the Leased Premises are rendered untenantable, until such time as the condition is repaired, unless the Leased Premises are rendered wholly untenantable and Plaintiff elects to cancel the Lease.

39. Under the express terns of the Lease, including the language in § 16.01, unless the Lease is canceled by Landlord, Tenant cannot avoid its obligations to pay Rent for the full term of the Lease and cannot claim constructive eviction from the Premises.

40. Under § 20.01(a) of the Lease, "[f]ailure on the part of the Tenant to make payment of Rent on any other monetary payment due under th[e] Lease within ten

6

(10) days after written notice of non-payment thereof" shall constitute an "Event of Default" under the Lease.

41. Under § 20.01(e) of the Lease, "[e]xcepting only those periods when Tenant is prevented from performing by virtue or strike, fire, unavoidable casualty or other event reasonably beyond the control of Tenant, . . . Tenant's abandonment or vacation of" the Leased Premises shall constitute an "Event of Default" under the Lease.

42. Under § 20.02 of the Lease, which lists Plaintiff's remedies upon an Event of Default by Defendant, Plaintiff may elect to terminate the Lease, in which case Plaintiff shall be entitled to recover from Defendant "all damages incurred by reason of such breach, including the cost of recovering the [Leased Premises] plus the total of all Minimum Annual Rent, Additional Rent and all other charges reserved in th[e] Lease payable over the remainder" of the Lease term "discounted to net present value utilizing a 6% discount rate."

43. Under § 20.08 of the Lease, Plaintiff shall be entitled to recover from Defendant all "reasonable legal fees and costs" incurred in enforcing the terms of the Lease.

44. Section 21.05 of the Lease provides that the Lease is governed by New York Law.

### The Lease Extension

45. In 2006, Defendant commenced an action against Plaintiff in New York State Supreme Court, Rockland County, entitled Trustco Bank v. Leeber Realty LLC, Index No. 006158/2006 (the "State Court Action").

46. In November 14, 2008, the parties settled the State Court Action pursuant to a settlement read into the record in open court.

7

47. As part of the parties' settlement agreement in the State Court Action, Defendant agreed to "exercise[ ] its [F]irst [O]ption to extend th[e] Lease and renew th[e] [L]ease for an additional five-year period."

48. As a result of Defendant having exercised its First Option under the Lease as part of the settlement of the State Court Action, an additional five years was added to the original 20-year Lease term (the "Lease Extension") at a Minimum Annual Rent of $90,477.36 per year.

Defendant's Breach of the Lease

49. On March 27, 2017, Defendant delivered a written notice (the "Notice") to Plaintiff asserting that "since in or about 2009, hazardous environmental conditions, none of which were caused by [Defendant], including but not limited to mold and sewage backup, have existed at the [Leased Premises]."

50. Defendant's Notice further asserts that and that such "environmental hazards persist at the [Leased] Premises, such that [Defendant's] business has intermittently been forced to shut down . . . ."

51. Defendant's Notice further asserts that "[g]iven that [Plaintiff] has failed and refused to remedy the ongoing environmental hazards at the [Leased Premises], [Defendant] hereby elects to terminate the [Lease] . . . effective March 31, 2017."

52. Defendant's Notice further asserts that Plaintiff's "refusal to make necessary repairs places [Plaintiff] in breach of Section 5.06, Quiet Enjoyment, of the Lease and has rendered the [Leased Premises] uninhabitable" and that Defendant considers its "termination of the Lease a 'constructive eviction' whereby [Defendant] shall

discontinue its [L]ease obligations in their entirety and shall not be responsible for any charges due under the remaining term."

53. Defendant's purported election to terminate the Lease based upon a constructive eviction is void and has no legal effect because the Lease does not provide Defendant with the right to elect to terminate the Lease.

54. Defendant's sole remedy under the Lease in the event any portion of the Leased Premises are untenantable is an abatement of Minimum Annual Rent to the extent and for the period that the Leased Premises are untenantable.

55. Defendant's purported election to terminate the Lease based upon a constructive eviction is void and has no legal effect because, under the express terms of the Lease, Defendant waived its right to claim constructive eviction.

56. Defendant's purported election to terminate the Lease based upon a constructive eviction is void and has no legal effect because, the alleged environmental "conditions" and "hazards" described in Defendant's Notice are insufficient to establish a constructive eviction.

57. Defendant's purported election to terminate the Lease based upon a constructive eviction is void and has no legal effect because, under the terms of the Lease, the duty and obligation to repair and correct the alleged environmental "conditions" and "hazards" described in Defendant's Notice belongs to the Tenant, not the Landlord.

