# Exhibit 1

# LEASE AGREEMENT

# BY AND BETWEEN

# LEEBER REALTY LLC

## AS LANDLORD

## AND

# TRUSTCO BANK

## AS TENANT

## 21 ROUTE 59

## NYACK, NEW YORK



## TABLE OF CONTENTS

**ARTICLE I:**     **BASIC LEASE PROVISIONS AND DEFINITIONS**................1
Section 1.01.     Basic Lease Provisions and Definitions............................1

**ARTICLE II:**     **DEMISED PREMISES** ................................................6
Section 2.01.     Demised Premises. .....................................................6
Section 2.02.     Condition of the Demised Premises. ...........................7
Section 2.03.     Surrender of the Demised Premises. ..........................7

**ARTICLE III:**     **TERM OF LEASE** .....................................................8
Section 3.01.     Lease Term. ...............................................................8
Section 3.02.     Commencement of Lease Term. ...,..............................8
Section 3.03.     Holding Over. .............................................................8
Section 3.04.     Option to Extend the Lease Term.................................9

**ARTICLE IV:**     **RENT**.........................................................................9
Section 4.01.     Minimum Annual Rent. ................................................9
Section 4.02.     Additional Rent. .........................................................9
Section 4.03.     Interest, Late Charges and Returned Check Fees. .......10
Section 4.04.     Trash Removal. ...........................................................10

**ARTICLE V:**     **USE OF THE DEMISED PREMISES** .........................11
Section 5.01.     Use of the Demised Premises. ....................................11
Section 5.02.     General Prohibited Uses. ............................................11
Section 5.03.     Tenant's Operation of Business. ..................................11
Section 5.04.     Failure of Tenant to Operate Business.........................11
Section 5.05.     Rules and Regulations. ...............................................12
Section 5.06.     Quiet Enjoyment.........................................................12
Section 5.07.     Environmental. ...........................................................12

**ARTICLE VI:**     **TENANT'S CONSTRUCTION AND MAINTENANCE**................14
Section 6.01.     Tenant's Plans and Specifications...............................14
Section 6.02.     Tenant's Construction, Installations and Alterations. .....................14
Section 6.03.     Signs, Awnings and Canopies. ...................................15
Section 6.04.     Laws, Waste or Nuisance............................................15
Section 6.05.     Mechanic's Lien .........................................................16

**ARTICLE VII:**     **MAINTENANCE OF BUILDING; ACCESS TO DEMISED PREMISES** ................................................................16
Section 7.01.     Repairs.......................................................................16
Section 7.02.     Access to Demised Premises.......................................16

**ARTICLE VIII:**     **REAL ESTATE TAXES**...............................................17
Section 8.01.     Real Estate Taxes. .....................................................17
Section 8.02.     Taxes on Leasehold. ..................................................19
Section 8.03.     Taxes on Rentals. ......................................................19

i

**ARTICLE IX:**    COMMON AREAS AND FACILITIES .................................20
Section 9.01.    Control of the Building and the Common Facilities by Landlord. ...20
Section 9.02.    Building Operating Costs. .....................................................20
Section 9.03.    Excavation. ...........................................................................21

**ARTICLE X:**    UTILITIES ...............................................................................22
Section 10.01.    Utilities. ................................................................................22

**ARTICLE XI:**    ASSIGNMENT; SUBLEASE .................................................23
Section 11.01.    Assignment or Subletting. .....................................................23

**ARTICLE XII:**    RELOCATION. .......................................................................25
Section 12.01.    Intentionally Omitted. ...........................................................25

**ARTICLE XIII:**    NOTICES .................................................................................25
Section 13.01.    Notices. .................................................................................25

**ARTICLE XIV:**    INDEMNITY; PROPERTY AND LIABILITY INSURANCE .........25
Section 14.01.    Indemnity. ............................................................................25
Section 14.02.    Insurance. .............................................................................26
Section 14.03.    Increase in Insurance Premiums. .........................................27
Section 14.04.    Waiver of Subrogation. .........................................................27
Section 14.05.    Insured's Release. ................................................................27
Section 14.06.    Notice to Landlord. ..............................................................27

**ARTICLE XV:**    LIABILITY OF LANDLORD ....................................................28
Section 15.01.    Waiver of Liability. ...............................................................28
Section 15.02.    Tenant's Risk of Loss. ..........................................................28
Section 15.03.    Consent. ................................................................................28
Section 15.04.    Successors. ...........................................................................28

**ARTICLE XVI:**    DAMAGE CLAUSE. ................................................................29
Section 16.01.    Destruction. ..........................................................................29

**ARTICLE XVII:**    CONDEMNATION ...................................................................30
Section 17.01.    Condemnation. .....................................................................30

**ARTICLE XVIII:**    SECURITY DEPOSIT ..............................................................31
Section 18.01.    Security Deposit. ..................................................................31

**ARTICLE XIX:**    PRIORITY OF LEASE ............................................................31
Section 19.01.    Subordination, Attornment, Power of Attorney. ...................31
Section 19.02.    Estoppel. ...............................................................................32
Section 19.03.    Recording. .............................................................................32

**ARTICLE XX:**    LANDLORD'S REMEDIES ....................................................33
Section 20.01.    Default. ..................................................................................33
Section 20.02.    Landlord's Remedies. ...........................................................34

KL3 2296505 3

ii

Section 20.03.    Intentionally Omitted...................................................................35
Section 20.04.    Redemption; Reinstatement.......................................................35
Section 20.05.    Waiver of Trial by Jury...............................................................36
Section 20.06.    Accord and Satisfaction.............................................................36
Section 20.07.    No Waiver....................................................................................36
Section 20.08.    Legal Fees....................................................................................37

**ARTICLE XXI:    MISCELLANEOUS PROVISIONS** ..........................................37
Section 21.01.    Tenant Defined; Use of Pronoun. .............................................37
Section 21.02.    Delivery of Lease........................................................................37
Section 21.03.    Entire Agreement. ......................................................................37
Section 21.04.    Partial Invalidity..........................................................................38
Section 21.05.    Applicable Law. ..........................................................................38
Section 21.06.    Rules of Construction.................................................................38
Section 21.07.    Brokerage Commission..............................................................38
Section 21.08.    Force Majeure..............................................................................38

KL3:2296505 3

983 75 9

This lease (the "Lease") is made and entered into the date set forth below by and between LEEBER REALTY LLC, a New York limited liability company, herein called "Landlord," and TRUSTCO BANK, a federal savings bank, herein called "Tenant."

In consideration of the mutual covenants contained herein, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, Landlord and Tenant, intending to be legally bound hereby, agree with each other as follows:

## ARTICLE I: BASIC LEASE PROVISIONS AND DEFINITIONS

### Section 1.01. Basic Lease Provisions and Definitions.

Wherever used in this Lease, the following terms shall have the meanings indicated. Each reference in this Lease to any of the Basic Lease Provisions in this Section 1.01 shall be deemed and construed to incorporate all of the terms provided under such Basic Lease Provision, provided that the Basic Lease Provisions shall be controlled by the specific terms and provisions of this Lease relating to the subject matter of the Basic Lease Provision.

### Date of Lease:

| | |
|---|---|
| **Date of Lease:** | December ___, 2003 |
| **Address:** | 21 Route 59, Nyack, NY 10960 |
| **Demised Premises or Premises** (See Section 2.01): | Premises containing approximately total square foot area of 1,600 square feet plus mezzanine area and adjacent drive-thru, as depicted on Exhibit A attached hereto and made a part hereof, together with the non-exclusive right with others to use the parking areas adjacent to the Building |

### Landlord and Tenant:

| | |
|---|---|
| **Landlord's Address for Notices:** | Leeber Realty, LLC<br>805 High Woods Dr.<br>Franklin Lakes, NJ 07417<br>Attention: Bernard Cohen<br>Phone: 201-847-0319 |
| **Landlord's Address for Rent Payments:** | 805 High Woods Dr.<br>Franklin Lakes, NJ 07417 |

1

*983759*

| | |
|---|---|
| **Tenant's Name and Billing Address:** | Trustco Bank<br>5 Sarnowski Drive<br>Glenville, NY 12302<br>Attn: Robert Cushing<br>Phone: (518) 381-3696<br>Facsimile: (518) 381-3668 |
| **Trade Name**<br>(See Section 5.01): | Trustco Bank |
| **Building** | An existing building containing approximately 3,200 square feet as depicted on Exhibit A.  In the event any additional square footage is added to the Building or an additional building is added adjacent thereto on land which is not separately assessed for tax purposes, such additional square footage or adjacent building to the extent the same is made available for lease by Landlord shall be deemed for the purposes hereof to constitute part of the Building. |

## Permitted Use:

| | |
|---|---|
| **Permitted Use**<br>(See Section 5.01): | The Premises shall be occupied and used for the operation of a retail bank branch.<br><br>Tenant shall not use the Demised Premises, or permit the use thereof, for any other use or purpose.  Landlord shall not rent any other space in the Building for the purpose of a retail bank branch or "ATM". |

## Term:

| | |
|---|---|
| **Lease Term:** | Twenty (20) years beginning on the Rent Commencement Date (as hereinafter defined). |

| | |
|---|---|
| **Commencement Date** | The date of the mutual execution and delivery of this Lease by Tenant and Landlord. Tenant shall promptly apply to obtain all necessary federal regulatory approvals required for it to operate its business as a bank branch in the Demised Premises. If Tenant is denied such approvals after the exercise of its good faith, reasonable efforts to obtain the same, Tenant may terminate this Lease without further obligation to Landlord upon five (5) days' notice to Landlord which notice shall contain a copy of such denial(s) from the applicable banking authorities ("Tenant's Approval Contingency"). Notwithstanding the foregoing, if Tenant is unable to obtain its required approvals within sixty (60) days after the Commencement Date, Landlord may terminate this Lease without further obligation to Tenant upon five (5) days' notice to Tenant at anytime thereafter, unless within such five (5) day period, Tenant either obtains its required approvals or waives Tenant's Approval Contingency. |
| **Rent Commencement Date:** | Ninety (90) days after the Possession Date (as hereinafter defined). |
| **Possession Date:** | The date Landlord makes the Demised Premises available to Tenant to commence its work as evidenced by a written notice given by Landlord to Tenant. |
| **Expiration Date:** | The last day of the final calendar month of the Lease Term. The Lease shall end on the Expiration Date, unless sooner terminated as otherwise provided herein. |
| **Option Terms:** | There shall be two (2) consecutive Option Terms having a term of five (5) years each (individually, an "Option Term", and collectively, the "Option Terms"). Each Option Term shall commence on the day immediately following the last day of the prior Term and shall terminate on the last day of the last calendar month in the applicable Option Term. |
| **Exercise of Option Term:** | Tenant must notify Landlord of its election to exercise each Option Term by written notice given no sooner than 360 days and no later than 180 days prior to the last day of the then current Term. |

*983759*

## Rent:

| | |
|---|---|
| **Minimum Annual Rent (See Section 4.01):** | $56,000.00 payable in equal monthly installments of $4,666.67 from the Rent Commencement Date through to the end of the fifth (5) Lease Year thereafter, Minimum Annual Rent shall increase by fifteen percent (15%) for lease years 6-10 and by twelve percent (12%) for every five (5) Lease Years thereafter as follows: |

*2004 - 2008*

| Lease Years: | Minimum Annual Rent: | Monthly Payment |
|---|---|---|
| 6-10 | $64,400.00 | $5,366.67 |
| 11-15 | $72,128.00 | $6,010.67 |
| 16-20 | $80,783.36 | $6,731.95 |

*2009 - 2013*
*2014 - 2019*
*2020 - 2024*
*2025 - 2029*

| | |
|---|---|
| **First Option Term Minimum Annual Rent:** *EXCISED IN COURT* | $90,477.36 payable in equal monthly installments of $7,539.78 from the commencement of the first Option Term through to the expiration of the first Option Term. |
| **Second Option Term Minimum Annual Rent:** | $101,334.64 payable in equal monthly installments of $8,444.55, from the commencement of the Second Option Term through to the expiration of the Second Option Term. |
| **Late Fee on Late Payments (See Section 4.03):** | Five cents ($0.05) for each dollar overdue |
| **Interest on Late Payments (See Section 4.03):** | The lesser of: (i) eight percent (8%) per annum; or (ii) the highest lawful rate of interest permitted at the time in the state of New York calculated as of the due date. |
| **Late Payment:** | Any payment not made within ten (10) days after its due date. |

*( 983759*

**Additional Rent:**

| | |
|---|---|
| **Security Deposit (See Section 18.01):** | So long as Trustco Bank is the Tenant hereunder, no security deposit shall be required. |
| | In the event of an assignment or sublease of the Premises in accordance with the terms hereof, Landlord reserves the right to require a security deposit to be deposited as of the effective date of such sub-lease or assignment in an amount equal to six (6) months of the then applicable Monthly Minimum Rent. |
| **Tax on Rentals (See Section 8.03):** | All amounts provided for in this Article I are before taxes. If a sales tax or other tax on rentals is imposed, such tax is in addition to, and not included in, the amounts provided for in this Article I unless specifically stated to the contrary. |
| **Operating Cost Percentage (See Section 9.02):** | Tenant shall pay a pro rata share of the Building's operating costs plus an administrative fee of fifteen (15%) thereof. The Operating Cost Percentage used to determine Tenant's pro rata share shall be a fraction, the numerator of which is 1600 and the denominator of which is the number of square feet of leasable floor area within the Building, whether leased, vacant or occupied. |
| **Real Estate Tax Percentage (See Section 8.01):** | Tenant shall pay a pro rata share of the Building's total real estate taxes which are currently estimated to be approximately $14,500.00. The foregoing amount is only an estimate of real estate taxes based on present amounts payable and in no event shall the same serve as a cap in the event of future increases. The Real Estate Tax Percentage used to determine Tenant's pro rata shall be a fraction, the numerator of which is 1600 and the denominator of which is the number of square feet of leasable floor area within the Building, whether leased, vacant or occupied. |

| | |
|---|---|
| **Insurance Charge**<br>(See Section 14.02): | Tenant shall pay a pro rata share of the Building's total insurance costs. The Insurance Percentage shall be a fraction, the numerator of which is 1600 and the denominator of which is the number of square feet of leasable floor area within the Building, whether leased, vacant or occupied. The sum of the Tenant's pro rata share of the Building's operating costs plus an administrative fee of 15% thereof plus the Tenant's pro rata share of the Building's total insurance costs shall not exceed $3.50 per square foot of the Leased Premises. |

**Miscellaneous:**

| | |
|---|---|
| **Tenant's Insurance Requirements**<br>(See Article XIV): | |
| Commercial General Liability: | $3,000,000.00 |
| Personal property: | Full Replacement |
| **Broker (See Section 21.07):** | Royal Properties and Richard Dalton |
| **Signs:** | Drawings and specifications shall be completed in accordance with Section 6.03 and Exhibit D. |

## ARTICLE II: DEMISED PREMISES

### Section 2.01. Demised Premises.

(a)   Landlord, in consideration of the rents to be paid and the covenants to be performed by Tenant, hereby leases the Demised Premises to Tenant, and Tenant hereby leases the Demised Premises from Landlord, for the Lease Term.   All measurements of the Demised Premises and of leasable area are made from the outside of exterior walls and from the center of interior walls.

