UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
LEEBER REALTY LLC and BERNARD COHEN,
both individually and in his capacity as Trustee of the
Bernard Cohen Revocable Trust,　　　　　　　　　　　　　No. 17-cv-2934(KMK)(LMS)

　　　　　　　　　　　Plaintiffs,　　　　　　　　　　　ECF Case

　　　　-v-

TRUSTCO BANK,

　　　　　　　　　　　Defendant.
------------------------------------------------------------------x


PLAINTIFFS' MEMORANDUM OF LAW SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT


　　　　　　　　　　　　　　　　　　　GREENBERG FREEMAN LLP
　　　　　　　　　　　　　　　　　　　110 East 59th Street, 22nd Floor
　　　　　　　　　　　　　　　　　　　New York, New York 10022
　　　　　　　　　　　　　　　　　　　(212) 838-3121
　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiffs*

# **TABLE OF CONTENTS**

                                                                                                                        **Page**

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ...............................................................................................................1

STATEMENT OF UNDISPUTED FACTS .......................................................................1

ARGUMENT .......................................................................................................................4

    Point I

    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON
    THEIR FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT .................4

    Point II

    PLAINTIFFS ARE ENTITLED TO RECOVER THEIR ATTORNEYS'
    FEES AND OTHER COSTS INCURRED IN ENFORCING THE TERMS
    OF THE LEASE ........................................................................................................10

    Point III

    TRUSTCO'S COUNTERCLAIMS ARE DEFICIENT
    AS A MATTER OF LAW AND SHOULD BE DISMISSED .................................12

CONCLUSION ...................................................................................................................13

# **TABLE OF AUTHORITIES**

                                                                                                                     Page(s)

CASES

Amto, LLC v. Bedford Asset Mgmt., LLC,
  168 F. Supp. 3d 556 (S.D.N.Y. 2016) ...............................................................................4

Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany,
  522 F.3d 182 (2d Cir. 2008) ............................................................................................10

Barash v. Pennsylvania Terminal Real Estate Corp.,
  26 N.Y.2d 77 (1970) ......................................................................................................5, 7

Costa v. Sears Home Improvement Products, Inc.,
  212 F. Supp. 3d 412 (W.D.N.Y. 2016) ...........................................................................11

Dave Herstein Co. v. Columbia Pictures Corp.,
  4 N.Y.2d 117 (1958) .........................................................................................................6

Friedman-White Realty Co. v. Garage Dev. Corp.,
  130 Misc. 266, 268 (Mun. Ct. N.Y. Co. 1927) .................................................................7

Holy Properties Ltd., L.P. v. Kenneth Cole Prods., Inc.,
  87 N.Y.2d 130 (1995) .....................................................................................................10

Millea v. Metro–North Railroad Co.,
  658 F.3d 154 (2d Cir. 2011) ............................................................................................10

M.Y. Realty Corp. v. Atl. First Fin. Corp.,
  19 A.D.3d 156 (1st Dep't 2005) .......................................................................................9

N.N. Int'l (USA) Corp. v. Gladden Properties, LLC,
  52 Misc. 3d 1206(A), 2016 WL 3747428 (Sup. Ct. N.Y. Co. 2016) .............................6, 7

NYCHA Coney Island Houses v. Ramos,
  41 Misc. 3d 702, 712 (Civ. Ct. Kings Co. 2013) ..............................................................5

New York State Association for Retarded Children, Inc. v. Carey,
  711 F.2d 1136 (2d Cir. 1983) ..........................................................................................10

170 W. End Ave. Owners Corp v. Turchin,
  37 Misc. 3d 1226(A), 2012 WL 5974139 (Civ. Ct. N.Y. Co. 2012) .................................5

Reiter v. MTA New York City Transit Authority,
  457 F.3d 224 (2d Cir. 2006) ............................................................................................11

**Page(s)**

RVC Assocs. v. Rockville Anesthesia Grp.,
  267 A.D.2d 370 (2nd Dep't 1999) ...........................................................................8

Schwartz, Karlan & Gutstein v. 271 Venture,
  172 A.D.2d 226 (1st Dep't 1991) ............................................................................8

