UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
LEEBER REALTY LLC and
BERNARD COHEN, both individually and
in his capacity as Trustee of the Bernard
Cohen Revocable Trust,

        Plaintiffs,

       -against-

TRUSTCO BANK,

        Defendant.
-------------------------------------------------------x

Case No. 17-cv-2934(KMK)(LMS)


## DEFENDANT'S MEMORANDUM OF LAW


ADAM K. KURLAND,
ATTORNEY AT LAW, P.C.
337 North Main Street, Suite 11
New City, New York 10956
(845) 638-4700
*Attorneys for Defendant*

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 2

II.  DEFENDANT'S RESPONSE TO ................................................................... 5

PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS .................................... 5

III. ARGUMENT ................................................................................................... 6

   A.  Standard for Summary Judgment ................................................................ 6

   B.  Defendant has been Constructively Evicted by Plaintiffs, Precluding Summary Judgment 7

   C.  Summary Judgment Must be Denied as to Damages ................................... 14

      i.   Plaintiffs' Claim for Accelerated Rents Must be Denied ............................. 14

      ii.  Plaintiffs' Claim for Accelerated Rents for Renewal Term Must be Denied ............... 16

   D.  Plaintiffs' Attorneys Fees are Highly Excessive ............................................ 18

   E.  Summary of Material and Triable Issues of Fact ........................................... 19

   F.  Defendant's Counterclaims Are Not Deficient And Should Not Be Dismissed ............... 21

IV.  CONCLUSION ................................................................................................ 23

# TABLE OF AUTHORITIES

**Cases**

*1050 Tenants Corp. v. Lapidus,* N.Y.L.J., 7/30/98, p. 21, col. 1 . . . . . . . . . . . . . . . . . . . 18

*1328 Broadway, LLC v. MCM Footwear Ltd.,* 1 Misc.3d 910(A) . . . . . . . . . . . . . . . . . . 13

*170 W. End Ave. Owners Corp. v. Turchin,* 37 Misc.3d 1226(A) . . . . . . . . . . . . . . . . . . 7

*172 Van Duzer Realty Corp. v. Globe Alumni Student Assistance Assoc, Inc.,* 24 N.Y.3d 528 . 15

*Barash v Pennsylvania Term. Real Estate Corp.,* 26 NY2d 77 . . . . . . . . . . . . . . . . . . . . 13

*Barash v. Penn. Term. Real Estate Corp.,* 26 NY2d 77 . . . . . . . . . . . . . . . . . . . . . . . . 13

*Barash v. Pennsylvania Terminal Real Estate Corp.,* 26 N.Y.2d 77 . . . . . . . . . . . . . . . . . 7

*Barrett v. Jacobs,* 255 N. Y. 520, 522 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Benderson v. Poss,* 142 A.D.2d 937 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Braun v. Carey,* 280 App. Div. 1019 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Chestnut Realty Corp. v. Kaminsky,* 132 A.D.3d 797 . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Contemporary Mission, Inc. v. Famous Music Corp,* 557 F.2d 918, 925 . . . . . . . . . . . . . . 11

*Dave Herstein Co. v. Columbia Pictures Corp.,* 4 NY2d 117 . . . . . . . . . . . . . . . . . . . . . 8

*Di Menna & Sons v. City of New York,* 301 N. Y. 118 . . . . . . . . . . . . . . . . . . . . . . . . 6

*Eastside Exhibition Corp. v. 210 E. 86th St. Corp.,* 18 N.Y.3d 617 . . . . . . . . . . . . . . . . . 13

*Epstein v. Scally,* 99 A.D.2d 713, 714 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Esteve v. Abad,* 271 App. Div. 725, 727 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Friedman-White Realty Co. v. Garage Dev. Corp.,* 130 Misc. 266 . . . . . . . . . . . . . . . . . 11

*Gallo v. Prudential Residential Servs., LP,* 22 F.3d 1219, 1224 . . . . . . . . . . . . . . . . . . . 6

*Gravenhorst v. Zimmerman* (236 N. Y. 22, 38-39 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*International Publications, Inc. v. Matchabelli*, 260 N.Y. 451 . . . . . . . . . . . . . . . . . . . . . 14

*Johnson v. Cabrera*, 246 A.D.2d 578 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*M.Y. Realty Corp. v. Atl. First Fin. Corp.*, 19 AD3d 156 . . . . . . . . . . . . . . . . . . . . . . 12

*Manhattan Mansions v Moe's Pizza*, 149 Misc 2d 43 . . . . . . . . . . . . . . . . . . . . . . . . 13

*Manhattan Mansions v. Moe's Pizza*, 149 Misc. 2d 43 . . . . . . . . . . . . . . . . . . . . . . . 14

*N.N. Int'l (USA) Corp. v. Gladden Properties, LLC*, 52 Misc.3d 1206(A) . . . . . . . . . . . . . . 8

*Nestor v. Britt*, 270 A.D.2d 192 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*NYCHA Coney Island Houses v. Ramos*, 41 Misc.3d 702 . . . . . . . . . . . . . . . . . . . . . . 7