58. Despite having no legal basis for terminating the Lease, Defendant abandoned the Premises not later than April 1, 2017.

59. Despite having no legal basis for terminating its obligations to pay Rent under the Lease, Defendant failed to pay the Rent installment that was due on or before April 1, 2017.

60. At the time Defendant abandoned the Premises and stopped paying Rent, there were no extant conditions at the Premises that rendered the Premises untenantable or otherwise diminished the extent to which Defendant could beneficially enjoy the Premises.

61. On April 4, 2017, Plaintiff sent a written response to Defendant's Notice (the "Response").

62. Plaintiff's Response rejected Defendant's purported termination of the Lease and the purported termination of any of Defendant's obligations under the Lease.

63. Plaintiff's Response advises Defendant that Defendant is in default of its obligation to pay the Rent installment that was due for April 2017, and that, if Defendant does not cure its payment default within ten days of its receipt of Plaintiff's Response, Defendant's payment default would ripen into an Event of Default under the Lease.

64. Plaintiff's Response further states that Defendant's abandonment of the Premises on or about April 1, 2017 constitutes an Event of Default under the Lease, but that Plaintiff would waive this Event of Default if Defendant cured its payment default within ten days of its receipt of Plaintiff's Response.

65. Defendant received Plaintiff's Response on April 5, 2017.

66. Defendant failed to make any Rent or other payment to Plaintiff within ten days of Defendant's receipt of Plaintiff's Response.

67. On April 18, 2017, Plaintiff sent a written notice to Defendant notifying Defendant that an Event of Default had occurred (the "Default Notice").

68. Plaintiff's Default Notice states that Defendant failure to pay Rent for the month April 2017 and its failure to cure its payment default constitutes an Event of Default under § 20.01(a) of the Lease.

69. Plaintiff's Default Notice states that Defendant's abandonment of the Premises constitutes an Event of Default under § 20.01(e) of the Lease.

70. Defendant has failed to respond or take any corrective action in response to Plaintiff's Default Notice.

AS AND FOR A FIRST CAUSE OF ACTION
(Breach of Contract - Damages)

71. Plaintiff repeats and realleges the foregoing paragraphs of the complaint as if fully set forth herein.

72. Plaintiff and Defendant are parties to a written Lease.

73. Plaintiff has fully performed its obligations under the Lease.

74. Defendant has breached the Lease, as described above, by, *inter alia*, failing to pay Rent, failing to cure its payment default within the cure period, and abandoning the Premises prior to the end of the Lease term, as extended by the Lease Extension.

75. As a result of Defendant's breach of the Lease, Plaintiff has been injured and is entitled to recover damages in an amount to be determined at trial, which damages include, but are not limited to: (a) an amount not less than $1,042,569.00 in Minimum Annual Rent due through the end of the Lease term as extended by the Lease Extension; (b) an amount not less than $301,440.00 in Additional Rent due through the end

of the Lease term as extended by the Lease Extension; (c) late fees pursuant to § 4.04 of the Lease in an amount to be determined at trial; (d) interest on all past due Rent payments at 8% per annum; and (e) all amounts incurred by Plaintiff in recovering the Leased Premises.

AS AND FOR A SECOND CAUSE OF ACTION
(Breach of Contract - Reasonable Attorneys' Fees and Costs)

76. Plaintiff repeats and realleges the foregoing paragraphs of the complaint as if fully set forth herein.

77. Section 20.08 of the Lease provides that "[i]f any legal fees and costs are incurred by Landlord in enforcing the terms of th[e] Lease, the Tenant shall be liable for such reasonable legal fees and costs."

78. Plaintiff has incurred and will continue to incur legal fees and costs in seeking to enforce the terms of the Lease.

79. Plaintiff is entitled to recover its reasonable legal fees and costs in an amount to be determined at the conclusion of this action and upon satisfaction of any judgment.

WHEREFORE, Plaintiff demands judgment as follows:

A. On the First Cause of Action, damages in an amount to be determined at trial of not less than $1,343,209.00 plus late fees, interest at 8% per annum, and other costs incurred in recovering the Premises;

B. On the Second Cause of Action, Plaintiff's attorneys' fees and costs in an amount to be determined at the conclusion of this action;

C. The costs of suit and other applicable interest; and

D.  For such other and further relief as is just and proper.

Dated: New York, New York
April 21, 2017

        GREENBERG FREEMAN LLP

        By: /s/ *Michael A. Freeman*
           Michael A. Freeman
           110 East 59th Street, 22nd Floor
           New York, New York 10022
           (212) 838-3121
           Attorneys for Plaintiff