(b)   It is expressly agreed that nothing contained in this Lease shall be construed as a grant or rental of (and the Demised Premises shall not include) (i) any space above the finished ceiling of the Demised Premises (or, if none, above the bottom edge of the framework supporting the roof), (ii) any rights in the roof or exterior of the building within which the Demised Premises is located, or (iii) the land upon which the Demised Premises is located.

**Section 2.02.  Condition of the Demised Premises.**

Landlord shall at its cost and expense perform the items of work described as Landlord's work in Exhibit B, attached hereto and made a part hereof ("Landlord's Work"). Any and all work to the Demised Premises in addition to Landlord's Work which is necessary for Tenant to open and operate its business in accordance with the terms of this Lease (the "Tenant's Work") shall be Tenant's obligation to perform at Tenant's sole cost and expense. Tenant will indemnify Landlord and save it harmless from and against any and all claims, actions, suits at law or equity, judgments, expenses, costs, liabilities, fines and debts in connection with any injury, loss or damage during any period of Tenant's Work. The opening by Tenant of its business shall constitute an acknowledgment by Tenant that the Demised Premises are in the condition called for by this Lease and that Landlord has satisfactorily performed all of Landlord's Work with respect thereto.

**Section 2.03.  Surrender of the Demised Premises.**

At the Expiration Date or upon the earlier termination of this Lease in accordance with the terms and provisions hereof, Tenant shall quit and surrender the Demised Premises in "broom clean" condition and in the same condition as the Demised Premises were in upon delivery of possession, reasonable wear and tear excepted, and shall surrender all keys for the Demised Premises to the Building's property manager and shall inform the property manager of all combinations of locks, safes and vaults, if any, in the Demised Premises. Any alterations, additions, improvements and fixtures installed or paid for by Tenant upon the interior or exterior of the Demised Premises (if approved by Landlord as herein provided), other than unattached moveable trade fixtures and decorations, shall at the Expiration Date or upon the earlier termination of this Lease in accordance with the terms and provisions hereof, at Landlord's option, become the property of Landlord. If Landlord chooses not to retain such alterations, additions, improvements and fixtures, then Tenant shall, prior to the Expiration Date or earlier termination of this Lease, remove such of these as Landlord chooses at Tenant's expense and shall restore the Demised Premises to its condition immediately preceding Tenant's installation of such alterations, additions, improvements and fixtures. Should Tenant desire to leave any personal property in the Demised Premises, it shall request permission in writing from Landlord, describing such property, not less than thirty (30) days prior to such surrender; and absent such permission in writing, all such property shall be removed by Tenant. Tenant's obligation to observe or perform the covenants contained in this Section shall survive the expiration or earlier termination of the Lease Term. Notwithstanding anything to the contrary herein, Tenant shall not be responsible for any repairs or alterations to the Demised Premises beyond those required to restore the Demised Premises to a condition substantially similar to the condition of the same at the commencement of this Lease.

## ARTICLE III:  TERM OF LEASE

**Section 3.01.  Lease Term.**

The Lease Term shall be for the period set forth in Section 1.01, unless sooner terminated in accordance with the terms and provisions of this Lease.  "Lease Year" shall mean the twelve (12) consecutive calendar months commencing with the first day of the first full calendar month of the Lease Term, and thereafter with each succeeding anniversary thereof.  If the Rent Commencement Date is other than the first day of a calendar month, the first Lease Year shall include the period from the Rent Commencement Date through the end of the month in which the Rent Commencement Date occurs.  Either Landlord or Tenant may request of the other upon ten (10) days' notice that each party execute a certificate confirming the Rent Commencement Date and such other information as the parties hereto may reasonably request.  The failure to execute such a certificate shall not effect or otherwise impair the obligations of the parties hereunder including, without limitation, the occurrence of the Rent Commencement Date.

**Section 3.02.  Commencement of Lease Term.**

(a)    The Lease Term, and Tenant's obligation to pay "Rent" (as defined in Section 4.02) shall commence on the Rent Commencement Date, as set forth in Section 1.01 and from and thereafter Minimum Annual Rent shall be paid as set forth in Section 1.01.

(b)    The parties hereby acknowledge that certain obligations under various Articles herein commence subsequent to the Commencement Date but prior to the Rent Commencement Date, including, but not limited to, Tenant's obligations to take possession, to obtain its required federal regulatory approvals, construct the Demised Premises, to obtain insurance, to indemnify Landlord, to waive certain Landlord liability and to pay for all utilities; and the parties agree to be bound by all of such obligations from and after the date of this Lease.

(c)    Landlord shall not under any circumstances be subject to any liability whatsoever to Tenant, and Tenant shall not under any circumstances be entitled to rescind or terminate this Lease, for any delay in Landlord's delivery of the Demised Premises to Tenant.

**Section 3.03.  Holding Over.**

Tenant shall not have the right to remain in possession of the Demised Premises after either the Expiration Date or the earlier termination of the Lease without having first received Landlord's written consent.  If Tenant remains in possession of the Demised Premises thereafter without Landlord's consent, such possession shall be a default under the Lease and Tenant shall be deemed a holdover tenant on the following terms and conditions:  Tenant's use and occupancy of the Demised Premises shall be at a rate equal to double the Minimum Annual Rent as was due during the final month of the Lease Term, calculated on a per diem basis, plus all Additional Rent due in accordance

with the terms of this Lease; Tenant shall be fully obligated to perform all of the terms and conditions contained in this Lease except as expressly modified by this paragraph; Landlord shall not be obligated or liable to Tenant for any failure to perform under this Lease; and Tenant shall not be deemed a "month-to-month" tenant.

## Section 3.04. Option to Extend the Lease Term

Tenant shall have the right and option to extend the Lease Term by two (2) consecutive sixty (60) month option terms upon the same terms and conditions set forth herein, except as to Minimum Annual Rent which shall be as set forth in Section 1.01, provided and expressly conditioned upon that at such time as each Option Term is exercised, Tenant is not in default under this Lease.  Tenant shall exercise each of its Option Terms by serving written notice upon Landlord of its election to exercise each such Option Term as provided in Section 1.01 under Exercise of Option Terms. In the event Tenant does not timely exercise an Option Term as provided above, or is in default under this Lease at the time of such exercise or at any time thereafter prior to the commencement of the applicable Option Term, then, in such event, Tenant shall have no right to such Option Term and the exercise of such Option Term shall be null and void and of no further force or effect.  If Tenant does not timely exercise an Option Term, Landlord may act in reliance on such election not being exercised by the time period set forth above, and Tenant hereby waives any claim or right to invoke or exercise such election after the above prescribed time period.  Time shall be of the essence with respect to Tenant's exercise of said extension option.

## ARTICLE IV: RENT

### Section 4.01. Minimum Annual Rent.

Tenant hereby covenants and agrees to pay to Landlord the Minimum Annual Rent set forth in Section 1.01, without any prior demand therefor and without any offset or deduction whatsoever, in equal monthly installments on or before the first day of each month during the Lease Term, in advance, at the address set forth in Section 1.01 or at such other place designated by Landlord.  All Rent shall be pro rated for any partial month at the beginning or end of the Term.

### Section 4.02. Additional Rent.

(a)     In addition to Minimum Annual Rent all other payments to be made by Tenant to Landlord shall be deemed to be, and shall become, additional rent hereunder ("Additional Rent"), whether or not the same be designated as such. Unless otherwise provided elsewhere in this Lease, Additional Rent shall be due and payable upon the earlier of ten (10) days after demand is made therefor or together with the next succeeding installment of Minimum Annual Rent.   Landlord shall have the same remedies for failure to pay Additional Rent as for a non-payment of Minimum Annual Rent.

(b)   Tenant acknowledges that this Lease contains charges for Additional Rent, which may include, but are not limited to, charges for Real Estate Taxes, Operating Costs, insurance premiums and utilities (as such terms are hereafter defined), which are calculated according to various billing periods. Within one (1) month after the calculation of the actual amounts due for the Additional Rent charges estimated hereunder, Landlord and Tenant shall make appropriate adjustments of such estimated payments and the party owing money shall remit same to the other party within ten (10) days of the submission by Landlord to Tenant of said final calculation. The provisions of this paragraph shall supersede any inconsistent provisions of this Lease to the contrary and shall survive the expiration or earlier termination of this Lease.

(c)   As used herein, "Rent" shall mean Minimum Annual Rent and Additional Rent, individually or in the aggregate.

(d)   Tenant's obligation to pay any and all Rent under this Lease, and Landlord's and Tenant's obligation to make any adjustments as provided above, shall survive any expiration or termination of this Lease.

**Section 4.03.  Interest, Late Charges and Returned Check Fees.**

(a)   If any check from Tenant delivered in full or partial payment of any amounts due hereunder is not honored because of insufficient funds, uncollected funds, or any other reason, Tenant shall pay to Landlord an administrative charge of Fifty Dollars ($50.00) per dishonored check and, at Landlord's option, all subsequent payments due from Tenant hereunder shall be made by cash, bank draft, certified check, money order or electronic funds transfer directly to the order of Landlord, its managing agent or designee.

(b)   In the event of a late payment, as defined in Section 1.01, then a late fee in the amount set forth in Section 1.01 shall become immediately due to Landlord, as liquidated damages for failure to make timely payment.  Said late fee shall be Additional Rent and shall be payable together with the next installment of Minimum Annual Rent.

(c)   All late payments shall bear interest at the rate set forth in Section 1.01 until received by the Landlord in readily available funds.   Said interest shall be Additional Rent and shall be payable together with the next installment of Minimum Annual Rent.

**Section 4.04.  Trash Removal.**

Tenant shall pay the cost of removal of garbage or refuse from the Demised Premises and if Landlord shall provide or designate a service for picking up refuse and garbage, then Tenant shall use same at Tenant's expense provided that such service is priced competitively.

## ARTICLE V:  USE OF THE DEMISED PREMISES

### Section 5.01.  Use of the Demised Premises.

Tenant shall use and operate the Demised Premises solely for the Permitted Use set forth in Section 1.01, only under the trade name set forth in Section 1.01 hereof and in full compliance with all governmental rules, regulations and requirements including, without limitation, obtaining and maintaining any and all licenses, permits and approvals necessary for the operation of Tenant's business at the Demised Premises. Tenant shall not use, or permit the use, of the Demised Premises for any other use or purpose whatsoever and shall not operate its business at the Demised Premises, or permit any operation, under any other trade name whatsoever.

### Section 5.02.  General Prohibited Uses.

Tenant shall not use the Demised Premises or permit the Demised Premises to be used (i) for any purpose or in any manner that violates any legal requirement and/or the requirements of the insurance underwriter(s) of the Building; (ii) for the sale, rental or display of drug paraphernalia, or any goods and/or services that, in the sole and absolute discretion of Landlord, are inconsistent with the image of a community or family-oriented center; (iii) as a massage parlor, adult bookstore or second-hand store; or (iv) to keep live animals of any kind unless otherwise permitted by this Lease. Tenant shall keep the Demised Premises, and every part thereof, in a clean and wholesome condition, free from any objectionable noises, loud music, odors or nuisances.

### Section 5.03.  Tenant's Operation of Business.

Tenant shall continuously operate and keep open to the public the Demised Premises during the entire Lease Term.  Tenant shall conduct its business in the Demised Premises in a manner consistent with other Trustco Bank branches in the Westchester/Rockland County areas located in comparable locations.