Serin v. Northern Leasing Systems, Inc.,
  No. 06 Civ. 1625, 2011 WL 1467560 (S.D.N.Y. Apr. 19, 2011),
  aff'd, 501 F. App'x 39 (2d Cir. 2012)....................................................................10

SI Ins. Servs. LLC v. Miner,
  801 F. Supp. 2d 175 (S.D.N.Y. 2011)......................................................................6

Sitts v. United States,
  811 F.2d 736 (2d Cir. 1987) ....................................................................................8

TDS Leasing, LLC v. Tradito,
  148 A.D.3d 1079 (2nd Dep't 2017) .....................................................................5, 6

Trinity Ctr., LLC v. Wall St. Cor Inc.,
  4 Misc. 3d 1026(A), 2004 WL 21272162004 (Sup. Ct. N.Y. Co. 2004) ...............5

Wills v. Amerada Hess Corp.,
  379 F.3d 32 (2d Cir. 2004) ......................................................................................8

## STATUTES

N.Y. Real Prop. L. § 227 (McKinneys) ................................................................................8

# I. INTRODUCTION

Plaintiffs Leeber Realty LLC ("Leeber") and Bernard Cohen, individually and as the trustee of the Bernard Cohen Revocable Trust (collectively, "Plaintiffs" or "Landlord") submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 56, for an order: (1) granting summary judgment on their first cause of action, and awarding Plaintiffs damages in the amount of $948,504.41, plus interest at 8% per annum from November 15, 2017: (2) awarding attorneys' fee and other costs on their second cause of action in the amount of $189,087.77, plus additional costs and fees incurred after December 20, 2017; and (3) dismissing both counterclaims asserted by defendant Trustco Bank ("Trustco" or "Tenant").

This is a simple case for breach of contract arising from a 25-year lease of a commercial property in Nyack, New York. It is undisputed that Trustco quit the leased premises and stopped paying rent with 12.5 years remaining on the lease, and refused to cure its default. As described below, the only defense that Trustco's has made any effort to pursue – constructive eviction – is deficient as a matter of law for a host of reasons.

# II. STATEMENT OF UNDISPUTED FACTS

The Court is respectfully referred to the accompanying Rule 56.1 Statement ("R.56.1") for a full recitation of the undisputed facts relevant to this motion.[1] A summary appears below.

A. <u>The Parties and the Property</u>

Plaintiffs hold all right, title and interest in a commercial property located at 21 Route 59, Nyack, NY (the "Property"). Bernard Cohen, the sole member of Leeber and the sole trustee of the Trust, is 91-years old, resides in Florida fulltime, and does not regularly visit the Property. (R.56.1 at ¶¶ 1-7.)

---

[1] Capitalized terms not defined in this memorandum of law shall have the same meaning as they do in the Rule 56.1 Statement. Any citations to "Exh." shall refer to the exhibits attached to the Rule 56.1 Statement.

The Property contains a building with two leasable units of approximately equal size. The building is served by a single sewer line (or lateral) that connects both units to the town's sewer line. (R.56.1 at ¶¶ 8-10.)

Trustco rented one of the units at the Property (the "Premises") under a lease (the "Lease") with 20-year term that started on November 1, 2004.[2] In 2008, the parties agreed to extend the Lease term by an additional five years. (R.56.1 at ¶¶ 13-27.)

B. <u>The Alleged Conditions at the Premises and Trustco's Failure to Act or Give Notice</u>

The record evidence shows that, on six occasions between January 2012 and November 2016, Trustco experienced an issue with the plumbing at the Property that required it to call a plumber. On three of those occasions, the plumber advised Trustco of a potential problem with the sewer line and/or recommended further action. Prior to quitting the Premises, Trustco never notified Plaintiffs of any of these service calls or the plumbers' findings. (R.56.1 at ¶¶ 28-43.)

On December 18, 2016, Joseph Marley, the head of Trustco's facilities department at the time, spoke to Mr. Cohen by telephone and informed him that the toilet at the Premises was clogged. In response to Mr. Marley's call, Mr. Cohen called a plumber to address the issue. Nonetheless, a flood occurred at the Premises on December 19. Mr. Cohen spoke to a female employee at the Trustco branch on December 20, 2016, and was told that the issue had been resolved by the plumber. After that, Mr. Cohen heard nothing more from Trustco about the toilet or the sewer, did not receive an invoice from Trustco or the plumber, and there is no evidence of any backups or other issues with the plumbing facilities or sewer line since December 20, 2016. (R.56.1 at ¶¶ 44-51, 63-64.)