*Ross Realty v. V & A Iron Fabricators, Inc.*, 5 Misc. 3d 72 . . . . . . . . . . . . . . . . . . . . . 15

*RVC Assocs. V. Rockville Anesthesia Grp.*, 267 AD2d 370 . . . . . . . . . . . . . . . . . . . . . 12

*S.J. Capelin Assoc., Inc. v. Globe Mfg. Corp.*, 34 N.Y.2d 338, 341 . . . . . . . . . . . . . . . . . 6

*Salmon v. Twentieth Century Fox Film Corp.*, 3 N.Y.2d 395, 404 . . . . . . . . . . . . . . . . . . 6

*Schwartz, Karlan & Gutstein v. 271 Venture*, 172 AD2d 226 . . . . . . . . . . . . . . . . . . . . 12

*Scott v. Harris*, 550 U.S. 372, 378 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Sillman v. Twentieth Century-Fox Film Corp.*, 3 N.Y.2d 395, 404 . . . . . . . . . . . . . . . . . 6

*TDS Leasing, LLC v. Tradito*, 148 AD3d 1079 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Trinity Ctr., LLC v. Wall St. Cor Inc.*, 4 Misc.3d 1026(A) . . . . . . . . . . . . . . . . . . . . . 7

*Union City Union Suit Co. v Miller*, 162 AD2d 101 . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*USI Ins. Servs. LLC v. Miner*, 801 F.Supp.2d 175 . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Wills v. Amerada Hess Corp.*, 379 F.3d 32 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

E:\WPDATA\Trustco Bank\Memo of Law.docx

# I.     INTRODUCTION

Defendant Trustco Bank ("Trustco") submits this memorandum of law in opposition to Plaintiffs Leeber Realty LLC's ("Leeber") and Bernard Cohen's, individually and as the trustee of the Bernard Cohen Revocable Trust (collectively, "Plaintiffs"), motion for an order (1) granting summary judgment on their first cause of action, and awarding Plaintiffs damages in the amount of $948,504.41, plus interest at 8% per annum from November 15, 2017; (2) awarding attorneys' fees and other costs on their second cause of action in the amount of $189,087.77, plus additional costs and fees incurred after December 20, 2017; and (3) dismissing both counterclaims asserted by Trustco.

Plaintiffs are the owners of a commercial property located at 21 Route 59, Nyack, New York (the "Premises"). See paragraph 3, Affidavit of Robert M. Leonard sworn to the 18th day of January, 2018 ("Leonard Affidavit").

Defendant is a federal savings bank that offers banking services to businesses and consumers. See paragraph 4, Leonard Affidavit.

On or about December 31, 2003, Defendant and Plaintiff Leeber Realty LLC ("Leeber") entered into a written lease (the "Lease') pursuant to which Defendant leased a portion of the Premises from Leeber for the purpose of operating a retail banking branch. See paragraph 5, Leonard Affidavit.

Hazardous environmental conditions have existed at the Premises since in or about 2009, including but not limited to mold and sewage backup. See paragraph 6, Leonard Affidavit.

None of the aforesaid hazardous environmental conditions at the Premises were in any manner caused by or related to Defendant's use and/or occupancy of the Premises. See paragraph 7, Leonard Affidavit.

Plaintiffs failed and refused to cure the aforesaid hazardous environmental conditions at the Premises, notwithstanding Defendant's request for same. See paragraph 8, Leonard Affidavit.

Defendant repeatedly implemented professional remediation of the aforesaid hazardous environmental conditions at the Premises, at Defendant's sole cost and expense. See paragraph 9, Leonard Affidavit.

Notwithstanding the professional remediation performed at Defendant's sole cost and expense, the environmental hazards persisted at the Premises, such that Defendant's business was intermittently forced to shut down and a formal complaint was made to the U.S. Department of Labor, Occupational Safety and Health Administration. See paragraph 10, Leonard Affidavit.

As a result of the conditions at the Premises, Defendant was deprived of its ability to conduct its banking operations at the Premises in a continuous manner. In the banking industry, the continuous operation of a branch location is critically important in terms of the bank's ability to meet its customers' needs. In other words, it is very damaging to a bank's ability to attract and maintain customers when customers periodically and unpredictably find the branch closed. See paragraph 11, Leonard Affidavit.

In January, 2017, it became clear that it would not be possible to remediate the mold infestation of the Premises nor the persistent sewage backups without an extended closure of the branch. The Lease entitled Defendant to operate the Premises as a bank branch location. The ability to do so continuously – without intermittent interruption – was the essential part of what Defendant entered into the Lease to achieve. Once the mold and persistent sewage backups

3

made continuous operation impossible, the value of the Lease to Defendant was lost and the bank had no choice but to vacate, it being deemed to have been constructively evicted. <u>See</u> paragraph 12, Leonard Affidavit.

Defendant elected to terminate the Lease, effective March 31, 2017, by written notice to Leeber. <u>See</u> paragraph 13, Leonard Affidavit.