### Section 5.04.  Failure of Tenant to Operate Business.

Except where the Demised Premises are untenantable by reason of fire, casualty or causes beyond Tenant's control not resulting from the negligent act or omission to act of Tenant, its servants, agents, employees, invitees, licensees and concessionaires and without limiting any other rights or remedies which may be available to Landlord, if Tenant (i) fails to take possession of the Demised Premises on the Possession Date; (ii) fails to commence Tenant's Work within ninety (90) days after the Possession Date and Landlord's approval of Tenant's plans and specifications, as required by Section 6.01, or thereafter fails diligently and continuously to prosecute Tenant's Work to completion; (iii) vacates, abandons or deserts the Demised Premises; or (iv) ceases operating its store in the Demised Premises then, in any such event, Landlord shall have the right to terminate this Lease and/or to continue to collect the Minimum Annual Rent and Additional Rent payable hereunder.

**Section 5.05. Rules and Regulations.**

Tenant agrees to abide by the rules and regulations attached hereto and made a part hereof as Exhibit C. Landlord may, from time to time, amend or add to the rules and regulations for the use and care of the Demised Premises, the Building, and the common areas and facilities, and Tenant agrees to comply with such reasonable amendments or additions immediately upon receipt of notice thereof.

**Section 5.06. Quiet Enjoyment.**

Tenant, upon paying the rents and performing all of the terms of this Lease on its part to be performed, shall peaceably and quietly enjoy the Demised Premises subject, nevertheless, to the terms of this Lease and to any mortgage, ground lease or agreements to which this Lease is subordinated.

**Section 5.07. Environmental.**

(a)     Tenant shall not use or suffer the Demised Premises to be used in any manner so as to create an environmental violation or hazard, nor shall Tenant cause or suffer to be caused any chemical contamination or discharge of a substance of any nature which is noxious, offensive or harmful or which under any Environmental Laws (as hereinafter defined), constitutes a hazardous substance or hazardous waste. Tenant shall not violate or suffer to be violated any Environmental Laws.

(b)     Tenant shall immediately notify Landlord in writing of any environmental concerns of which Tenant is, or becomes, aware or which are raised by any private party or government agency with regard to Tenant's business or the Demised Premises. Tenant shall notify Landlord immediately of any hazardous substances released at the Demised Premises, whether it is released by Tenant or otherwise.

(c)     Without limiting the foregoing, but as additional covenants thereto, Tenant specifically agrees that (i) Tenant shall not generate, manufacture, refine, transport, treat, store, handle, dispose or otherwise deal with any hazardous substances or hazardous waste as now or hereafter defined by applicable Environmental Laws; (ii) if at any time during the Lease Term there shall be required, with respect to the Demised Premises or any part thereof, any act pursuant to or in compliance with applicable law, including the filing of any required notice of sale or negative declaration affidavits or the preparation or effectuation of any remediation plans, Tenant shall immediately advise Landlord of same and Tenant shall be solely responsible for the cost of such compliance; and (iii) Tenant shall defend, indemnify and hold Landlord harmless against any claims, actions, fines, penalties, liability, loss, cost or expense, including consultants' and attorneys' fees and costs (whether or not legal action has been instituted), incurred by reason of any failure by Tenant to comply with any Environmental Laws now or hereafter in effect provided the need for such compliance was caused by Tenant's failure to comply with such Environmental Laws. For the purposes of this Article 5.07, the term "Tenant" shall be deemed to include Tenant, Tenant's agents, servants, employees and invitees.

(d)     Tenant expressly acknowledges its understanding and agreement that, during the Lease Term or at or after the Expiration Date (or earlier termination of this Lease), certain notices, filings (and, possibly, sampling plans, remediation plans and remediation work) may be required by law and, if this occurs, then Tenant shall in its own name or, if required, in the name of Landlord, comply, at Tenant's sole cost and expense, with all such applicable notices, filings and other required actions, and defend, indemnify and hold Landlord harmless from all costs and expenses related to the same provided and to the extent the need for such compliance was caused by Tenant's failure to comply with any Environmental Laws. However, Tenant shall file no documents or take any other action under this Section without Landlord's prior written approval thereof, and Landlord shall also have the right to file such documents or take such action instead or on behalf of Tenant (but still at Tenant's sole cost and expense), and Tenant shall cooperate with Landlord in so doing. Tenant shall (i) provide Landlord with copies of any documents filed by Tenant pursuant to any Environmental Laws; (ii) permit Landlord to be present at any inspection, on or off site, and at any meetings with government environmental officials; and (iii) provide Landlord with an inventory of materials and substances dealt with by Tenant at the Demised Premises, as well as such additional information for government filings or determinations as to whether there has been compliance with Environmental Laws.

(e)     Landlord shall have the right to enter the Demised Premises at any time during business hours upon prior reasonable notice to conduct tests to discover the facts of any alleged or potential environmental problem, except Landlord shall not have access to Tenant's vault or teller line at any time without a representation of Tenant present.

(f)     Landlord represents and warrants to its knowledge that as of the date hereof: (a) the Demised Premises are in compliance with all Environmental Laws (as hereinafter defined); (b) that there are no conditions on or about the Demised Premises existing currently that require cleanup, removal, remedial action, or other response pursuant to applicable Environmental Laws; (c) that Landlord is not a party to any litigation or administrative proceeding threatened against it, which asserts or alleges that Landlord violated Environmental Laws; (d) that neither the Demised Premises nor Landlord is subject to any judgment, decree, order or citation related to or arising out of Environmental Laws; and (e) that no permits or licenses are required under Environmental Laws relative to the Leased Premises.

The term "Environmental Laws" shall mean all federal, state, and local laws including statutes, regulations, ordinances, codes, rules and other governmental restrictions and requirements relating to environmental or hazardous substances.

For all incidents which occur prior to the Possession Date or after the Possession Date and are attributable to Landlord or another tenant, Landlord hereby indemnifies Tenant and holds Tenant harmless from and against any loss, liability, cost, damage, or expense, including, without limitation, reasonable attorneys fees, arising from the imposition or recordation of a lien, the incurrence of any cleanup and removal costs under any Environmental Laws with respect to the Leased Premises and abutting lands

13

owned by Landlord. and any liability to any third party in connection with any violation of any Environmental Laws or other action by Landlord or its agents. The provisions of this Section shall survive the expiration or earlier termination of this Lease.

## ARTICLE VI: TENANT'S CONSTRUCTION AND MAINTENANCE

### Section 6.01. Tenant's Plans and Specifications.

(a)     Tenant shall, promptly after the execution of this Lease, submit to Landlord, for Landlord's prior written approval, complete architectural and engineering plans and specifications of the Demised Premises, describing all the work which under this Lease is to be performed by Tenant.   Upon completion of final plans and specifications and Landlord's approval thereof, Tenant shall employ licensed, qualified contractors and sub-contractors to complete the Demised Premises in accordance with the said approved plans and specifications and in accordance with the other terms and provisions of this Lease.

(b)     Tenant acknowledges that Landlord's approval of Tenant's plans (i) does not eliminate the need for Tenant to obtain all necessary approvals and permits required from any public or governmental agency or authority having jurisdiction over the Building and (ii) should not be construed as a waiver of or the satisfaction of any laws, regulations, restrictions or requirements of record, conformance thereto being solely Tenant's responsibility.   Tenant also acknowledges that Landlord has no liability to Tenant or any other person or entity as a result of Landlord's approval of said plans for any defects, omissions, inconsistencies or shortcomings contained in such plans or the work to be performed in accordance therewith.   Landlord will cooperate with Tenant in obtaining necessary approvals and permits.

### Section 6.02. Tenant's Construction, Installations and Alterations.

(a)     All work or equipment, other than Landlord's Work, if any, shall be performed by Tenant at its own cost and expense and Tenant shall, without limitation, fully equip the Demised Premises with all trade equipment, furniture, operating equipment, furnishings, fixtures and exterior signs and any other equipment necessary for the proper operation of Tenant's business.   Whenever Tenant is performing work within the Demised Premises, Tenant shall commence such work as soon as is practical and shall diligently prosecute such work to its completion as soon as is practical after its commencement.   All fixtures installed by Tenant shall be new or completely reconditioned.   Tenant shall not do any construction work or alterations, nor shall Tenant install any equipment other than trade fixtures without first obtaining Landlord's written approval and consent. Tenant shall present to Landlord plans and specifications for such work at the time approval is sought in accordance with Section 6.01 above. Tenant shall commence its work promptly following Landlord's approval of Tenant's plans and specifications and shall diligently and continuously prosecute its work to completion so as to open for business as soon as possible but in no event, not later than six (6) months after the Rent Commencement Date.

14

(b)    Tenant may not perform any major repairs, renovations, remodeling or alterations to the Demised Premises without having first received the Landlord's written consent thereto.   Tenant shall, before performing any major repairs, renovations, remodeling or alterations to the Demised Premises, submit complete architectural and engineering plans and specifications of the Demised Premises, describing all of the major repairs, renovations, remodeling or alterations which Tenant proposes.  If Tenant is required to install additional ATM lighting to comply with any federal, state or local laws, ordinances and regulations (collectively, "Applicable Laws"), Tenant may install said lighting to the extent necessary to comply with such Applicable Laws without the Landlord's consent.

(c)    Tenant is obligated to use its best possible efforts to diligently pursue and obtain on the earliest possible date all necessary building and occupancy permits and licenses needed in order for Tenant to lawfully construct and operate its business within the Demised Premises at Tenant's sole cost and expense (Tenant's "Approval Obligations").   Landlord shall provide Tenant with all reasonable cooperation in obtaining such building and occupancy permits and licenses.

## Section 6.03.  Signs, Awnings and Canopies.

(a)    Tenant shall not place or suffer to be placed or maintain any sign, awning or canopy in, upon or outside the Demised Premises, without first obtaining Landlord's written approval and consent in each instance.  Tenant shall maintain any such sign or other installation as may be approved in good condition and repair.  All signs, awnings and canopies shall be subject to all laws and regulations and in compliance with the provisions of "Exhibit D - Sign Specifications", attached hereto and made a part hereof.

(b)    If Landlord (in its sole discretion) shall elect to renovate or remodel all or part of the Building, in order to facilitate any renovations or remodeling of the Building (including Tenant's facade), Tenant shall, upon request by Landlord and at Landlord's sole cost and expense, remove any or all of Tenant's signs and replace same with a new sign or signs in conformity with the uniform signage criteria of the new facade.

(c)    At the Expiration Date or earlier termination of the Lease, Tenant shall remove all of its exterior signs from the storefront, fascia and/or canopy and shall repair all damage caused by the initial installation and subsequent removal of such signage.

## Section 6.04.  Laws, Waste or Nuisance.

From and after the date Landlord makes the Demised Premises available to Tenant, Tenant shall, at its own cost and expense: (i) comply with all Applicable Laws affecting the Demised Premises now or hereafter in force including, without limitation, the Americans With Disabilities Act; (ii) comply with and execute all rules, requirements, and regulations of the Board of Fire Underwriters, Landlord's insurance companies and other organizations establishing insurance rates; and (iii) not suffer, permit or commit any waste or nuisance.  Tenant shall not perform any acts or carry on any practices which may injure the building or be a nuisance or menace to other tenants or the public.

**Section 6.05. Mechanic's Lien.**

Tenant shall promptly pay all contractors and materialmen, so as to minimize the possibility of a lien attaching to the Building, and should any such lien be made or filed, Tenant shall bond against or discharge the same within thirty (30) days after the filing thereof. In the event Tenant shall fail to bond or discharge a filed lien within the time provided for herein, Landlord, at its option, in addition to all other rights and remedies provided herein, may bond or pay the lien or claim without inquiring into the validity thereof. Tenant shall immediately, upon demand, reimburse Landlord for the amount so paid and the expenses related thereto including an administrative charge of fifteen percent (15%), plus legal interest thereon, as Additional Rent.

## ARTICLE VII:  MAINTENANCE OF BUILDING; ACCESS TO DEMISED PREMISES

**Section 7.01. Repairs.**

Landlord shall not be required to make any repairs or improvements of any kind upon the Demised Premises except for necessary exterior or structural repairs, provided that if such necessary exterior or structural repairs are required due to Tenant's acts or omissions, or those of Tenant's agents, employees or contractors, then Tenant shall be responsible for the costs of such repairs or improvements.  From and after the Possession Date, Tenant shall, at its own cost and expense, take good care of and make necessary non-structural repairs to the interior of the Demised Premises, and the fixtures and equipment therein and appurtenances thereto, including, but not limited to, the exterior and interior windows, doors and entrances; store fronts; signs; showcases; floor coverings; interior walls, columns and partitions; electrical, lighting, heating, plumbing, sewage facilities and air conditioning and ventilating equipment.  Tenant hereby waives any rights it may have to make repairs or perform maintenance as provided in any law, ordinance or regulation which may now exist or hereafter be enacted or enforced, which confers upon Tenant the right to make any repairs to the Demised Premises for the account of Landlord.  If Tenant installs any electrical equipment that overloads the lines in the Demised Premises or the Building, Tenant shall, at Landlord's option, be required to make whatever changes to such lines as may be necessary to render the same in good order and repair and in compliance with all insurance requirements and all legal requirements. If Landlord makes repairs by reason of Tenant's negligent act, Landlord may deem the cost of such repairs Additional Rent, and such cost shall be due and payable within ten (10) days after Landlord's demand therefor.  In the event of the failure of Tenant to make repairs or perform any act required by this Lease promptly as herein agreed, Landlord, in addition to any other rights, may as of right enter upon the Demised Premises without notice and make such repairs or perform such acts at the expense of Tenant, the cost thereof to be charged to Tenant as Additional Rent.