---

[2] The relevant terms of the Lease are identified in the Rule 56.1 Statement and, to the extent necessary for this motion, are referenced below.

After the flood on December 19, 2016, Trustco retained a company called ServPro to perform a remediation of the Premises. Plaintiffs were not told that Trustco had hired ServPro, and never communicated with ServPro. ServPro reported to Trustco on December 22 or 23, 2016 that it had discovered mold at the Premises. (R.56.1 at ¶¶ 52-55.)

After mold was found, ServPro recommended that Trustco hire a company called Envirocheck to conduct a mold investigation and assessment. Through laboratory testing, Envirocheck confirmed the presence of mold and issued a report to Trustco on or about January 9, 2017, describing the conditions at the Premises and containing a protocol for ServPro to follow to remediate the mold. (R.56.1 at ¶¶ 56-57.)

On or about January 31, 2017, following ServPro's discovery of additional mold at the Premises, Envirocheck prepared a second report, which confirmed the presence of additional mold at the Premises, and contained a protocol for ServPro to follow to remediate the additional mold that had been discovered. Plaintiffs received neither Envirocheck report. (R.56.1 at ¶¶ 58-61.)

After Trustco received Envirocheck's second report confirming that the mold had spread beyond what was initially discovered, Trustco directed ServPro to cease all remediation work at the Premises, without informing Plaintiffs. Trustco then decided to close the branch at the Premises, and informed the Office of the Comptroller of the Currency (a federal agency that regulates and oversees banks) that it was closing the branch due to the presence of mold and ongoing problems with the sewer system. Trustco did not inform Plaintiffs that it intended to close its retail branch prior to Trustco quitting the Premises. (R.56.1 at ¶¶ 62, 65-66.)

C.  Trustco's Breach of the Lease

On March 28, 2017, Plaintiffs received a letter from Trustco's counsel, dated March 27, 2017 (the "March 27 Letter"), stating that, due to hazardous conditions that have existed at the

Premises "since in or about 2009," Trustco was claiming a "constructive eviction" and unilaterally terminating the Lease as of March 31, 2017. This was the first time Plaintiffs ever received a written notice or any document from Trustco complaining about (or even mentioning a problem with) conditions at the Premises, and the first notice to Plaintiffs of any type (oral or written) indicating that there was mold. (R.56.1 at ¶¶ 67-70.)

Leeber's counsel notified Trustco that quitting the Premises and failing to pay Rent were defaults under the Lease, but Trustco refused to cure its defaults. (R.56.1 at ¶¶ 71-74.)

Leeber commenced this action on April 21, 2017. On November 15, 2017, Leeber sent written notice to Trustco stating that it was exercising its contractual right to terminate the Lease and accelerate all future payments of Rent, and demanding immediate payment of all Rent and other charges due and payable under the Lease, including restoration costs, interest, late fees, attorneys' fees and litigation costs. Trustco has ignored this demand. (R.56.1 at ¶¶ 76-79.)

Plaintiffs now move for summary judgment

### III. ARGUMENT

#### Point I

PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON
THEIR FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT

Count I of the amended complaint asserts a claim for breach of contract. Under New York law, which governs the Lease, "a plaintiff must establish four elements to sustain a breach of contract claim: '(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages.'" Amto, LLC v. Bedford Asset Mgmt., LLC, 168 F. Supp. 3d 556, 573 (S.D.N.Y. 2016) (Karas, J., quoting Fischer & Mandell, LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011)). Each of these elements is readily established based upon the undisputed facts.

4

A.   An Agreement

There is no dispute between the parties that Leeber and Trustco entered into a 20-year Lease for the Premises and that, by mutual agreement, the term of the Lease was extended for five years, until October 31, 2029. (Exhs. 3 and 8; Exh. 7 at ¶¶ 1-2.)