## II. DEFENDANT'S RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS

The Court is respectfully referred to Defendant's Response to Plaintiffs' Rule 56.1 Statement of Material Facts as though more fully set forth at length herein.

# III.   ARGUMENT

## A.  Standard for Summary Judgment

"To grant summary judgment it must clearly appear that no material and triable issue of fact is presented (*Di Menna & Sons v. City of New York*, 301 N. Y. 118). This drastic remedy should not be granted where there is any doubt as to the existence of such issues (*Braun v. Carey*, 280 App. Div. 1019), or where the issue is 'arguable' (*Barrett v. Jacobs*, 255 N. Y. 520, 522); 'issue-finding, rather than issue- determination, is the key to the procedure' (*Esteve v. Abad*, 271 App. Div. 725, 727). In *Gravenhorst v. Zimmerman* (236 N. Y. 22, 38-39) Chief Judge Hiscock, writing for this court, observed that one person may argue that as matter of law the assignor abandoned and lost the benefit of his rescission, whereas another might think that was a question of fact, and concluded: 'It never could have been, or in justice ought to have been, the intention of those who framed our Practice Act and rules thereunder that the decision of such a serious question as this should be flung off on a motion for summary judgment. Whatever the final judgment may be the defendants were entitled to have the issue deliberately tried and their right to be heard in the usual manner of a trial protected.'" *Sillman v. Twentieth Century-Fox Film Corp.*, 3 N.Y.2d 395, 404 (Ct of Appeals 1957). See also *Gallo v. Prudential Residential Servs.*, LP, 22 F.3d 1219, 1224 (2d Cir. 1994). See also *S.J. Capelin Assoc., Inc. v. Globe Mfg. Corp.*, 34 N.Y.2d 338, 341 [1974]; *Salmon v. Twentieth Century Fox Film Corp.*, 3 N.Y.2d 395, 404 [1957]; *Epstein v. Scally*, 99 A.D.2d 713, 714 [1st Dept 1984]).

In determining whether summary judgment is appropriate, the Court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the non-moving party. See *Scott v. Harris*, 550 U.S. 372, 378 (2007). Summary judgment is improper if "there is any evidence in the record from any source from which a reasonable inference could be drawn in

favor of the nonmoving party..." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

## B. Defendant has been Constructively Evicted by Plaintiffs, Precluding Summary Judgment

Plaintiffs allege that in order to determine adequate performance under a lease, the Court must make a two part inquiry, to wit: "did the landlord take any action that resulting an actual eviction of the tenant from all or part of the leases premises and, second, was the tenant constructively evicted from the premises?" <u>See</u> paragraph B, page 5 of Plaintiffs' Memorandum of Law.

Of course, adequate performance by a landlord under a lease involves far more than determining whether a tenant was actually or constructively evicted, and in the case at bar, there exist triable issues of material facts as to whether Defendant was constructively evicted by Plaintiffs under the Lease, precluding summary judgment.

In support of Plaintiffs' argument that they adequately performed under the lease, Plaintiffs cite to several cases that are highly distinguishable from the case at bar.

In *Barash v. Pennsylvania Terminal Real Estate Corp.*, 26 N.Y.2d 77 (1970), which was cited by Plaintiffs, there was no allegation of constructive eviction whatsoever and the tenant in that action was still occupying the premises. In the instant action, neither instance is found.

In *Trinity Ctr., LLC v. Wall St. Cor Inc.,* 4 Misc.3d 1026(A), which was also cited by Plaintiffs, the tenant waived any claim for constructive eviction in the lease and instead agreed to a rent abatement. Defendant in the instant action did not waive any claim for constructive eviction.

Plaintiffs further cite *NYCHA Coney Island Houses v. Ramos,* 41 Misc.3d 702 (Civil Ct., Kings Cty.) and *170 W. End Ave. Owners Corp. v. Turchin,* 37 Misc.3d 1226(A) (Civil Ct., NY

7

Cty.) in support of their motion. Both of those cases are highly distinguishable from the case at bar. In *NYCHA Coney Island Houses, supra,* the tenant was not permitted to amend its pleadings to include a claim for constructive eviction and the damage causing such eviction was deemed an act of God, which is not found in the case at bar; the damage that caused the constructive eviction was due to the neglect of Plaintiffs. In *170 W. End Ave. Owners Corp., supra,* the tenant never moved out of the premises, as Defendant has in this action, and the issue was remediated by landlord, therefore, there was no failure to act on the part of landlord, as is the case here.

In support of its allegation that a tenant must establish that it has fully complied with the lease terms prior to maintaining a cause of action for constructive eviction, Plaintiffs cite *Dave Herstein Co. v. Columbia Pictures Corp.,* 4 NY2d 117 (1958), which is not a case relating to constructive eviction at all, but for breach of the covenant of quiet enjoyment, and the tenant never moved out of the premises. Plaintiffs further cite to *TDS Leasing, LLC v. Tradito,* 148 AD3d 1079, which again is not an action for constructive eviction and wherein the tenant did not move out of the premises and the lease provided for quiet enjoyment predicating on timely lease payments, which is not found in the case at bar.