**Section 7.02. Access to Demised Premises.**

Landlord shall have the right to place, maintain and repair all utility equipment of any kind in, upon, around and under the Demised Premises as may be necessary for the

16

service of the Demised Premises and other portions of Landlord's property and Landlord (for itself and other tenants in the Building) hereby reserves the right to install, maintain, use, repair and replace pipes, ducts, conduits, wires, utilities and structural elements leading through, under and over the Demised Premises in locations which will not unreasonably interfere with Tenant's use thereof so long as same are installed below the finished floor, within or along a wall or column, or above or along the finished ceiling. Landlord shall also have the right to enter the Demised Premises at all reasonable times to inspect or to exhibit the same to prospective purchasers, mortgagees, ground lessors and tenants, and to make such repairs, additions, alterations or improvements as Landlord may deem desirable, except Landlord shall not have access to Tenant's vault or teller line at any time without a representative of Tenant present. Landlord shall be allowed to take all material in, to and upon the Demised Premises that may be required in connection with such repairs, additions, alterations or improvements without the same constituting an eviction of Tenant in whole or in part and the Rent reserved herein shall in no way abate while said work is in progress by reason of loss or interruption of Tenant's business or otherwise and Tenant shall have no claim for damages. If Tenant shall not be personally present to permit an entry into the Demised Premises when for any reason an entry therein shall be permissible, Landlord may enter the same by a master key or in an emergency by the use of force without rendering Landlord liable therefor and without in any manner affecting the obligations of Tenant under this Lease. The provisions of this Section shall in no way be construed to impose upon Landlord any obligation whatsoever for the maintenance or repair of the building or any part thereof except as otherwise herein specifically provided. During the six (6) months prior to the expiration of this Lease or any option term, Landlord may place upon the Demised Premises "for lease," "to let" or "for sale" signs, or other similar signs, which Tenant shall permit to remain thereon. Landlord shall have the exclusive right to use all or any part of the roof and exterior side walls of the Demised Premises for any purpose.

## ARTICLE VIII: REAL ESTATE TAXES

### Section 8.01. Real Estate Taxes.

Tenant shall pay, as Additional Rent, "Real Estate Taxes" in accordance with the following:

    (a)   "Real Estate Taxes" shall mean all taxes, possessory interest taxes, government property lease excise taxes, personal property taxes, excise taxes, levies, license and permit fees, payments in lieu of taxes and assessments, both ad valorem and non-ad valorem, levied, assessed or imposed at any time by any governmental authority, upon or against all or a portion of the land and/or Building, including site impact fees, water drainage and/or solid waste disposal levies and assessments, if any. If any Real Estate Taxes are permitted to be paid in installments, then all references in this Section to the dates on which Real Estate Taxes are payable shall be deemed to refer to the dates on which the installments are payable.

(b)     If at any time during the Lease Term the method of taxation then prevailing shall be altered so that any new tax, assessment, levy, imposition or charge or any part thereof, shall be imposed upon Landlord in place, or partly in place, of any Real Estate Taxes as heretofore defined, and shall be measured by or be based, in whole or in part, upon the Building or the rents or other income therefrom, then all such new taxes, assessments, levies, impositions or charges or part thereof, to the extent that they are so measured or based, shall constitute Real Estate Taxes for purposes hereof.

(c)     From and after the Rent Commencement Date and throughout the Lease Term, Tenant shall pay to Landlord a sum equal to the Real Estate Percentage as set forth in Section 1.01 multiplied by the Real Estate Taxes for such year. As a deposit towards said amount, Tenant shall pay to Landlord, without any deduction or setoff whatsoever an estimate of its share of Real Estate Taxes to become due, payable in equal monthly installments together with the Minimum Annual Rent payable hereunder. The foregoing amount shall be adjusted annually at the end of each calendar year, which adjustment shall be based upon Landlord's estimation of the Real Estate Taxes to become due.

(d)     Within a reasonable period of time after Landlord is notified of the Real Estate Taxes due for a particular tax year as designated by the appropriate taxing authorities, Landlord shall furnish to Tenant a statement showing (i) the Real Estate Taxes for such tax year from such authority; (ii) Tenant's share of same, i.e. the Real Estate Percentage multiplied by said Real Estate Taxes; and (iii) the credit or balance due, as the case may be, after applying sums already paid against the Real Estate Percentage as reflected on said statement. Any balance due to Landlord shall be payable by Tenant within ten (10) days after delivery of the statement; and any balance due to Tenant shall be a credit against the next payments of Minimum Annual Rent due Landlord (or shall be paid within thirty [30] days after its determination if after the expiration or termination of the Lease), in either case after first deducting therefrom any due and outstanding Rent then owed to Landlord. It is thus the intention of the parties that the Minimum Annual Rent reserved herein shall be paid to Landlord net of all Real Estate Taxes and that this Lease shall in all respects be a "triple-net" lease.

(e)     The statements of Real Estate Taxes to be furnished by Landlord as provided above shall constitute a prima facie determination as between Landlord and Tenant of Real Estate Taxes for the periods represented thereby.

(f)     If Tenant's obligation to pay its share of Real Estate Taxes commences on a date other than the first day of the tax year of the taxing authority, Tenant shall pay a proportionate share of the Real Estate Taxes for the tax year in which the Commencement Date occurs, which share shall be based upon the length of time that this Lease shall have been in existence during such first tax year. At any time within the six (6) months prior to the Expiration Date, Landlord shall have the right to compute the Real Estate Taxes due from Tenant, which computations shall be an estimate based upon the most recent annual statements of Real Estate Taxes. Promptly after the annual statement for the year including the Expiration Date is prepared by Landlord,

Landlord and Tenant shall make appropriate adjustments of said estimated payments in accordance with subsection (d) above.

(g)     Tenant's obligations to pay any and all Additional Rent under this Lease shall continue and shall cover all periods through the Expiration Date.  Tenant's obligation to pay any and all Additional Rent under this Lease and Landlord's and Tenant's obligation to make the adjustments referred to in subsection (f) above, shall survive any expiration or termination of this Lease.

(h)     Landlord may from time to time contest any and all Real Estate Taxes and/or Landlord may retain tax counsel for the purpose of obtaining and maintaining the most reasonable attainable real estate tax upon the Building.  Landlord's tax counsel shall have the authority to present complaints, briefs and supporting data, including appraisals, before the appropriate agencies having jurisdiction over the assessment and levy of the real estate taxes affecting the Building.  All of the reasonable costs of contesting any taxes and all of the fees and costs paid by Landlord for such services, including without limitation the costs of tax counsel, shall be included in Real Estate Taxes prior to the calculation of Tenant's share thereof and shall be Additional Rent.

(i)     Real Estate Taxes attributable to any separately assessed portions or demised premises located on the real property where the Building is situated shall not be included in Real Estate Taxes used to determine Tenant's share.

## Section 8.02.  Taxes on Leasehold.

(a)     Tenant shall be responsible for, and shall pay before delinquency, all taxes assessed during from and after the date of this Lease against any leasehold interest or improvements, decorations, alterations, fixtures and/or personal property of any kind owned by or placed in, upon or about the Demised Premises by Tenant, whether such taxes are assessed against Landlord or Tenant.

(b)     If at any time from and after the date of this Lease any assessments of or levies on the Building are increased as a result of any improvements to the Demised Premises or the Building arising out of Tenant's use or operations in the Demised Premises, then any taxes upon such increased assessments or levies shall be paid in its entirety by Tenant and shall not be borne by any other tenant of the Building or by Landlord.  Such obligation shall be in addition to, but not duplicative of, Tenant's obligations under Section 8.01.

## Section 8.03.  Taxes on Rentals.

In addition, Tenant shall pay any and all taxes assessed by the state or any municipality with jurisdiction over the Demised Premises, whether now in place or hereafter levied or assessed, that are applicable to rentals or any other payments or charges payable by Tenant to Landlord specified in this Lease.  Said tax payment shall be paid to Landlord with and when the applicable rental or charge is due.  Said tax shall be at the legally prevailing rate.

## ARTICLE IX:  COMMON AREAS AND FACILITIES

**Section 9.01.  Control of the Building and the Common Facilities by Landlord.**

(a)     All parking areas and sidewalks furnished, made available or maintained by Landlord in or near the Building, including landscaped areas, roofs, retaining walls, lighting facilities, utility lines, and the improvements provided by Landlord for the general use in common of tenants and others in the Building and their customers (all herein called "Common Facilities") shall at all times be subject to the exclusive control and management of Landlord.

(b)     The purpose of the site plan attached hereto as Exhibit A is to show the approximate location of the Demised Premises and is not to be deemed to be a warranty, representation or agreement on the part of Landlord that the Building will be exactly as depicted thereon or that tenants depicted thereon (if any) are now in occupancy or will be in occupancy at any time during the Lease Term.  Landlord shall have the right from time to time to:  change or modify, add to or subtract from, include in or exclude from the Building and its gross leasable area any buildings, separately assessed parcels, separately maintained parcels, separately owned parcels and premises; change or modify and add to or subtract from the sizes, locations, shapes and arrangements of parking areas, and other Common Facilities; restrict parking by Tenant's officers, agents and employees, to designated areas provided such areas shall be in reasonably close proximity to the Demised Premises; construct surface, sub-surface or elevated parking areas and facilities; construct, maintain and operate lighting facilities on all said areas; establish and from time to time change the level or grade of parking surfaces; make alterations or additions to and to build additional stories on the Building and to build adjoining the same; and do and perform such other acts in and to said Common Facilities as Landlord in its sole discretion deems advisable for the use thereof by tenants and their customers, provided none of the foregoing materially adversely affects access to the Demised Premises or the drive-thru or visibility of the Demised Premises.

**Section 9.02.  Building Operating Costs.**

From and after the Rent Commencement Date, Tenant shall pay, as Additional Rent, an amount equal to Tenant's "Operating Cost Percentage", as set forth in Section 1.01, of the "Building's Operating Costs", defined as follows:

(a)     "Building Operating Costs" shall mean and include all costs and expenses of every kind and nature as may be paid or incurred in operating, policing, protecting, insuring, managing, equipping, landscaping, lighting, repairing, renovating, modifying, replacing and maintaining the Common Facilities including, without limitation, the cost and expense of providing or causing any or all of the following to be provided:

(i)     operating, maintaining, repairing, replacing, renovating, modifying, lighting, cleaning, sweeping, painting and resurfacing of the Common Facilities including, without limitation: parking lots, curbs,

roofs, gutters, sidewalks, paving, vehicle area lighting facilities, lighting, storm and sanitary drainage systems and other utility conduit systems, ducts and similar items, security, fire protection systems, sprinkler systems, security alarm systems, retaining walls, fences and canopies, exclusive of casualty loss replacement covered by insurance, and exclusive of expenses that would constitute capital improvements (unless mandated by Applicable Laws first becoming effective after the date hereof);

(ii)     gardening, landscaping and maintenance of grass, trees and shrubbery;

(iii)    utility charges and other costs of lighting the Common Facilities;

(iv)    removal of snow and ice;

(v)     collection and removal of trash from all Common Facilities;

(vi)    an administrative fee in an amount equal to fifteen percent (15%) of the total of said Building Operating Costs.

(b)     From and after the Rent Commencement Date, Tenant shall pay to Landlord, without any deduction or setoff whatsoever, an estimate of its share of the Building Operating Costs, payable in equal monthly installments together with the Minimum Annual Rent payable hereunder.  The foregoing amount shall be adjusted annually at the end of each calendar year based upon Landlord's estimation of the Building Operating Costs.

(c)     Within a reasonable time after the end of each calendar year, Landlord shall provide Tenant with a statement of the prior year's Building Operating Costs which shall include a statement of the total deposits Tenant made toward such year's Building Operating Costs and the total share of the actual Building Operating Costs. There shall be an appropriate adjustment made between Landlord and Tenant based thereon.  If such adjustment shows a balance due to Landlord, such balance shall be payable by Tenant within ten (10) days after delivery of the statement of the adjustment; if such adjustment shows a balance due to Tenant, then Tenant shall have a credit against the next payments of Minimum Annual Rent due Landlord in the amount of the balance due (or such shall be paid within thirty [30] days after its determination if after the expiration or termination of the Lease), in either case after first deducting therefrom any due and outstanding Rent then owed to Landlord.  The foregoing shall survive the Expiration Date or earlier termination of this Lease.

**Section 9.03. Excavation.**

If an excavation shall be made adjacent to the Demised Premises, Tenant shall permit the person or persons performing such excavation license to enter upon the Demised Premises for the purpose of doing such work as Landlord or such person or persons shall deem necessary to preserve the wall or the building of which the Demised

Premises forms a part from damage and to support the same by proper foundations, without any claim for damages or indemnification against Landlord or diminution or abatement of Rent. In no event shall access to the Tenant's vault or teller line be permitted without the consent of Tenant.

## ARTICLE X: UTILITIES

### Section 10.01. Utilities.

(a)     Tenant shall be solely responsible for and promptly pay all charges for trash and rubbish removal, heat, water, electricity, sewers or any other utility used or consumed in or for the Demised Premises commencing from the Possession Date. Should Landlord elect to supply or to designate a supplier of the water, gas, heat, electricity, trash removal or any other utility used or consumed in the Demised Premises, Tenant agrees to purchase and pay for the same as Additional Rent at the then applicable rates charged by local suppliers to similar users. In no event shall Landlord be liable for an interruption or failure in the supply of any such utilities to the Demised Premises or for the character of such service.