B.   Adequate Performance by Plaintiffs

Whether a landlord has adequately performed under the lease is a two-part inquiry: First, did the landlord take any action that resulted in an actual eviction of the tenant from all or part of the leased premises and, second, was the tenant constructively evicted from the premises? If neither, the landlord has not breached the lease. Barash v. Pennsylvania Terminal Real Estate Corp., 26 N.Y.2d 77, 82-83 (1970) (landlord breaches the lease where there is an actual eviction ("a physical expulsion or exclusion" from the premises) or a constructive eviction); see also Trinity Ctr., LLC v. Wall St. Cor Inc., 4 Misc. 3d 1026(A), 2004 WL 21272162004 at *3 (Sup. Ct. N.Y. Co. 2004) (unreported decision) (listing the elements that a landlord needs to prove to obtain summary judgment where the tenant asserts constructive eviction).

There is no evidence in the record, nor has there been any suggestion, that Trustco was actually evicted or otherwise physically prevented from occupying any portion of the Premises.

With respect to constructive eviction, Trustco, as the tenant, bears the burden of proving this defense. NYCHA Coney Island Houses v. Ramos, 41 Misc. 3d 702, 712 (Civ. Ct. Kings Co. 2013); 170 W. End Ave. Owners Corp v. Turchin, 37 Misc. 3d 1226(A), 2012 WL 5974139 at *5 (Civ. Ct. N.Y. Co. 2012) (citing Barash, 26 N.Y.2d at 83)). To establish a constructive eviction, the tenant must prove that "the landlord's wrongful acts substantially and materially deprive[d] the tenant of the beneficial use and enjoyment of the premises." Barash, 26 N.Y.2d at 83 (1970). Before a tenant can assert a constructive eviction defense, however, it must first establish that it

5

has fully complied with the terms of the lease. Dave Herstein Co. v. Columbia Pictures Corp., 4 N.Y.2d 117, 121 (1958) (tenant must "perform the conditions precedent to maintain the action for breach of the covenant of quiet enjoyment"); accord TDS Leasing, LLC v. Tradito, 148 A.D.3d 1079, 1080 (2nd Dep't 2017). Further, where the claim of constructive eviction is based on the landlord's alleged breach of its duty to repair, as is the case here, the tenant "must also show that the landlord knew, or should have known, about the need for repairs." N.N. Int'l (USA) Corp. v. Gladden Properties, LLC, 52 Misc. 3d 1206(A), 2016 WL 3747428 at *3 (Sup. Ct. N.Y. Co. 2016) (unreported decision) (citing Thomas v. Kingsland, 108 N.Y. 616, 617 (1888)).

Based on the undisputed facts in the record, Trustco cannot establish a constructive eviction as a matter of law. Since Trustco is the one with the burden of proving constructive eviction, Plaintiffs will reserve their specific response for its reply memorandum, but will briefly outline here several obvious reasons why Trustco's constructive eviction defense is certain to fail.

First, it is undisputed that Trustco failed to comply with the notice requirements contained in the Lease, including the requirement that Tenant "immediately notify Landlord in writing of any environmental concerns" at the Premises and "give prompt notice to Landlord . . . of any defects [at the Premises] or in any fixtures or equipment." (Exh. 3 at §§ 5.07(b), 13.01(a), 14.06; Exh. 5 at 75/15 – 76/11; Exh. 7 at ¶¶ 5-6; Cohen Decl. at ¶¶ 17-19.) "Such written notice requirements are fully enforceable" and "serve the valuable function of allowing the purportedly breaching party to distinguish between minor complaints or posturing by its contractual partner and an actual threat of termination." USI Ins. Servs. LLC v. Miner, 801 F. Supp. 2d 175, 181 (S.D.N.Y. 2011). Trustco's failure to comply with material terms in the Lease bars it from claiming constructive eviction. Dave Herstein, 4 N.Y.2d at 121 (full compliance with lease terms is a prerequisite for asserting a constructive eviction); TDS Leasing, 148 A.D.3d at 1080 (same).

6

Second, putting aside the contractual notice requirements of the Lease, Trustco cannot prove, as a matter of law, that Plaintiffs "knew, or should have known, about the need for repairs," with respect to either mold or alleged sewer problems because Trustco never told Plaintiffs about any of these issues until three days before it quit the Premises. N.N. Int'l, 2016 WL 3747428 at *3. The record is undisputed that Plaintiffs neither knew nor could have known of the mold until Mr. Cohen received the March 27 Letter from Trustco's attorney. (Exh. 5 at 75/15 – 76/11; Exh. 13 at 103/6 – 104/3; Exh. 25.) Likewise, although Trustco was informed by its plumbers, years before quitting the Premises, of potential issues with the sewer line that should be investigated, Trustco never shared this information with the Landlord. (Exh. 7 at ¶¶ 18-20; Exhs. 11 and 12.)