Plaintiffs further cite *N.N. Int'l (USA) Corp. v. Gladden Properties, LLC,* 52 Misc.3d 1206(A) in support of its argument that in a claim of constructive eviction, the tenant must show "that the landlord knew, or should have known, about the need for repairs." Plaintiff's motion to dismiss the cause of action for constructive eviction in that action was denied as the Court held that "[w]hether [Landlord]'s undisputed failure to repair that portion of [tenant]'s premises 'substantially and materially' deprived [tenant] of its use thereof is a question of fact that precludes summary disposition of [tenant]'s constructive eviction claim."

8

In the case at bar, Plaintiffs did know about the need for repairs. See e-mail from Defendant employee, Christopher Wirth, to Defendant employee, Joseph Marley, dated December 19, 2016, a true and accurate copy of which is annexed hereto as **Exhibit "A"**. ("As per follow up with the flood this am…Last time [plumbers] were here with regard to same issue was 3.23.16, 2.26.15 and now again. Plumber states he needs a high pressure jet spray to get sludge out and it will probably happen again if landlord doesn't do anything about it. Plumber states that landlord needs to replace pipes and he is just placing a bandaid on the problem. The bathroom is inoperable also. My staff is walking to dunkin donuts to use bathroom. **Landlord is refusing to get it done**. We cannot work here under these conditions." *Emphasis added.*) See also paragraphs 5 through 9, Affidavit of Joseph Marley sworn to the __ day of January, 2018 ("Marley Affidavit"). See also paragraph 45, Plaintiffs' Statement of Material Facts, wherein **Plaintiffs concede that Defendant notified Plaintiffs of the hazardous conditions at the Premises**. See also Defendant's Maintenance Department "e-ticket" dated December 19, 2016 which states "Problem Description: Branch is flooded…water and mold in entire branch…walking in slush. [The response thereto stated:] The plumber and cleaner will be going [to the Premises] to take care of the issues at hand. According to Amy [Anderson, an employee of Defendant], this issue happens almost yearly, so **we'll be trying to further contact the landlord and finally get this issue taken care of**…". See also Defendant's Maintenance Department "e-ticket" dated December 8, 2016 which states "Problem Description: Branch smells like mildew, water coming from next door in to the lobby. [The response thereto stated:] **We have called the Landlord**." See also Defendant's Maintenance Department "e-ticket" dated December 5, 2016, which states "Problem Description: Bad odor in side the branch. Signs of mildew on the floor. [The response thereto stated:] **Landlord has been contacted** and cleaners

9

will do what they can Friday night." *Emphasis added.* True and accurate copies of the e-tickets are collectively annexed hereto as **Exhibit "B"**.

In addition to the foregoing examples of Plaintiffs' knowledge of the need for repairs, as stated in their Memorandum of Law, Plaintiffs reviewed Section 7.01 of the Lease, Repairs, to determine whether they or Defendant should be responsible for the repairs, as the Lease provides that "Landlord shall not be required to make any repairs…except for necessary exterior and structural repairs…"

Whether repeated repairs to remediate mold and persistent sewage backups should be deemed "necessary" repairs or not, and whether the responsibility to make said repairs should be borne by Plaintiffs or Defendant are material issues of fact which cannot be determined via the instant motion.

As to whose responsibility it is to make repairs, whether or not it was Defendant's obligation and not Plaintiffs' obligation to make the necessary repairs to the Premises is a question of fact, as to whether or not the required remediation should be deemed to be structural vs. non-structural repairs and whether or not the necessary repairs were required inside the Premises as opposed to outside the Premises. As to the mold located "exclusively on the inside" of the Premises as Plaintiffs state, while that is no doubt technically accurate, if the acts and occurrences which caused same resulted from deficiencies at the exterior of the Premises, the obligation to correct same would rest with Plaintiffs.

In support of its allegation that Defendant failed to comply with the notice requirements in the subject lease, Plaintiffs cite *USI Ins. Servs. LLC v. Miner,* 801 F.Supp.2d 175, which is an action relating to an employment agreement and no notice whatsoever was given therein, verbal or otherwise. In the case at bar, Plaintiffs were notified on numerous occasions. See paragraphs 5

10

through 9, Marley Affidavit; paragraph 45, Plaintiffs' Statement of Material Facts; and Exhibits "A" and "B".

Further, in *USI, supra,* no opportunity to cure was ever given. In this action, Plaintiffs had countless opportunities to cure as Plaintiffs were repeatedly advised and fully aware that the hazardous issues were frequent, persistent and never resolved to the point that they would not occur again. <u>See</u> Exhibit "A"; Exhibit "B", paragraphs 5 through 9, Marley Affidavit; paragraph 45, Plaintiffs' Statement of Material Facts.