(b)     Landlord shall in no way be liable or responsible for any loss, damage or expense that Tenant may sustain or incur by reason of any change, failure, interference, disruption or defect in the supply or character of the electric energy furnished to the Demised Premises. No such change, failure, defect, unavailability or unsuitability shall constitute an actual or constructive eviction, in whole or in part, or entitle Tenant to any abatement or diminution of Rent, or relieve Tenant from any of its obligations under this Lease.

(c)     If Tenant requires, uses or consumes water for any purpose, Landlord may install a water meter and thereby measure Tenant's water consumption for all purposes. Tenant shall pay Landlord for the cost of the meter and the cost of the installation thereof and, throughout the duration of Tenant's occupancy, Tenant shall keep said water meter and installation equipment in good working order and repair at Tenant's sole cost and expense. Tenant agrees to pay for water consumed, as shown on said meter (or in the absence of a meter, at the applicable rate as reasonably allocated among the tenants of the Building by Landlord) as and when bills are rendered by the utility or Landlord, as applicable. In the event of Tenant's failure to pay its water charge to the utility if its consumption is metered, Landlord may pay such charges and collect the same from Tenant as Additional Rent. Tenant covenants and agrees to pay the sewer rent, charge or any other tax, rent, levy or charge which now or hereafter is assessed, imposed or becomes a lien upon the Demised Premises or the realty of which they are part pursuant to law, order or regulation made or issued in connection with the use, consumption, maintenance or supply of water, a water system, a sewage connection or a sewage system or treatment plant.

## ARTICLE XI:  ASSIGNMENT; SUBLEASE

**Section 11.01.  Assignment or Subletting.**

(a)    Notwithstanding any references to assignees, subtenants, concessionaires or other similar entities in this Lease, Tenant shall not (i) assign or otherwise transfer, mortgage or encumber this Lease or any of its rights hereunder, (ii) sublet the Demised Premises or any part thereof, or permit the use of the Demised Premises or any part thereof by any persons other than Tenant or its agents or (iii) permit the assignment or other transfer of this Lease, or any of Tenant's rights hereunder, by operation of law or otherwise.  Any such attempted or purported transfer, assignment, mortgaging or encumbering of this Lease or any of Tenant's interest therein and any attempted or purported subletting or grant of a right to use or occupy all or a portion of the Demised Premises in violation of the foregoing, whether voluntary or involuntary, or by operation of law or otherwise, in addition to being a default under this Lease, shall be null and void and shall not confer any rights upon any purported transferee, assignee, mortgagee or occupant.   Further, any violation under the preceding sentence shall, at Landlord's option, terminate this Lease without relieving Tenant of any of its obligations hereunder for the balance of the stated Lease Term. Nothing contained elsewhere in this Lease shall authorize Tenant to enter into any franchise, concession, license, permit, subtenancy, departmental operation arrangements or the like, except pursuant to the provisions of this Article XI.  (The foregoing provision shall not apply to a sublease authorized by the attached Rider.)

(b)    The consent by Landlord to any assignment, transfer or subletting to any party shall not be construed as a waiver or release of Tenant under the terms of any covenant or obligation under this Lease or as a waiver or release of the non-assignability covenants in their future application, nor shall the collection or acceptance of rent payments from any such assignee, transferee, subtenant or occupant constitute a waiver or release of Tenant from any covenant or obligation contained in this Lease. If this Lease is transferred or assigned, as aforesaid, or if the Demised Premises, or any part thereof, be sublet or occupied by any person or entity other than Tenant, whether as a result of any act or omission by Tenant, or by operation of law, or otherwise, then Landlord may in addition to, and not in lieu of, any other rights and remedies under this Lease or pursuant to law to which Landlord may be entitled as a result thereof, collect rent payments from the transferee, assignee, subtenant or occupant and apply the net amount collected to the Rent herein reserved, but no such transfer, assignment, subletting, occupancy or collection shall be deemed a waiver of the covenants contained herein or the acceptance of the transferee, assignee, subtenant or occupant as tenant under this Lease, or release Tenant from the performance of the covenants required of it as set forth in this Lease.

(c)    Without conferring any rights upon Tenant not otherwise provided in this Article XI, should Tenant desire to enter into any assignment, sublease or transfer of this Lease or Tenant's rights hereunder, Tenant shall request in writing Landlord's consent thereto at least ninety (90) days before the proposed effective date thereof, providing the following:  (i) the full particulars of the proposed assignment, sublease or

transfer, including its nature, effective date, terms and conditions and copies of any offers, draft agreements, subleases, letters of commitment or intent, and other documents pertaining to the proposed assignment, sublease or transfer; (ii) a description of the identity, net worth and previous business experience of the proposed assignee, subtenant or transferee including, without limitation, copies of the proposed assignee's, subtenant's or transferee's latest income, balance sheet and changes in financial position statements (with accompanying notes and disclosures of all material changes thereto) in audited form, if available, and certified as accurate by the proposed assignee, subtenant or transferee; and (iii) any further information and documentation relevant to the proposed assignment, sublease or transfer which Landlord shall request after receipt of Tenant's request for consent including, without limitation, a written assumption agreement from the assignee or transferee. Tenant shall pay Landlord One Thousand Dollars ($1,000.00) for Landlord's administrative costs (the "Administrative Fee") and shall reimburse the Landlord for all out-of-pocket expenses (including, without limitation, reasonable attorney's fees) incurred in connection with processing any proposed assignment or sublease; the Administrative Fee shall be payable by Tenant to Landlord together with Tenant's written request for Landlord's consent to the assignment, transfer or sublease and shall be non-refundable, whether or not Landlord grants or denies its consent. If such payment does not accompany Tenant's request, then Landlord shall have the right to treat the request as null and void and improperly delivered. Upon Tenant's compliance with the foregoing provisions, Landlord will not unreasonably withhold or delay its consent to Tenant's requested assignment sublet or transfer provided such assignee, sublessee or transferee shall continue to operate the Premises in accordance with Section 5.01 hereof.

(d)     Without conferring any rights upon Tenant not otherwise provided in this Article XI, in the event of an assignment or transfer of Tenant's interest in this Lease, or a sublease of all or a portion of the Demised Premises, to a third party, any monthly rent or other payment accruing to Tenant as the result of any such assignment, transfer or sublease, including any lump sum or periodic payments in any manner relating to such assignment, transfer or sublease, which is in excess of the Rent then payable by Tenant hereunder shall be paid by Tenant to Landlord monthly as Additional Rent. In lieu of payment of the excess, if any, to Landlord pursuant to the foregoing, Landlord may elect by notice to the assignee, transferee or subtenant, at any time after the effective date of the assignment, transfer or sublease, that the Minimum Annual Rent provided herein shall increase twelve percent (12%) for the remainder of the Lease Term. Landlord may require a certificate from Tenant specifying the full amount of any such payment of whatsoever nature. Notwithstanding any assignment, sublease or transfer of this Lease or Tenant's rights hereunder, Tenant shall remain fully liable under this Lease for the performance of all terms, covenants and provisions of this Lease.

## ARTICLE XII:  RELOCATION

**Section 12.01. Intentionally Omitted.**

## ARTICLE XIII:  NOTICES

**Section 13.01. Notices.**

(a)    Any notice by Tenant to Landlord must be served by certified mail, return receipt requested, postage prepaid, or by Federal Express or other nationally recognized overnight delivery service, addressed to Landlord at the address set forth in Section 1.01, or to such other address as Landlord may designate by written notice.  If the holder of an outstanding mortgage on the Building has given Tenant written notice of its interest in this Lease, then Tenant shall not have any remedies against either Landlord or said holder of a mortgage unless and until said holder has received written notice from Tenant of a default and a reasonable time to cure the default has passed.

(b)    Any notice by Landlord to Tenant must be served by certified mail, return receipt requested, postage prepaid, or by nationally recognized overnight delivery service, addressed to Tenant at the address set forth in Section 1.01, or at such other address as Tenant shall designate by written notice.

(c)    Any notice given in conformance with the above shall be deemed received on the earlier of (i) three business days after the date deposited with the U.S. Postal Service (ii) one business day after the date deposited with a required overnight carrier service or (iii) the date on which the noticed party receives or refuses receipt of the notice.

## ARTICLE XIV: INDEMNITY; PROPERTY AND LIABILITY INSURANCE

**Section 14.01. Indemnity.**

(a)    From and after the Possession Date, subject to the provisions of this Article XIV, Tenant shall indemnify and defend Landlord and save it harmless from and against any suits, actions, damages, claims, judgments, costs, liabilities and expenses in connection with loss of life, bodily or personal injury or property damage arising from, or out of, any occurrence in, upon, at or from the Demised Premises, or the occupancy or use by Tenant of the Demised Premises, or any part thereof, or occasioned wholly, or in part, by any act or omission of Tenant, its agents, contractors, employees, servants, invitees, licensees or concessionaires, (including use of the sidewalks and Common Facilities within the Building).  In case Landlord shall, without fault on its part, be made a party to any litigation commenced by or against Tenant, then Tenant shall protect and hold Landlord harmless and shall pay all costs, expenses and reasonable attorney's fees.

(b)    From and after the Possession Date, subject to the provisions of this Article XIV, Landlord shall indemnify and defend Tenant and save it harmless from and against any suits, actions, damages, claims, judgments, costs, liabilities and expenses

in connection with loss of life, bodily or personal injury or property damage arising from, or out of, any occurrence in, upon, at or from the Building, to the extent caused by the wrongful act or omission or negligence of Landlord, its agents, contractors or employees.

### Section 14.02. Insurance.

(a)    From and after the Possession Date, Tenant shall maintain, at its sole cost and expense (i) "Special Form" insurance coverage (or its then equivalent successor) which shall include fire, flood and extended coverage insurance, in an amount adequate to cover one hundred percent (100%) of the cost of replacement of all furniture, fixtures, non-structural components of the walls and storefronts, equipment, inventory, decorations and improvements in the Demised Premises in the event of a loss and (ii) all inclusive "Commercial General Liability" insurance (or its then equivalent successor), in the broadest and most comprehensive forms generally available with "General Aggregate Amount and Per Occurrence Limits" of liability as set forth in Section 1.01, or the equivalent.  Landlord shall be named as an additional insured on a primary basis under the policy providing the coverage required in item (ii) above. Tenant shall also obtain all insurance coverages required to operate its business at the Demised Premises including, without limitation, workers compensation coverage, if required.   If Tenant fails to procure the required insurance, Landlord may, but shall not be required to, obtain same for Tenant and Tenant shall reimburse Landlord, within ten (10) days of demand, for the cost thereof as Additional Rent.

(b)    From and after the Rent Commencement Date, Tenant shall also pay to Landlord, as Additional Rent, toward the cost of maintaining all-risk property and commercial general liability insurance with respect to the Building in the amount set forth in Section 1.01.  Tenant shall pay such amount to Landlord in equal monthly installments, together with the Minimum Annual Rent due hereunder.  If Landlord's cost of providing insurance increases in any year, then Landlord shall have the right to increase Tenant's payment under this Section 15.02 in the same percentage as Landlord's cost of providing insurance increased.

(c)    Landlord may in its discretion include the costs of Landlord's insurance in Building Operating Costs provided that Landlord may not charge Tenant under this Section if it so elects.

(d)    Landlord makes no representation or warranty to Tenant that the amount of insurance to be carried by Tenant under the terms of this Lease is adequate to fully protect Tenant's interest.  If Tenant believes that the amount of any such insurance is insufficient, Tenant is encouraged to obtain, at its sole cost and expense, such additional insurance as Tenant may deem desirable or adequate.   Tenant acknowledges that Landlord shall not, by the fact of approving, disapproving, waiving, accepting, or obtaining any insurance, incur any liability for or with respect to the amount of insurance carried, the form or legal sufficiency of such insurance, the solvency of any insurance companies or the payment or defense of any lawsuit in

26

connection with such insurance coverage, and Tenant hereby expressly assumes full responsibility therefor and all liability, if any, with respect thereto.

## Section 14.03.  Increase in Insurance Premiums.

Tenant shall pay on demand any increase in premiums for Landlord's insurance, or that of any other tenant in the Building, resulting from Tenant's use, occupancy or vacancy of the Demised Premises or the Building, whether or not Landlord has consented to the same.   In determining whether increased premiums are the result of Tenant's use, occupancy or vacancy of the Demised Premises, a schedule issued by the organization making the fire insurance, extended coverage, vandalism and malicious mischief, special extended coverage or any all-risk insurance rates for said Demised Premises or any rule books issued by the rating organization or similar bodies or by rating procedures or rules of Landlord's insurance companies shall be conclusive evidence of the several items and charges which make up the insurance rates and premiums on the Demised Premises and the Building.   If, due to Tenant's occupancy (or failure to occupy) or abandonment of the Demised Premises, any insurance shall be cancelled by the insurance carrier, or if the premium for any such insurance shall be increased, then, in any of such events, Tenant shall indemnify and hold Landlord harmless and shall pay on demand the increased cost of such insurance.  Tenant also shall pay in any of such events any increased premium on the rent insurance that may be carried by Landlord.

## Section 14.04.  Waiver of Subrogation.

Landlord and Tenant hereby waive all rights to claims for damages as against the other and the other's insurance companies, and Landlord's and Tenant's insurance policies shall contain provisions requiring that the respective insurance companies waive all rights of subrogation as against Landlord and Tenant and as against the other's insurance companies, which either party has, or which may arise hereafter, for: damage to the Premises or the Building; damage to real or personal property located in the Building; loss of business; any loss for which either party may be reimbursed as a result of insurance coverage affecting any loss suffered by it; or any other loss caused by perils typically covered by fire and extended coverage, building contents, store contents and business interruption insurance coverages.