Third, under the clear and unambiguous provisions of the Lease, the Landlord was not responsible for remediating the interior of the Premises where mold was found nor for maintaining the sewer line connected to the Premises, which form the sole bases for Trustco's claim for constructive eviction. Section 7.01 of the Lease provides that Trustco ". . . shall, at its own cost and expense, take good care of and make necessary non-structural repairs to the interior of the [ ] Premises, and the . . . appurtenances thereto, including, but not limited to, . . . floor coverings, interior walls, . . . plumbing, [and] sewage facilities . . . ." (Exh. 3, § 7.01; see also Exh. 20 at pp. 11-15 & appendix; Exh. 21 at p. 8.). As a matter of both law and common sense, a tenant cannot establish constructive eviction based on a landlord's failure to repair where the lease places the onus of maintenance and repairs on the tenant. Friedman-White Realty Co. v. Garage Dev. Corp., 130 Misc. 266, 268 (Mun. Ct. N.Y. Co. 1927).

Fourth, Trustco has not designated an expert to opine on the cause of either the mold or the sewage backups at the Premises. Given that Trustco has the burden of proving the facts upon which it bases its claim of constructive eviction, see Barash, 26 N.Y.2d at 83, its failure to

7

designate an expert to prove that the Landlord caused the alleged hazardous conditions is fatal to its defense. See Wills v. Amerada Hess Corp., 379 F.3d 32, 46 (2d Cir. 2004) (affirming district court's grant of summary judgment where expert testimony was required to prove an element of the claim, but the party with the burden of proof did not proffer admissible expert testimony); Sitts v. United States, 811 F.2d 736, 742 (2d Cir. 1987) (same).

Fifth, while New York Real Property Law § 227 provides a tenant with the right to terminate a lease where the landlord violates the covenant of quiet enjoyment, the provision of that statute may be waived by an "express agreement to the contrary" in a commercial lease. N.Y. Real Prop. L. § 227 (McKinneys);[3] accord RVC Assocs. v. Rockville Anesthesia Grp., 267 A.D.2d 370, 371 (2nd Dep't 1999) (tenants that waive rights under Real Property Law § 227 "are precluded from asserting constructive eviction as a defense"); Schwartz, Karlan & Gutstein v. 271 Venture, 172 A.D.2d 226, 228 (1st Dep't 1991) ("Real Property Law § 227 . . . expressly excludes its application where, as here, the parties, in writing, have agreed to the contrary"). Here, § 16.01 of the Lease expressly provides that the Tenant's sole remedy in the event of a casualty that causes a partial or total destruction of the Premises is an abatement of Rent for the period and to the extent that the Premises are untenantable, and provides Tenant with no right to terminate the Lease. (Exh. 3, § 16.01.) Thus, even if Trustco could prove that the Landlord created the alleged hazardous conditions at the Premises and had a duty to repair them, it did not have the right to terminate the Lease and abandon the Premises by claiming constructive eviction.

---

[3] "Where any building, which is leased or occupied, is destroyed or so injured by the elements, or any other cause as to be untenantable, and unfit for occupancy, and no express agreement to the contrary has been made in writing, the lessee or occupant may, if the destruction or injury occurred without his or her fault or neglect, quit and surrender possession of the leasehold premises, and of the land so leased or occupied; and he or she is not liable to pay to the lessor or owner, rent for the time subsequent to the surrender."

8

Finally, given Trustco's assertion that the conditions about which it complained had been occurring "since in or about 2009" (Exh. 25), Trustco's unreasonable delay in quitting the Premises precludes it from claiming constructive eviction. M.Y. Realty Corp. v. Atl. First Fin. Corp., 19 A.D.3d 156 (1st Dep't 2005) (defendant cannot claim constructive eviction where it "failed to abandon the premises with reasonable promptness" after conditions arose, citing cases).