Plaintiffs' citation to *USI, supra,* only serves to benefit Defendant herein as the court in that action held that the "courts should not 'construe the notice provision as if it were a common law pleading requirement under which every slip would be fatal' *See Contemporary Mission, Inc. v. Famous Music Corp,* 557 F.2d 918, 925 (2d Cir. 1977)...it would be 'hypertechnical to upset the verdict on the ground that the notice was insufficient.'" Clearly, courts found that notice not in strict compliance with the agreement between the parties is sufficient to overcome a claim that notice was not given.

In addition, Plaintiffs conceded in their Statement of Material Facts that they were, in fact, notified by Defendant at least one time as to the hazardous conditions at the Premises. <u>See</u> paragraph 45, Plaintiffs' Statement of Material Facts.

Clearly, in light of the foregoing examples of Plaintiffs having knowledge about the need for repairs, Plaintiffs' allegation that Defendant "cannot prove, as a matter of law, that Plaintiffs 'knew, or should have known, about the need for repairs' is false.

In support of its allegation that a tenant cannot establish constructive eviction based on a landlord's failure to repair, Plaintiffs cite a municipal court action from 1927, *Friedman-White Realty Co. v. Garage Dev. Corp.,* 130 Misc. 266 (Mun. Ct. N.Y. Co. 1927). In *Friedman-White,*

11

*supra,* there was continued possession on the part of tenant and an actual eviction, not a constructive eviction.

Plaintiffs further allege that Defendant failed to designate an expert to prove that Plaintiffs caused the hazardous conditions and that such alleged failure is fatal to its defense. In support of this, Plaintiffs cite *Wills v. Amerada Hess Corp.,* 379 F.3d 32, which is a maritime law case where an expert's testimony was specifically excluded. Yet again, Plaintiffs' citation to *Wills, supra,* only serves to benefit Defendant herein as the court in that action held that "[i]t is well settled that expert testimony is unnecessary in cases where jurors 'are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training.'" To that end, Defendant will introduce evidence from a plumber who possesses special training and knowledge related to the causes of the recurring hazardous conditions at the Premises.

In both cases Plaintiffs cited in support of their allegation that a tenant can waive a right to terminate a lease by express agreement to the contrary, the courts held that triable issues of fact existed and therefore, summary judgment was denied. See *RVC Assocs. V. Rockville Anesthesia Grp.,* 267 AD2d 370, and *Schwartz, Karlan & Gutstein v. 271 Venture,* 172 AD2d 226.

Plaintiffs cite to *M.Y. Realty Corp. v. Atl. First Fin. Corp.,* 19 AD3d 156 (1st Dept. 2005), in support of its allegation that Defendant's alleged unreasonable delay in quitting the premises precludes it from claiming constructive eviction. In that action, the conditions alleged by the tenant which caused the tenant's eviction were not found to be what caused the tenant to vacate the premises. That is not found in the instant action. Further, Defendant in the instant action did not fail to abandon the premises with reasonable promptness. Finally, nowhere in *M.Y. Realty,*

12

*supra,* did the court hold that the tenant's delay in quitting the premises precluded the tenant from claiming constructive eviction.

"It is well settled that a commercial tenant may be relieved of its obligation to pay the full amount of rent due where it has been actually or constructively evicted from either the whole or a part of the leasehold *(see, Barash v Pennsylvania Term. Real Estate Corp.,* 26 NY2d 77; *Union City Union Suit Co. v Miller,* 162 AD2d 101; *Manhattan Mansions v Moe's Pizza,* 149 Misc 2d 43). A constructive eviction occurs where 'the landlord's wrongful acts substantially and materially deprive the tenant of the beneficial use and enjoyment of the premises' *(Barash supra,* at 83)." *Johnson v. Cabrera,* 246 A.D.2d 578, 578–79, 668 N.Y.S.2d 45 (2nd Dept. 1998). See also *1328 Broadway, LLC v. MCM Footwear Ltd.,* 1 Misc.3d 910(A) (2004).

"[T]he tenant must show a substantial and material deprivation of its beneficial use and enjoyment of the premises (and, in addition, relinquish possession) in order to establish constructive eviction, which relieves the tenant of the obligation to pay rent." *Eastside Exhibition Corp. v. 210 E. 86th St. Corp.,* 18 N.Y.3d 617, 628 (Ct. of Appeals 2012).

Defendant herein is a commercial tenant that, due to persistent issues with defective plumbing, such as sewage and toilet backups, which issues repeatedly went ignored by Plaintiffs, has been deprived of its beneficial use and enjoyment of the demised Premises and, therefore, has been constructively evicted by Plaintiffs. See Defendant's letter to the Comptroller of Currency dated March 2, 2017, detailing the ongoing issues ignored by Plaintiffs, a true and accurate copy of which is annexed hereto as **Exhibit "C"**. See also paragraphs 5 through 9, Marley Affidavit.