## Section 14.05.  Insured's Release.

Landlord and Tenant mutually agree that with respect to any loss which is covered by insurance then being carried by them respectively, or required to be carried, the one carrying or required to carry such insurance and suffering said loss hereby releases the other of and from any and all claims with respect to such loss to the extent of such insurance carried or required to be carried.

## Section 14.06.  Notice to Landlord.

Tenant shall give prompt notice to Landlord in case of fire or accidents in the Demised Premises, or in the Building, or of any defects therein or in any fixtures or equipment. Tenant, within twenty-four (24) hours of any fire or accident, shall give written notice to

Landlord of any damage claimed.  Tenant shall not be entitled to any abatement or diminution of Minimum Annual Rent pursuant to Section 17.01 hereof for any period during which it prevents Landlord from repairing that portion of the damages, if any, which it is Landlord's obligation to repair, nor for any period beyond the aforementioned twenty-four (24) hours during which it has failed to notify Landlord.

## ARTICLE XV:  LIABILITY OF LANDLORD

### Section 15.01.  Waiver of Liability.

Notwithstanding anything contained in this Lease to the contrary, Tenant agrees that it shall look solely to the estate and property of Landlord in the Building, subject to prior rights of any mortgagee of the Demised Premises, for the collection of any judgment (or other judicial process) requiring the payment of money by Landlord in the event of any default or breach by Landlord with respect to any of the terms, covenants and conditions of this Lease to be observed and/or performed by Landlord and no other assets of Landlord shall be subject to levy, execution or other procedures for the satisfaction of Tenant's remedies.  In the event Landlord transfers this Lease, except as collateral security for a loan, upon such transfer Landlord will be released from all liability and obligations hereunder, provided that the transferee assumes the obligations of this Lease.

### Section 15.02.  Tenant's Risk of Loss.

Tenant shall store its property in and shall occupy the Demised Premises and all other portions of the Building at its own risk and releases Landlord, to the full extent permitted by law, from all claims of every kind resulting from loss of life, personal or bodily injury or property damage.  Landlord shall not be responsible or liable to Tenant, or to those claiming by, through or under Tenant, for any loss or damage to either the person or property of Tenant or to Tenant's merchandise, equipment, fixtures or other personal property or to Tenant's business, arising from any cause unless caused by the negligent or wrongful act of Landlord.  In no event shall Landlord be liable to Tenant for any indirect or consequential damages, except if caused by the gross negligence of the Landlord, its agents or employees.

### Section 15.03.  Consent.

Whenever either Landlord's or Tenant's consent or approval is required hereunder, such party's consent shall not be unreasonably withheld, conditioned or delayed.

### Section 15.04.  Successors.

All rights and liabilities herein given to, or imposed upon, the respective parties hereto shall extend to and bind the respective heirs, executors, administrators, successors and assigns of the said parties.  Each provision to be performed by Tenant shall be construed to be both a covenant and a condition and, if there shall be more than one Tenant, they shall all be bound jointly and severally by these provisions.  No rights, however, shall inure to the benefit of any assignee of Tenant unless the assignment to

such assignee has been approved by Landlord in writing as provided in Article XI hereof. Notwithstanding the foregoing, in the event Landlord or any successor owner shall convey or otherwise dispose of the Demised Premises, all liabilities and obligations on the part of Landlord or successor owner under this Lease arising or accruing after such conveyance shall cease and terminate and thereupon all such liabilities and obligations shall be binding upon the new owner. No mortgagee or trustee, or assignee thereof, who succeeds to the interest of Landlord as a result of foreclosure or as a result of a deed-in-lieu of foreclosure transfer shall be liable or obligated to Tenant, or anyone claiming by or through Tenant, or bound by (i) any payment of any installment of Rent made more than thirty (30) days before the due date of such installment, (ii) any claim arising from an act or omission of or default by Landlord under this Lease or (iii) any credits, claims, setoffs or defenses against the Rent due and payable hereunder.

## ARTICLE XVI: DAMAGE CLAUSE

**Section 16.01. Destruction.**

If the Demised Premises shall be partially damaged by any casualty covered under Landlord's insurance policy, Landlord shall, upon receipt of the insurance proceeds, repair the same to the condition set forth in Exhibit B and the Minimum Annual Rent shall be abated proportionately as to that portion of the Demised Premises rendered untenantable. Landlord shall not be required to expend more than the proceeds of its insurance in repairing the Demised Premises. If (a) the Demised Premises (i) by reason of such occurrence is rendered wholly untenantable, or (ii) should be damaged as a result of a risk which is not covered by Landlord's insurance, or (b) the Building (whether or not the Demised Premises is damaged), should be damaged to the extent of fifty percent (50%) or more of the then monetary value thereof, then, in any of such events described in (a) or (b) above, Landlord may either elect to repair the damage to the condition set forth in Exhibit B (other than damage to Tenant's fixtures, furniture, equipment, other personal property and any other portions of the Demised Premises or any property located therein for which Tenant is required to or does insure or as to which Tenant shall be responsible to repair or restore as provided below) or may cancel this Lease by notice of cancellation given within one hundred eighty (180) days after such event and thereupon this Lease shall expire, and Tenant shall vacate and surrender the Demised Premises to Landlord. Tenant's liability for Rent upon the termination of this Lease shall cease as of the later of (y) the day following the event or damages or (z) the date upon which Tenant ceased to do business at the Demised Premises. In the event Landlord elects to repair the damage insured under Landlord's policies, any abatement of Rent shall end upon the date that Landlord substantially completes Landlord's obligations to restore the Demised Premises. If the damage is caused by the negligence of Tenant or its employees, agents, invitees, concessionaires, or contractors, there shall be no abatement of Rent. Unless this Lease is terminated by Landlord, Tenant shall repair and refixture the interior of the Demised Premises in a manner and to at least a condition equal to that existing prior to its destruction or casualty and the proceeds of all insurance carried by Tenant on its property and

improvements shall be held in trust by Tenant for the purpose of said repair and replacement.

## ARTICLE XVII: CONDEMNATION

**Section 17.01. Condemnation.**

(a)     If the whole of the Demised Premises shall be acquired or condemned by eminent domain for any public or quasi-public use or purpose, then the Lease Term shall cease and terminate as of the date of title vesting in the condemnor in such proceeding and all Rent shall be paid up to that date and Tenant shall have no claim against Landlord for the value of any unexpired Lease Term of this Lease.

(b)     If any part of the Demised Premises or of the Building shall be acquired or condemned by eminent domain for any public or quasi-public use or purpose, and in the event that such partial taking or condemnation shall render the Demised Premises and/or the Building unsuitable for the business of Tenant as determined by Landlord, then the Lease Term shall cease and terminate as of the date of title vesting in the condemnor in such proceeding, and Tenant shall have no claim against Landlord for the value of any unexpired Lease Term. In the event of a partial taking or condemnation which is not extensive enough to render the Demised Premises unsuitable for the business of Tenant, then Landlord shall promptly restore the Demised Premises to the condition set forth in Exhibit B less the portion lost in the taking, and this Lease shall continue in full force and effect. Landlord shall not be required to expend in such restoration more than the proceeds of the award which is reserved for such purpose. The Minimum Annual Rent, if any, shall be reduced in the proportion that the area of the Demised Premises taken bears to the entire area contained in the Demised Premises.

(c)     In the event of any condemnation or taking as hereinbefore provided, whether whole or partial, Tenant shall not be entitled to any part of the award, as damages or otherwise, for such condemnation and Landlord is to receive the full amount of such award. Tenant hereby expressly waives any right or claim to any part thereof and assigns to Landlord any share of such an award as may be granted to it.

(d)     Although all damages in the event of any condemnation are to belong to Landlord whether such damages are awarded as compensation for diminution in value of the leasehold or to the fee of the Demised Premises, and although Tenant hereby expressly waives all claims against Landlord, Tenant shall have the right to claim and recover from the condemning authority, not from Landlord, such compensation as may be separately awarded or recoverable by Tenant in Tenant's own right on account of any and all damages to Tenant's business by reason of the condemnation and for or on account of any cost or loss to which Tenant might be put in removing Tenant's merchandise, furniture, fixtures, leasehold improvements and equipment.

## ARTICLE XVIII:  SECURITY DEPOSIT

**Section 18.01.  Security Deposit.**

(a)  **Payment.**  The Security Deposit, in the amount specified in Section 1.1 hereof shall be held by Landlord without liability for interest as security for the faithful performance by Tenant of all terms and conditions of this Lease.  The Security Deposit shall not be mortgaged, assigned, transferred or encumbered by Tenant without the consent of Landlord, and any such act on the part of Tenant shall be without force and effect and shall not be binding upon Landlord.  Landlord shall have the right to commingle said Security Deposit with its other funds.

(b)  **Application.**  If any of the Rent or any other sum payable by Tenant should be overdue and unpaid or if Landlord should make payments on behalf Tenant, or if Tenant should fail to perform any of the terms of this Lease imposed upon Tenant, then Landlord may, at its option and without prejudice to any other right or remedy appropriate, apply said Security Deposit or so much thereof as may be necessary to compensate Landlord toward the payment of Rent or Additional Rent, expenses, fees (including, without limitation, attorneys' fees) costs, loss or damage sustained by Landlord due to such breach on the part of Tenant and Tenant shall upon demand restore said Security Deposit to the original sum deposited.  Subject to all other provisions of this Article, should Tenant comply with all of the terms of this Lease, said Security Deposit or any balance thereof shall be returned to Tenant or, at the option of Landlord, to the last assignee of Tenant's interest in this Lease at the expiration of the Lease Term and any extension thereof.  Tenant expressly acknowledges and agrees, however, that said Security Deposit may be held by Landlord beyond the expiration or earlier termination of the Lease Term (including also any extension thereof) until all Rent and other sums due or to become due hereunder have been fully paid by Tenant, including without limitation the prorating, billing and payment of all year-end adjustments made or to be made under this Lease.  In the event of bankruptcy or other debtor-creditor proceedings by or against Tenant, the Security Deposit shall be deemed to be applied first to the payment of Rent due Landlord for the earliest period prior to filing of such proceedings.

## ARTICLE XIX:  PRIORITY OF LEASE

**Section 19.01.  Subordination, Attornment, Power of Attorney.**

Tenant has been informed and understands that Landlord is now, or may be in the future, a tenant under a lease of the land of which the Demised Premises forms a part.  This Lease is and shall be, at Landlord's option, subject and subordinate to all ground or underlying leases and to all mortgages, deeds of trust or liens resulting from any other method of financing or refinancing which now or hereafter affects such leases or the real property of which the Demised Premises forms a part and to all renewals, modifications, consolidations, replacements and extensions thereof provided the ground lessor and/or mortgagee enters into a subordination non-disturbance and attornment agreement with Tenant containing such customary and usual terms as the parties may

reasonably agree to. This Section shall be self-operative and no further instrument of subordination shall be necessary. In confirmation of such subordination, Tenant shall execute promptly within ten (10) days of Tenant's receipt of written notice, any certificate that Landlord may request. In the event that any ground or underlying lease is terminated, or any mortgage or deed of trust is foreclosed or title transferred as a result of a deed-in-lieu of foreclosure, this Lease shall not terminate or be terminable by Tenant unless Tenant is specifically named in any termination or foreclosure judgment or final order, and Tenant shall attorn to any such successor lessor and recognize such lessor as Landlord under this Lease. In the event of a sale or assignment of Landlord's interest in the Building, Tenant shall attorn to the purchaser and recognize such purchaser as Landlord under this Lease, provided the transferee expressly assumes the obligations of this Lease. In the event that any ground or underlying lease is terminated as aforesaid or any mortgage foreclosed or the property transferred by deed-in-lieu of foreclosure, Tenant agrees, at Landlord's, master landlord's or mortgagee's option, to enter into a new lease covering the Demised Premises for the remaining Lease Term and otherwise on the same terms, conditions and rentals as herein contained. Notwithstanding anything contained in this Lease to the contrary, if the holder of any mortgage or deed of trust elects to have this Lease superior to its mortgage or deed of trust, then, upon Tenant being notified to that effect by such encumbrance holder, this Lease shall be deemed prior to the lien of said mortgage or deed of trust, whether this Lease is executed prior to or subsequent to the date of said mortgage or deed of trust.

## Section 19.02. Estoppel.

Tenant shall, within ten (10) days after written request by Landlord, execute and deliver to Landlord a written declaration in form satisfactory to Landlord and substantially similar to Exhibit E, attached hereto: (a) ratifying this Lease; (b) expressing the Commencement Date and Expiration Date hereof; and (c) certifying (I) that this Lease is in full force and effect and has not been assigned, modified, supplemented or amended (except by such writings as shall be stated), (ii) that all conditions under this Lease to be performed by Landlord have been satisfied; (iii) that there are no defenses or offsets against the enforcement of this Lease by Landlord, or stating those claimed by Tenant; (iv) the amount of advance rental, if any, (or none if such is the case) paid by Tenant; (v) the date to which rental has been paid; and (vi) the amount of security deposited with Landlord. Such declarations shall be executed and delivered by Tenant, from time to time, as may be requested by Landlord. Landlord's mortgage lenders and/or purchasers shall be entitled to rely upon the same.

## Section 19.03. Recording.

Tenant shall not record this Lease, or a memorandum thereof, without the prior written consent of Landlord.