C.   Breach By Trustco

The Lease requires, among other things, that Trustco operate a retail bank branch at the Premises continuously for the full term of the Lease, and that Rent be paid in monthly installments when due. (Exh. 3, §§ 1.01, 4.02(b), 5.03, 8.01, 9.02, 14.02.) It is undisputed that Trustco vacated the Premises before the term was expired, has not paid any Rent after March 2017, and has failed to cure its defaults despite written notice of same. (Exh. 7 at ¶ 21; Exhs. 25, 27 and 28.)

D.   Damages

Plaintiffs have submitted an expert report from a Certified Public Accountant (unrebutted by Trustco) calculating the damages to which Plaintiffs are entitled caused by Trustco's breach of the Lease. (Exh. 30.) The total amount of unpaid Rent due to Plaintiffs, discounted to net present value using a 6% discount as required under § 20.02(b) of the Lease, and inclusive of interest and late fees through November 15, 2017, is $912,650.41. (Exh. 30 at §§ 4 and 5 and exhibits A-C thereto.) Plaintiffs are also entitled under the Lease to recover $36,000 in order to restore the Premises to its condition at the start of the Lease term. (Id. at §§ 4 and 5 and exhibit I-2.) Thus, Plaintiffs' total damages are $948,504.41 as of November 15, 2017. Plaintiffs are also entitled to collect interest on this amount at 8% interest per annum from November 15, which Plaintiffs' expert has calculated to be $200.03 per day. (Id. at §§ 4 and 5 and exhibit A thereto.)

Notably, because the Lease at issue here is a commercial Lease, Plaintiffs have no obligation to try to rent the Premises to mitigate their damages. Holy Properties Ltd., L.P. v. Kenneth Cole Prods., Inc., 87 N.Y.2d 130, 134 (1995) ("Once the tenant abandoned the premises prior to the expiration of the lease, . . . the landlord was within its rights under New York law to do nothing and collect the full rent due under the lease").

## Point II

### PLAINTIFFS ARE ENTITLED TO RECOVER THEIR ATTORNEYS' FEES AND OTHER COSTS INCURRED IN ENFORCING THE TERMS OF THE LEASE

Count II of the amended complaint seeks an award of reasonable attorneys' fees and costs pursuant to § 20.08 of the Lease, which provides that:

> If any legal fees and costs are incurred by Landlord in enforcing the terms of this Lease, then Tenant shall be liable for such reasonable legal fees and costs. Same shall be due and payable upon presentation of a bill therefor.

(Exh. 3, § 20.08.) Thus, if the Court determines that Trustco breached the Lease, Plaintiffs should be awarded reasonable attorneys' fees and the costs of pursuing this action.

Analysis of an application for attorneys' fees should begin with the court's determination of a "presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany, 522 F.3d 182, 189 (2d Cir. 2008). That amount is calculated using the lodestar method, multiplying a "reasonable hourly rate" by the "reasonable number of hours required by the case." Millea v. Metro–North Railroad Co., 658 F.3d 154, 166 (2d Cir. 2011). A court may only award attorneys' fees if the application is accompanied by "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983). The records should be "sufficiently detailed to allow a court to determine if the time and labor expended was reasonable." Serin v. Northern Leasing Systems, Inc., No. 06 Civ.

1625, 2011 WL 1467560, at *6 (S.D.N.Y. Apr. 19, 2011), aff'd, 501 F. App'x 39 (2d Cir. 2012). The Court should also examine whether the attorneys' hourly rates are "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Reiter v. MTA New York City Transit Authority, 457 F.3d 224, 232 (2d Cir. 2006) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)). However, a court need not "engage in a line-by-line analysis of [a] fee application" as a prerequisite to awarding fees. Costa v. Sears Home Improvement Products, Inc., 212 F. Supp. 3d 412, 424 (W.D.N.Y. 2016).