"Courts have held that constructive evictions have occurred where there was a loss of ventilation *(Barash v. Penn. Term. Real Estate Corp.,* 26 NY2d 77 [1970], *supra); proximity to*

an open sewer *(Sully v Schmitt,* 147 NY 248 [1895]); persistent harmful and offensive odor *(Tallman v Murphy,* 120 NY 345 [1890]); defective plumbing *(Lathers v Coates,* 18 Misc 231 [App Term 1896]); and water leaks *(Rahman v Sylvester,* NYLJ, Sept. 18, 1989, at 25, col 5 [Civ Ct, Kings County])." *Manhattan Mansions v. Moe's Pizza,* 149 Misc. 2d 43, 45, 561 N.Y.S.2d 331 (Civ. Ct. 1990). Persistent harmful and offensive odor, defective plumbing and water leaks are all found in the instant action and the repeated failure of Plaintiffs to address such issues are what caused Defendant's constructive eviction.

Plaintiffs admit in their Statement of Material Facts that there were backups and sewage issues, in addition to mold, at the Premises. See Plaintiffs' Statement of Material Facts.

In light of such constructive eviction, Defendant should be relieved of its obligation to pay any rent or accelerated rent allegedly due Plaintiffs. At an absolute minimum, triable issues of material fact exist as to whether Defendant was constructively evicted, precluding the granting of summary judgment.

### C. Summary Judgment Must be Denied as to Damages

Even if the Court grants summary judgment on the issue of liability, summary judgment should be denied as to damages.

### i.     Plaintiffs' Claim for Accelerated Rents Must be Denied

As to Plaintiffs' claim for accelerated rents, in *Benderson v. Poss,* 142 A.D.2d 937 (4th Dept. 1988), the Court held that upon a termination of a lease, a landlord is "not entitled to collect, as rents, subsequent installments thereof due under the lease *(see, International Publications, Inc. v. Matchabelli,* 260 N.Y. 451…what survives after the termination of a lease is not a liability for rents, but a liability for damages…Were [the Court] to view the accelerated rent provision as one for liquidated damages, it would also be unenforceable since it would

provide plaintiffs with damages 'grossly disproportionate to the probable loss' (*Truck Rent-A-Center v. Puritan Farms*, 393 N.Y.S.2d 365)." *Benderson, supra.* <u>See also</u> *Chestnut Realty Corp. v. Kaminsky*, 132 A.D.3d 797, 798 (App. Div. 2015) (surrender of lease by operation of law results in a tenant not being liable for the rental arrears).

The Court in *Ross Realty v. V & A Iron Fabricators, Inc.* held that "where, as here, the lease does not require the landlord to rerent the premises upon its recovery of possession after a default in rent and to apply the rent received from the rerenting to the benefit of the tenant, the accelerated rent clause is deemed to impose a penalty and is not enforceable (*Rand v Conklin*, NYLJ, Jan. 7, 1994, at 29, col 1 [App Term, 9th & 10th Jud Dists]; *Silver v Brody*, NYLJ, Apr. 23, 1993, at 25, col 6 [App Term, 9th & 10th Jud Dists]; *Kabro Assoc. of Woodbury v Off-Campus of Woodbury*, NYLJ, Nov. 16, 1992, at 32, col 5 [App Term, 9th & 10th Jud Dists]; *see Benderson v Poss*, 142 AD2d 937 [1988]; *cf. Belnord Realty Co. v Levison*, 204 App Div 415 [1923]*, supra*). Accordingly, the District Court did not err in refusing to award landlord the accelerated rent sought." *Ross Realty v. V & A Iron Fabricators, Inc.*, 5 Misc. 3d 72, 73 (App. Term 2004).

In the case at bar, the subject Lease does not require Plaintiffs to re-rent the premises and apply the rent received from the re-renting to the benefit of Defendant, therefore, just as the Court ruled in *Ross Realty, supra,* any accelerated rent clause in the subject Lease is a penalty and not enforceable.

In *172 Van Duzer Realty Corp. v. Globe Alumni Student Assistance Association, Inc.*, 24 N.Y.3d 528 (Ct. of Appeals 2014), the Court held that "an acceleration clause is subject to judicial scrutiny based on a challenge that it is nothing more than a means by which to exact a penalty...Liquidated damages that constitute a penalty, however, violate public policy, and are

15

unenforceable. (*Truck Rent-A-Ctr.*, 41 NY2d at 424, citing *City of Rye v Public Serv. Mut. Ins. Co.*, 34 NY2d 470, 472-473 [1974]). A provision which requires damages 'grossly disproportionate to the amount of actual damages provides for [a] penalty and is unenforceable' (*Truck Rent-A-Ctr.*, 41 NY2d at 424). Whether a provision in an agreement is 'an enforceable liquidation of damages or an unenforceable penalty is a question of law, giving due consideration to the nature of the contract and the circumstances' (*JMD Holding Corp. v Congress Fin. Corp.*, 4 NY3d 373, 379 [2005], citing *Mosler Safe Co.*, 199 NY at 485; *Leasing Serv. Corp. v Justice*, 673 F2d 70, 74 [2d Cir 1982])." *172 Van Duzer Realty Corp, supra.*

Accordingly, Plaintiffs' claim for accelerated rent is not enforceable, and at a minimum, summary judgment is inappropriate.