## ARTICLE XX:  LANDLORD'S REMEDIES

**Section 20.01.  Default.**

Any one of the following shall be deemed to be an "Event of Default":

(a)    Failure on the part of Tenant to make payment of Rent or any other monetary amount due under this Lease within ten (10) days after written notice of non-payment thereof.

However, if: (i) Landlord shall have sent to Tenant a notice of such default, even though the same shall have been cured and this Lease not terminated; and (ii) during the twelve (12) month period following the sending of said notice of default by Landlord to Tenant, Tenant thereafter shall default on two (2) additional occasions within such twelve (12) month period in the timely payment of any Rent or monetary payment, the same shall be deemed to be an Event of Default upon Landlord giving Tenant written notice thereof, without the five (5) day grace period set forth above.

(b)    With respect to a non-monetary violation of this Lease, failure of Tenant to cure the same within the minimum time period within which Tenant is required by the terms of this Lease to cure the violation after Landlord has sent to Tenant notice of such violation (or if no such time period is specified, within fifteen (15) days after Landlord has sent Tenant notice of such violation).  Tenant shall be obligated to commence forthwith, to prosecute diligently and continuously, and to complete as soon as possible the curing of such violation; and if Tenant fails so to do, the same shall be deemed to be an Event of Default.

However, if: (i) Landlord shall have sent to Tenant a notice of such default, even though the same shall have been cured and this Lease not terminated; and (ii) during the twelve (12) month period following the sending of said notice of default by Landlord to Tenant, Tenant thereafter shall default for the same reason for which such prior notice of default was sent, the same shall be deemed to be an Event of Default upon Landlord giving Tenant written notice thereof and Tenant shall have no grace period within which to cure the same.

(c)    The commencement of any of the following proceedings, with such proceeding not being dismissed within sixty (60) days after it has begun: (i) the estate hereby created being taken on execution or by other process of law; (ii) Tenant, or any surety or guarantor of Tenant, being judicially declared bankrupt or insolvent according to law; (iii) an assignment being made of the property of Tenant, or any surety or guarantor of Tenant, for the benefit of creditors; (iv) a receiver, guardian, conservator, trustee in involuntary bankruptcy or other similar officer being appointed to take charge of all or any substantial part of Tenant's property, or that of the Tenant's surety or guarantor, by a court of competent jurisdiction; or (v) a petition being filed for the reorganization of Tenant, or any surety or guarantor of Tenant, under any provisions of the Bankruptcy Code or any federal or state law now or hereafter enacted.

33

(d)     Tenant, or any surety or guarantor of Tenant, filing a petition for reorganization or for rearrangement under or otherwise availing itself of any provisions of, the Bankruptcy Code or any federal or state law now or hereafter enacted providing a plan or other means for a debtor to settle, satisfy or extend the time for the payment of debts (a "Bankruptcy Filing"). In the event that Tenant, or any surety or guarantor of Tenant, makes a Bankruptcy Filing, the then present term of this Lease shall cease as of the day prior to the Bankruptcy filing and a new term ("Bankruptcy Term") shall commence as of the date of the Bankruptcy filing and all Rent and other charges due and payable under the Lease for the month in which the date of the Bankruptcy Filing occurs, whether or not actually paid by the Tenant, shall be pro rated on a daily basis. The per diem amounts attributable to the period from the first day of the month in which the date of the Bankruptcy Filing occurs through the day immediately preceding the date of the Bankruptcy Filing shall be deemed pre-petition and the per diem amounts attributable to the period from the date of the Bankruptcy Filing through to the end of the month in which the date of the Bankruptcy Filing occurs shall be deemed due as of the commencement date of the Bankruptcy Term which, if not already paid, shall be and become immediately due and payable by Tenant to Landlord. All of the terms and conditions of the Lease other than the determination of rent and other charges due and payable in the month in which the Bankruptcy Filing occurs as a result of the Bankruptcy Term, including but not limited to the expiration date of the Lease, the timing of options, rent increases and the like, shall remain as set forth in the Lease without regard to this paragraph and without regard to the Bankruptcy Term.

(e)     Excepting only those periods when Tenant is prevented from performing by virtue of strike, fire, unavoidable casualty or other event reasonably beyond the control of Tenant, (financial inability shall never be deemed to be an event beyond Tenant's control) the failure of Tenant (i) to take possession of the Demised Premises within thirty (30) days after the Possession Date, (ii) to proceed diligently and continuously with Tenant's Work, or (iii) to have opened for business within 180 days after the Rent Commencement Date or (iv) Tenant's closing for business at the Demised Premises for more than thirty (30) consecutive days in any calendar year, or (v) Tenant's abandonment or vacation of the Demised Premises.

## Section 20.02. Landlord's Remedies.

If an Event of Default occurs, in addition to any right Landlord may have at law or in equity including, without limitation, the right to seek injunctive relief or specific performance against the Tenant, Landlord may:

(a)     Elect to re-enter or take possession of the Demised Premises pursuant to legal proceedings or any notice provided for herein and may either terminate this Lease or, without terminating this Lease, (i) remove all persons and property from the Demised Premises without being deemed liable for trespass or becoming liable for any loss or damage which may be occasioned thereby and (ii) make such alterations and repairs as may be necessary in order to relet the Demised Premises for a term, rental rate and conditions as Landlord, in its sole discretion, may deem advisable. Upon reletting, rentals received by Landlord from such reletting shall be applied first to the payment of

any indebtedness other than Minimum Annual Rent due hereunder from Tenant; second to the payment of any costs and expenses of such reletting, including brokerage fees, reasonable attorneys' fees and costs of alterations and repairs; third to the payment of the most current Minimum Annual Rent owed at that time; and the residual, if any, shall be held by Landlord and applied in payment of future Minimum Annual Rent as the same may become due and payable hereunder from Tenant. If such rentals received from such reletting are less than that to be paid by Tenant, Tenant shall be liable for the deficiency to Landlord. Any such deficiency shall be calculated and due monthly. No such re-entry or taking possession of the Demised Premises by Landlord shall be construed as an election on its part to terminate this Lease or to accept a surrender thereof.

(b)     Whether or not Landlord elects to re-enter or take possession of the Demised Premises in accordance with subsection (a) above, Landlord may, at any time after the occurrence of an Event of Default, elect to terminate this Lease. Should Landlord elect to terminate this Lease then, in addition to any other remedies Landlord may have available to it, Landlord may recover from Tenant all damages incurred by reason of such breach, including the cost of recovering the Demised Premises plus the total of all Minimum Annual Rent, Additional Rent and all other charges reserved in this Lease payable over the remainder of the stated Lease Term discounted to net present value utilizing a 6% discount rate.

(c)     Treat all or any part of the Rent reserved hereunder as immediately due and payable, it being understood that the method of monthly or other periodic payments provided for herein are for the convenience of Tenant and available to Tenant only if Tenant is not in default under this Lease.

(d)     Cure such default for the account of Tenant (without waiving any claim for breach of this Lease); said right to cure shall include, without limitation, the right to pay or do any act which requires the expenditure of any sums of money by reason of the failure or neglect of Tenant to perform any of the provisions of this Lease, and in the event Landlord shall, at its election, pay such sums or do such acts requiring the expenditure of monies, Tenant agrees to pay Landlord, upon demand, all such sums and the sum so paid by Landlord, together with maximum legal interest thereon, shall be deemed Additional Rent and be payable as such.

**Section 20.03. Intentionally Omitted.**

**Section 20.04. Redemption; Reinstatement.**

Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws in the event Tenant is evicted or dispossessed for any cause, or in the event Landlord obtains possession of the Demised Premises. No receipt of monies by Landlord from or for the account of Tenant or from anyone in possession or occupancy of the Demised Premises after the termination of this Lease or after the giving of any notice of termination shall reinstate, continue or extend the Lease Term or affect any notice given to Tenant prior to the receipt of such money.

**Section 20.05.  Waiver of Trial by Jury.**

THE PARTIES HEREBY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES HERETO AGAINST THE OTHER ON ANY MATTERS WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS LEASE, THE RELATIONSHIP OF LANDLORD AND TENANT, TENANT'S USE OR OCCUPANCY OF THE DEMISED PREMISES, AND/OR ANY CLAIM OF INJURY OR DAMAGE.  IN THE EVENT LANDLORD COMMENCES ANY PROCEEDINGS FOR DISPOSSESS OR POSSESSION OF THE DEMISED PREMISES OR FOR NON-PAYMENT OF MINIMUM ANNUAL RENT, ADDITIONAL RENT OR ANY OTHER SUM DUE FROM TENANT HEREUNDER, TENANT WILL NOT INTERPOSE ANY NON-MANDATORY COUNTERCLAIM OR CROSSCLAIM OF WHATEVER NATURE OR DESCRIPTION IN ANY SUCH PROCEEDINGS.  THIS SHALL NOT, HOWEVER, BE CONSTRUED AS A WAIVER OF TENANT'S RIGHT TO ASSERT SUCH CLAIMS IN ANY SEPARATE ACTION BROUGHT BY TENANT. HOWEVER, TENANT SHALL NOT MOVE TO CONSOLIDATE ANY SUCH ACTION WITH ANY ACTION BROUGHT BY LANDLORD AGAINST TENANT FOR DISPOSSESS OR POSSESSION OF THE DEMISED PREMISES OR FOR NON-PAYMENT OF RENT.

**Section 20.06.  Accord and Satisfaction.**

No payment by Tenant or receipt by Landlord of a lesser amount than the Rent herein stipulated shall be deemed to be other than on account of the earliest Rent then unpaid, nor shall any endorsement or statement on any check or any letter accompanying any check or payment as Rent be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such Rent or pursue any other remedy provided in this Lease.

**Section 20.07.  No Waiver.**

The rights and remedies given to Landlord in this Lease are distinct, separate and cumulative remedies, and the exercise of any of them shall not be deemed to exclude Landlord's right to exercise any or all of the others.  The waiver by Landlord of any breach or of the strict and/or prompt performance of any term, covenant or condition herein contained, shall not be deemed to be a waiver of any subsequent breach of the same or any other term, covenant or condition herein contained or of Landlord's right to strictly enforce same in the future.  The subsequent acceptance of Rent hereunder by Landlord shall not be deemed to be a waiver of any preceding breach by Tenant of any terms, covenants or conditions of this Lease regardless of Landlord's knowledge of such preceding breach at the time of acceptance of such Rent.  No covenant, term or condition of this Lease shall be deemed to have been waived by Landlord unless such waiver be in writing by Landlord.  No waiver by Landlord in respect to other tenants shall be deemed to constitute a waiver in favor of Tenant.

**Section 20.08.  Legal Fees.**

If any legal fees and costs are incurred by Landlord in enforcing the terms of this Lease then Tenant shall be liable for such reasonable legal fees and costs.  Same shall be due and payable upon presentation of a bill therefor.

## ARTICLE XXI:  MISCELLANEOUS PROVISIONS

**Section 21.01.  Tenant Defined; Use of Pronoun.**

The word "Tenant" shall be deemed and taken to mean each and every person or party mentioned as a tenant herein, be the same one or more; and if there shall be more than one tenant, (i) the liability of each shall be individual, joint and several and (ii) any notice required or permitted by the terms of this Lease may be given by or to any one thereof and shall have the same force and effect as if given by or to all thereof.  The use of the neuter singular pronoun to refer to Landlord or Tenant shall be deemed a proper reference even though Landlord or Tenant may be an individual, a partnership, a corporation or a group of two or more individuals or corporations.  The necessary grammatical changes required to make the provisions of this Lease apply in the plural sense where there is more than one Landlord or Tenant and to either corporations, associations, partnerships or individuals, males or females, shall in all instances be assumed as though in each case fully expressed.

**Section 21.02.  Delivery of Lease.**

The submission by Landlord of this Lease shall not be construed as an offer to lease. Landlord shall be bound only upon the execution of this Lease by an authorized officer and the delivery of such executed Lease to Tenant.  Tenant hereby waives and is estopped from asserting any rights with respect to the Demised Premises or against Landlord which may arise from any alleged oral agreement; oral lease; any acts or expenditures (including without limitation the return of this Lease to Landlord executed by Tenant and the payment of any sums on account hereof) or series of same taken or made by Tenant in reliance on the anticipated execution hereof by Landlord; or any letter from Landlord or its attorneys sent prior to the execution and delivery hereof by Landlord as aforesaid; it being expressly understood and agreed that Tenant shall under no circumstances have any such rights until said execution and delivery hereof by Landlord.

**Section 21.03.  Entire Agreement.**

This Lease and the exhibits, riders and/or addenda, if any attached, set forth the entire agreement between the parties.  Any prior conversations or writings are merged herein and extinguished.  No subsequent amendment to this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed.  If any provision contained in a rider or addenda is inconsistent with the provisions contained herein then the provisions contained in said rider or addenda shall supersede said provisions contained herein.  The captions, numbers and index appearing herein are inserted only as a

matter of convenience and are not intended to define, limit, construe or describe the scope or intent of any paragraph, nor in any way affect this Lease.

### Section 21.04. Partial Invalidity.

If any provision of this Lease or the application thereof to any person or circumstance shall to any extent be invalid, the remainder of this Lease or the application of such provision to persons or circumstances other than those as to which it is held invalid shall not be affected thereby and each provision of this Lease shall be valid and enforced to the fullest extent permitted by law.

### Section 21.05. Applicable Law.

The Lease and the rights and obligations of the parties arising hereunder, shall be construed in accordance with the internal laws of the state of New York.

### Section 21.06. Rules of Construction.

The parties hereby agree that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Lease or any Addenda or Exhibits hereto.