As described in the accompanying declaration of Plaintiffs' lead counsel, Michael A. Freeman ("Freeman Decl."), Mr. Freeman has over 28 years' experience litigating complex cases in federal and state courts in New York and elsewhere. (Freeman Decl. ¶¶ 6-9 and exhibit A thereto.) The fee being charged to Plaintiffs for this action is $420 per hour plus 3% of the total recovery, exclusive of attorneys' fees and costs. (Id. at ¶¶ 10-11.) In September 2017, Magistrate Judge James Francis IV issued a report and recommendation in a fee application in an action entitled Manhattan Review LLC et al. v. Yun et al., Case No. 16-CV-00102 (LAK)(JCF), in which Mr. Freeman represented some of the prevailing parties. (Id. at exhibit B.) Magistrate Judge Francis held that Mr. Freeman's rate in that case – $440 per hour – was a reasonable in light of his experience. (Id. at pp. 24-25.) The report and recommendation was subsequently adopted by the district judge, Hon. Lewis Kaplan. (Id., last page.) The rate approved for Mr. Freeman in the Manhattan Review case is effectively the same rate here, where Mr. Freeman is charging a lower hourly rate, but stands to receive additional compensation for a successful result. (Freeman Decl. at ¶¶ 12-14.)

Included with and described in Mr. Freeman's accompanying declaration are invoices and contemporaneous time records that itemize each task performed and the time spent on each task in

prosecuting this action. (Freeman Decl. at ¶¶ 16-28 and exhibit C.) Based on this evidence, Plaintiffs are requesting hourly fees, through December 20, 2017, in the amount of $130,200, plus an estimated success fee of $28,460, for total attorneys' fees of $158,660. (Id. at ¶¶ 29-32.)

In addition to attorneys' fees, based on itemized list of expenses and invoices that are included with Mr. Freeman's declaration, Plaintiffs are requesting costs and expenses incurred in enforcing the terms of the Lease, through December 20, 2017, in the amount of $30,427.77. (Freeman Decl. ¶¶ 34-35 and exhibit D.).

In sum, on Count II of their amended complaint, Plaintiffs request an award of attorneys' fees and cost in an amount not less than $189,087.77 pursuant to § 20.08 of the Lease, plus interest from a reasonable date after Plaintiffs' demand for fees and costs. (Freeman Decl. at exhibit E.) In addition, if they prevail on this motion, Plaintiffs respectfully request leave to submit evidence of additional attorneys' fees and costs incurred after December 20, 2017.

**Point III**

TRUSTCO'S COUNTERCLAIMS ARE DEFICIENT
AS A MATTER OF LAW AND SHOULD BE DISMISSED

Trustco has interposed two counterclaims: (1) for a declaration that it has been constructively evicted from the Premises; and (2) to recover $36,787 paid to ServPro for mold remediation at the Premises, which included cleaning and/or removing floor coverings and interior walls. Both of these counterclaims are deficient as a matter of law and should be dismissed.

Trustco's first counterclaim for a declaration of constructive eviction should be dismissed for the reasons stated above at pp. 5-9.

As for Trustco's second counterclaim, Plaintiffs have submitted an expert report from a licensed mold assessor, which is unrebutted by Trustco, establishing that all the work that was and/or will be required to remediate the mold at the Premises will be performed only on the interior

of the Premises. (Exh. 21 at p. 8; see also Exh. 20 at pp. 11-15 & appendix.) As stated above, under § 7.01 of the Lease, Trustco is required "at its own cost and expense" to maintain and make "necessary non-structural repairs to the interior of the Demised Premises," including the floor coverings and interior walls. (Exh. 3 at § 7.01.) As such, Trustco is full responsible for the portion of the Premises affected by mold, and cannot pass its remediation costs onto the Landlord. Indeed, Trustco's actions in hiring and paying ServPro directly without involving the Landlord (Exh. 14; Exh. 15 at 21/9 – 23/5), is consistent with the terms of § 7.01 of the Lease, and evinces Trustco's understanding that it was solely responsible for the interior remediation cost.

## IV. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court enter an Order: (1) granting Plaintiffs' motion for summary judgment and awarding Plaintiffs damages, attorneys' fees and costs in the amounts stated above; (2) granting leave to Plaintiffs to submit evidence of attorneys' fees and costs incurred after December 20, 2017; and (3) dismissing both of Trustco's counterclaims.

Dated: New York, New York,
      December 26, 2017

    Respectfully submitted,

    GREENBERG FREEMAN LLP

    By: /s/ *Michael A. Freeman*
        Michael A. Freeman
        110 East 59th Street, 22nd Floor
        New York, NY 10022
        (212) 838-3121
        *Attorneys for Plaintiffs*