  **ii.  Plaintiffs' Claim for Accelerated Rents for Renewal Term Must be Denied**

Approximately five (5) years into the subject twenty (20) year Lease between Plaintiffs and Defendant, Defendant settled a lawsuit against Plaintiff Leeber and in settling same, Defendant exercised its option to extend the Lease for an additional five (5) year period prior to the expiration of the initial term of the Lease. See Transcript of Settlement dated November 14, 2008, Trustco Bank v. Leeber Realty, LLC, under Index No. 6158/06, New York State Supreme Court, County of Rockland, a true and accurate copy of which is annexed hereto as **Exhibit "D"**.

Section 3.04 of the subject Lease provides as follows:

"Tenant shall have the right and option to extend the Lease Term by two (2) consecutive sixty (60) month option terms upon the same terms and conditions set forth herein, except as to Minimum Annual Rent which shall be as set forth in Section 1.01, provided and expressly conditioned upon that at such time as each Option Term is exercised, Tenant is not in default under this Lease. Tenant shall exercise each of its Option Terms by serving written notice upon Landlord of its election to exercise each such Option Term as provided in Section 1.01 under Exercise of Option Terms. In the event Tenant does not timely exercise an Option Term as provided above, or is in default under this Lease at the time of such

16

exercise or at any time thereafter prior to the commencement of the applicable Option Term, then, in such event, Tenant shall have no right to such Option Term and the exercise of such Option Term shall be null and void and of no further force or effect. If Tenant does not timely exercise an Option Term, Landlord may act in reliance on such election not being exercised by the time period set forth above, and Tenant hereby waives any claim or right to invoke or exercise such election after the above prescribed time period. Time shall be of the essence with respect to Tenant's exercise of said extension option." *Emphasis added.*

While Defendant does not admit it was in default under the terms of the subject Lease, Plaintiffs cannot claim that Defendant was both in default and that Plaintiffs are entitled to accelerated rents on the renewal term.

If Defendant is in default, then pursuant to the terms of the Lease, any exercising of the option to renew is null and void and therefore, Plaintiffs cannot be entitled to accelerated rents on a null and voided renewal term. If Defendant is not in default, Plaintiffs cannot continue to maintain this action against Defendant. Therefore, at a minimum, damages cannot as a matter of law extend beyond the initial Lease term.

Clearly, these issues raise substantial and material triable issues of fact and therefore, summary judgment must be denied.

Further, Section 1.01, Option Terms and Exercise of Option Term, referenced in Section 3.04 of the Lease, provides as follows:

"There shall be two (2) consecutive Option Terms having a term of five (5) years each (individually, an "Option Term", and collectively, the "Option Terms"). Each Option Term shall commence on the day immediately following the last day of the prior Term and shall terminate on the last day of the last calendar month in the applicable Option Term. Tenant must notify Landlord of its election to exercise each Option Term by written notice given no sooner than 360 days and no later than 180 days prior to the last day of the then current Term." *Emphasis added.*

If the subject Lease provides that the renewal term does not commence until the day immediately following the last day of the prior term, than clearly the renewal term has not yet

17

commenced and therefore, Plaintiffs cannot maintain their claim for accelerated rents on the renewal term.

Yet again, substantial and material triable issues of fact have been raised, which preclude summary judgment.

### D. Plaintiffs' Attorneys Fees are Highly Excessive

22 NYCRR §1200, Rule 1.5 provides that "[a] lawyer shall not make an agreement for, charge, or collect an excessive or illegal fee or expense. A fee is excessive when, after a review of the facts, a reasonable lawyer would be left with a definite and firm conviction that the fee is excessive. The factors to be considered in determining whether a fee is excessive may include the following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent or made known to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent."

In fixing legal fees, courts have held that "[r]easonable is the touchstone for fixing attorneys fees pursuant to contract ... [and is determined by such factors] as the amount of time properly devoted to the case and result achieved; a comparison of counsel's hourly rate with that charged for similar services by counsel with like experience and skill; and the complexity of the legal issues involved..." *Nestor v. Britt*, 270 A.D.2d 192, (1st Dep't 2000); see also *1050 Tenants Corp. v. Lapidus*, N.Y.L.J., 7/30/98, p. 21, col. 1 (App.Term, 1st Dep't).

In the case at bar, Plaintiffs request an award of attorneys' fees and cost in an amount not less than $189,087.77 as and for Plaintiffs' counsel's fees and costs in this action.

As of December 20, 2017, Plaintiffs' counsel has presented a bill to the Court totaling $158,660.00 in this action, including its costs.

As of January 1, 2018, Defendant's counsel has billed $49,947.89 in this action, including its costs.

Plaintiffs' counsel bills Plaintiffs at an hourly rate of $420.00 compared to Your Affirmant's similar hourly rate of $400.00.

In addition, Plaintiffs' counsel is charging Plaintiffs three (3%) percent of the total recovery, exclusive of attorney's fees and costs.

Clearly, there is extremely unreasonable, excessive billing on the part of Plaintiffs' counsel who has billed well over $100,000.00 more than Defendant's counsel to date (exclusive of any 3% success fee), while having similar hourly billing rates.