### Section 21.07. Brokerage Commission.

Tenant represents and warrants that there are no claims for brokerage commissions or finders' fees in connection with the execution of this Lease. Tenant agrees to indemnify Landlord against and hold it harmless from all liabilities arising from any such claim by any broker or finder including, without limitation, the cost of counsel fees. The foregoing representation, warranty and indemnification shall not apply with respect to the brokers listed in Section 1.01. Landlord shall be obligated to pay the brokers listed in Section 1.01 a commission in accordance with, and subject to, the terms and provisions of a separate agreement entered into between such brokers and Landlord.

### Section 21.08. Force Majeure.

Landlord shall be excused for the period of any delay in the performance of any obligations hereunder when prevented from doing so by a cause or causes beyond Landlord's control which shall include, without limitation, all labor disputes, riots, civil commotion, war, war-like operations, invasion, rebellion, hostilities, military or usurped power, sabotage, governmental regulations or controls, fire or other casualty, inability to obtain any material, services or financing or through acts of God.

## THIS LEASE IS COMPRISED OF ARTICLES I THROUGH XXI
## AND THE FOLLOWING EXHIBITS:

EXHIBIT A - Site Plan

EXHIBIT B - Landlord's and Tenant's Work

EXHIBIT C - Rules and Regulations

EXHIBIT D - Sign Criteria

EXHIBIT E - Estoppel

IN WITNESS WHEREOF, the parties have respectively signed and sealed this Lease as of the day and year first above written.

LANDLORD:
LEEBER REALTY LLC

By: _Bernard Cohen_
Name: BERNARD COHEN
Title: Member


TENANT:
TRUSTCO BANK

By: _R T Cushing_
Name: R T Cushing
Title: CFO
Fed EIN: 140527631

## EXHIBIT A:  SITE PLAN

It is understood and agreed that the site plan attached hereto is merely for the purpose of showing the general layout of the Building and the approximate location of the Demised Premises and is not to be deemed to be a warranty, representation or agreement on the part of Landlord that the Building will be exactly as depicted therein or that tenants depicted therein (if any) are now in occupancy or will be in occupancy at any time during the Lease Term.

## EXHIBIT B:  LANDLORD'S AND TENANT'S WORK

**LANDLORD'S WORK:**

Landlord shall install a demising wall separating the Demised Premises from the adjacent premises, rough plumbing for a bathroom to be located in the rear, right side of the Demised Premises, make provision for 200 amp electrical service to be serviced by a separate meter to the Demised Premises, install a heating and air conditioning system ("HVAC") on the roof of the Building determined by Landlord's architect to be of sufficient size to adequately heat and cool the Demised Premises at its sole cost and expense.   All distribution/ductwork from such rooftop HVAC unit shall constitute Tenant's Work.  In addition, Landlord shall cause the excavation behind the Building and installation of appropriate retaining walls in connection therewith in order to permit vehicular access to Tenant's proposed drive-in window adjacent to the Demised Premises. Landlord's Work shall comply with all Applicable Laws.

**TENANT'S WORK**

Tenant's Work shall include all construction and improvements necessary to build out the Demised Premises and to operate Tenant's business in accordance with all Applicable Laws shall be at Tenant's sole cost and expense.   Tenant's plans and specifications, and the detail and design shall be subject to the written approval of Landlord or Landlord's architect.

## EXHIBIT C: RULES AND REGULATIONS

(a)   All deliveries or shipments of any kind to and from the Demised Premises, including loading and unloading of goods, shall be made only by way of the rear of the Demised Premises, or at any other location designated by Landlord, and only at such times designated for such purpose by Landlord;

(b)   Garbage and refuse shall be kept in the kind of container specified by Landlord and shall be placed at a location within the Demised Premises.  Tenant shall bear all costs of garbage and refuse removal;

(c)   No dishes, antennas or aerials attached thereto (inside or outside) shall be installed without first obtaining in each instance Landlord's consent in writing and, if such consent be given, no such devices shall be used in a manner so as to be heard or seen outside of the Demised Premises except as expressly permitted;

(d)   Tenant shall keep the Demised Premises at a temperature sufficiently high to prevent freezing of water in pipes and fixtures;

(e)   The outside areas immediately adjoining the Demised Premises shall be kept clear and free from dirt and rubbish by Tenant, and Tenant shall not place, suffer, or permit any obstructions or merchandise in such areas;

(f)   Tenant shall not use the public, parking or common areas in the Building for business purposes including, but not limited to, solicitation or the distribution or affixing of handbills;

(g)   Tenant and its employees shall park their cars only in those portions of the parking areas, if any, designated for that purpose by Landlord; Tenant shall furnish Landlord with its and its employees' automobile license numbers within five (5) days after taking possession of the Demised Premises and Tenant shall thereafter notify Landlord of any changes within five (5) days after such changes occur; if Tenant or its employees fail to park their cars in designated parking areas, then Landlord may charge Tenant Ten Dollars ($10.00) per day for each day or partial day per car parking in any areas other than those designated, as and for liquidated damages;

(h)   Plumbing facilities shall not be used for any other purposes than that for which they are constructed, and no foreign substance of any kind shall be thrown therein;

(i)   Tenant shall use, at Tenant's cost, a pest extermination contractor at such intervals as Landlord may require (and in the event that Tenant fails to so exterminate as required by Landlord, Landlord shall have the right to exterminate the Demised Premises at Tenant's sole cost and expense);

(j)   Tenant shall not burn trash or garbage in and about the Demised Premises or the Building;

(k)     Tenant shall not place, suffer or permit displays or decorations or shopping carts on the sidewalk in front of the Demised Premises or on or upon the Common Facilities of the Building;

(l)     Tenant agrees at all times to maintain the heating and air conditioning equipment in the Demised Premises;

(m)    Tenant shall store soiled or dirty linen only in approved fire rating organization containers;

(n)     Except as provided in the Permitted Use provision, Tenant shall not conduct or permit to be conducted any sale by auction upon or from the Demised Premises, whether said auction be voluntary, involuntary, pursuant to any assignment for the payment of creditors, or pursuant to any bankruptcy or other insolvency proceeding without the express written permission of Landlord, which may be withheld in Landlord's sole discretion.  No auction, fire, bankruptcy, "going out of business" or other distress sale of any nature may be conducted on the Demised Premises without the prior written consent of Landlord, which may be withheld in Landlord's sole discretion; and

(o)     Tenant shall keep the Demised Premises and all areas in which it conducts business well lit so as to provide a safe and secure environment for its customers and shall abide by any lighting requirements suggested or required by any appropriate agencies or insurance companies.

## EXHIBIT D:  SIGN SPECIFICATIONS

Any sign approved by Landlord hereunder shall be furnished and installed by Tenant at Tenant's sole cost and expense.  The only exterior signs which may be installed by Tenant on or in connection with the use of any building shall be limited to the name of Tenant on such building, and no portion will project in any fashion above the plane of the roof of such building, and not more than 8 inches from the face, the rear or the side of such building.  The letters can be in any type style, upper or lower case, can be in color, and may include Tenant's logo.  All signs will be UL approved.  Prior approval by Landlord is required before any installation, which approval will not be unreasonably withheld or delayed.  In no event shall Landlord's approval of any sign hereunder be deemed or construed as a warranty or guaranty by Landlord that such sign shall satisfy or be approved by any applicable governmental agency and Tenant acknowledges that Tenant shall be solely responsible at its own cost for obtaining required governmental approvals.

### GENERAL SIGN RESTRICTIONS

1.  No animated, flashing or audible signs shall be permitted.
2.  No exposed lamps or tubing shall be permitted
3.  All signs and their installation shall comply with all local building and electrical codes.
4.  All conduit, cabinets, conductors, transformers and other equipment shall be concealed.
5.  Painted lettering shall not be permitted.
6.  Any damage to the sign band or roof deck caused by the installation or removal of Tenant's sign shall be repaired by Tenant at Tenant's sole cost and expense.

If Landlord erects a pylon or other type of road front sign for the Building, the Tenant shall be entitled to install, at its sole cost and expense a sign thereon in the same proportion as the Tenant's Operating Cost Percentage.

EXHIBIT E:  TENANT ESTOPPEL

TENANT ESTOPPEL CERTIFICATE

[LANDLORD]

Re:  Lease between _____ as landlord ("Landlord"), and
_____ ___ as tenant ("Tenant") dated _____, 200____, amended
_____ (collectively "Lease") for space described as _____
("Demised Premises").

Gentlemen:

The undersigned is Tenant pursuant to the Lease described above.  The undersigned hereby certifies, represents and warrants to you as of the date hereof as follows:

1.      Attached hereto as Exhibit A is a true, complete and accurate copy of the Lease, and the Lease has not been modified, supplemented or superseded in any matter other than by the documents, if any, which are attached hereto.  The Lease constitutes a complete statement of the agreements, covenants, terms and conditions of Landlord and Tenant with respect to the letting of the Demised Premises, and there are no other agreements or understandings between Landlord and Tenant with respect to the Demised Premises, the Lease, the letting or otherwise.

2.      The current term of the Lease commenced on _____, 200_ and will end on _____ .  Except as described below, Tenant has no:

(a)      options or other rights to renew or extend the term of the Lease or to cancel the Lease,

(b)      options or other rights to purchase the Demised Premises of which the Demised Premises is a part or rights of first refusal or first offer in respect thereof, or

(c)      options or other rights of first refusal or first offer in respect of any leasing thereof.  (If there are any such options or rights, describe; if there is none write "NONE")

None of such options or rights, if any, have been exercised except as specified below (write "NONE" if there is none):

3.      The Lease is in full force and effect and legal, valid, binding and enforceable.

4.      To the best of Tenant's knowledge, there is no default under the Lease in the payment of rent or any other amounts or in the observance or performance of any other agreement, covenant, term or condition to be observed or performed by Landlord or Tenant, and the undersigned has no knowledge of any state of facts or events which,

with the passage of time or the giving of notice, would constitute a default by Landlord or Tenant.

5.    Tenant has received no rent or other concessions, except as specified below (write "NONE" if there is none):

6.    Tenant has received no rent or other concessions that remain outstanding. The annual and monthly base and percentage rental, the indices payments, and the taxes, insurance, CAM and other operating expense payments and the dates to which they have been paid, are described below:

    Base rental:
    Date paid through:
    Percentage Rental:
    Date paid through:
    Other Payment Obligations:
    Date paid through:

7.    Tenant has accepted possession and is in actual occupancy of the Demised Premises and there are no setoffs, defenses or counterclaims against enforcement of the obligations to be observed or performed under the Lease.

8.    There is no work to be performed by Landlord that has not been completed, and there are no defects or deficiencies which entitle Tenant to cancel the Lease or to receive any other benefit or relief.

9.    The undersigned has not deposited any funds to secure any of its obligations under the Lease and has not paid any advance rentals or other amounts, except as specified below (write "NONE" if there is none):

10.    Tenant has no knowledge of any broker or other intermediary who is entitled to receive any leasing, brokerage or other compensation out of or with respect to rentals or other payments or rights or obligations under the Lease or with respect to the Lease itself.

11.    Landlord has not waived the observance or performance by Tenant of any of the agreements, covenants, terms or conditions to be observed or performed by Tenant under the Lease.

12.    To the best of Tenant's knowledge, Tenant has never permitted or suffered the generation, treatment, storage or disposal of any hazardous waste or any other hazardous or toxic substances in, on or about the Demised Premises or any adjacent property.

13.    The party executing this Tenant Estoppel Certificate on behalf of Tenant is fully authorized and empowered to do so.

The certifications, representations and warranties herein made shall be binding upon the undersigned, its successors and assigns, and shall inure to your benefit and the benefit of your successors and assigns.  Tenant acknowledges that Landlord may rely on this Tenant Estoppel Certificate in conjunction with its purchase and thereafter its ownership and operation of the so-called _____.

Dated:            , 200

Tenant Name: _____

98375 1

## First Amendment To Lease Dated January 2, 2004
### (this "Amendment") by and between LEEBER REALTY LLC, as Landlord and TRUSTCO BANK, as Tenant

### W I T N E S S E T H:

**WHEREAS**, Landlord and Tenant entered into a certain lease agreement dated January  , 2004 (the "Lease") for certain Demised Premises located at 21 Route 59, Nyack, New York; and

**WHEREAS**, Landlord and Tenant desire to amend the Lease in accordance with the following terms and provisions.

**NOW THEREFORE**, in consideration of the sum of ONE and 00/100 ($1.00) DOLLAR and such other good and valuable consideration, the receipt and sufficiency of which is hereby expressly acknowledged, Landlord and Tenant agree to amend the Lease as follows:

1.  Section 1.01 of the Lease relating to an annual limitation of $3.50 per square foot of the Leased Premises for Tenant's pro rata share of insurance and operating costs is hereby amended to state that such annual limitation shall be increased at the same time and by the same proportion as Minimum Annual Rent increases (i.e. by fifteen percent (15%) for lease years 6-10 and by twelve percent (12%) for each five (5) lease years thereafter on a compounding basis).

2.  Except as modified herein the Lease terms shall remain in full force and effect.

3.  This Amendment may be executed in counterparts, and upon signing by each of the parties, shall have the same force and effect as though all parties signed the same copy.

**IN WITNESS WHEREOF**, the parties hereto have executed this First Amendment to Lease as of the day first set forth above.


LANDLORD:                              TENANT:

LEEBER REALTY LLC                      TRUSTCO BANK

By _____          By _____
            , Manager