**E. Summary of Material and Triable Issues of Fact**

As the Court can see, there are a number of material triable questions of fact that have been introduced during discovery, including but not limited to the following:

Whether or not Defendant was constructively evicted, and if so, whether such eviction was due to Plaintiffs' failure to address the issues that caused the eviction, are triable issues of fact.

Whether accelerated rent is owed to Plaintiffs, or is enforceable at all, is a question of fact, and whether accelerated rent is owed to Plaintiffs for the renewal term that has not yet commenced is a question of fact.

Whether Defendant unreasonably delayed quitting the Premises, as alleged by Plaintiff, is

a question of fact.

As to Plaintiffs' denial of notice, testimony was adduced that Plaintiffs were on notice of the defective conditions at the Premises. Testimony was introduced by Defendant that it did notify Plaintiffs of the defective sewage conditions and backups at the Premises by witness Joseph Marley (one of Defendant's 30(b)(6) witnesses). See page 31, line 18 through page 32, line 25; page 38, line 20 through page 39, line 14, transcript of deposition of Joseph Marley, dated October 19, 2017, a true and accurate copy of which is annexed hereto as **Exhibit "E"**. Yet another employee of Defendant has alleged that he, too, notified Plaintiffs of the hazardous conditions at the Premises. See Exhibit "A" and "B". This is in stark contrast to the testimony of Mr. Cohen. The factual dispute raised herein as to whether or not Plaintiffs were on notice or had knowledge of the defective conditions at the Premises is precisely why summary judgment should be denied.

In addition, in Plaintiffs' Statement of Material Facts, Plaintiffs admitted that an employee of Defendant spoke to Plaintiff by telephone and informed him of hazardous conditions at the Premises. See paragraph 45, Plaintiffs' Statement of Material Facts.

Whether it was Defendant's obligation or Plaintiffs' obligation to make the necessary repairs to the Premises under the terms of the Lease is a question of fact, or, more specifically, whether or not the required remediation should be deemed to be structural vs. non-structural repairs and whether or not the necessary repairs were required inside the Premises as opposed to outside the Premises. As to the mold located "exclusively on the inside" of the Premises, as Plaintiffs state, while that is no doubt technically accurate, if the acts and occurrences which caused the mold resulted from deficiencies at the exterior of the Premises, the obligation to correct same would rest with Plaintiffs, pursuant to the terms of the Lease.

20

The cause of the backups is another triable issue of fact. While Plaintiffs have presented evidence that any sewage line backup was caused by Defendant, evidence has likewise been presented that (a) the sewage backups occurred approximately twice per year coinciding with seasonal weather changes and have nothing to do with the conduct of any of Defendant's employees or guests for that matter (see page 17, line 13 through 17; page 20, line 25 through page 21, line 12, deposition transcript of Defendant employee, Amy Anderson, a true and accurate copy of which is annexed hereto as **Exhibit "F"**; and Exhibit "A" and "B"); and (b) evidence has been presented from a plumber who provided remedial services at the Premises that there is/may be a defect in the sewage line running from the main line which connects to the building located at the Premises (see page 26, line 2 through 25 and page 48, line 3 through 4, deposition transcript of Roto Rooter employee, Richard Skjerli, a true and accurate copy of which is annexed hereto as **Exhibit "G"**).

Finally, whether Plaintiffs' counsel's exorbitant attorney's fees, which is more than triple Defendant's attorney's fees in this action, are deemed to be excessive or not is a question of fact.

There are almost a dozen triable issues of fact presented in this action, therefore, summary judgment must be denied.

### F. Defendant's Counterclaims Are Not Deficient And Should Not Be Dismissed

Defendant interposed counterclaims for (a) a declaration that it has been constructively evicted, and (b) to recover the expenses it incurred in attempting to remediate the hazardous conditions at the Premises which went ignored by Plaintiffs.

For the reasons stated herein, dismissal of Defendant's counterclaims should be denied.

As to Defendant's counterclaim for recovery of the expenses it incurred in attempting to remediate the hazardous conditions at the Premises which went ignored by Plaintiffs, Section

21

14.01 (b) of the Lease provides that "Landlord shall indemnify and defend Tenant and save it harmless from and against any suits, actions, damages, claims, judgments, costs, liabilities and expenses in connection with…property damage arising from or out of any occurrence in, upon, at or from the Building, to the extent caused by the wrongful act or omission or negligence of Landlord, its agents, contractors or employees."

In light of the foregoing, Defendant's counterclaim for recovery of its expenses incurred in attempting to remediate the hazardous conditions at the Premises should not be dismissed.

# IV.  **CONCLUSION**

For the foregoing reasons, it is respectfully requested that the Court deny Plaintiffs'

motion for summary judgment in its entirety and set this matter down for trial.


Dated:  New City, New York
        January 22, 2018

Respectfully submitted,

ADAM K. KURLAND,
ATTORNEY AT LAW, P.C.

By: _____
Adam K. Kurland, Esq.
337 North Main Street, Suite 11
New City, New York 10956
(845) 638-4700
*Attorneys for Defendant*
