UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEEBER REALTY LLC and BERNARD
COHEN, *both individually and in his
capacity as Trustee of the Bernard Cohen
Revocable Trust*,

                              Plaintiffs,

          v.

TRUSTCO BANK,

                              Defendant.

No. 17-CV-2934 (KMK)

OPINION & ORDER

Appearances:

Michael A. Freeman, Esq.
Greenberg Freeman, LLP
New York, NY
*Counsel for Plaintiffs*

Adam K. Kurland, Esq.
Fenster & Kurland LLP
New City, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

        Plaintiffs Leeber Realty LLC ("Leeber") and Bernard Cohen ("Cohen" and collectively,

"Plaintiffs") brought this Action against Trustco Bank ("Trustco" or "Defendant"), alleging that

Defendant breached a commercial lease contract.  (Am. Compl. (Dkt. No. 39).)  Defendant

counterclaimed that Plaintiffs breached the contract by failing to make necessary repairs and that

Defendant was constructively evicted.  (Am. Answer to Am. Compl. with Counterclaims ("Am.

Answer") 4–7 (Dkt. No. 42).)  On June 4, 2018, Plaintiffs' Motion for Summary Judgment, fees

and costs, and dismissal of the counterclaims was granted in part and denied in part, and

Defendant's counterclaims were dismissed.  (*See* Op. & Order on Pls.' Mot. for Summ. J. ("Summary Judgment Opinion") (Dkt. No. 75).)  Before the Court is Defendant's Motion To Vacate the Summary Judgment Opinion Pursuant to Rule 60(b), and to dismiss for lack of subject matter jurisdiction (the "Motion").  (Def.'s Not. of Mot. To Vacate ("Def.'s Mot.") (Dkt. No. 92).)  For the reasons discussed below, Defendant's Motion is denied.

## I.  Background

### A.  Factual Background

The following facts are taken from Defendant's Memorandum of Law in Support of its Motion and supporting declarations, (Def.'s Mem. of Law in Supp. of Mot. To Vacate ("Def.'s Mem.") (Dkt. No. 95); Def.'s Decl. in Supp. of Mot. To Vacate ("Def.'s Decl.") (Dkt. No. 93); Aff. of Joseph A. Maria in Supp. of Mot. To Vacate ("Maria Aff.") (Dkt No. 94)), Plaintiffs' Opposition and supporting declaration, (Pls.' Mem. of Law in Opp'n to Mot. To Vacate ("Pls.' Mem.") (Dkt. No. 96); Pls.' Decl. in Opp'n to Mot. To Vacate ("Pls.' Decl.") (Dkt. No. 97)), Defendant's Reply and supporting declaration, (Def.'s Reply Mem. of Law in Further Supp. of Mot. To Vacate ("Def.'s Reply") (Dkt. No. 99); Def.'s Reply Decl. in Supp. of Mot. To Vacate ("Def.'s Reply Decl.") (Dkt. No. 98)), Plaintiffs' Sur-Reply and supporting declaration, (Pls.' Sur-Reply in Opp'n to Mot. To Vacate ("Pls.' Sur-Reply") (Dkt. No. 102); Pls.' Sur-Reply Decl. in Opp'n to Mot. To Vacate ("Pls.' Sur-Reply Decl.") (Dkt. No. 103)), and Defendant's Response, (Def.'s Resp. in Supp. of Mot. To Vacate ("Def.'s Resp.") (Dkt. No. 106)).  The Court assumes familiarity with the facts underlying the Court's June 4, 2018 Summary Judgment Opinion.  (*See* Summary Judgment Opinion 7–15.)

On or about December 5, 2005, Plaintiffs granted a mortgage of $550,000 (the "Mortgage") on real property known as 21 Route 59, Nyack, New York 10960 (the "Property")

to Flushing Bank ("Flushing Bank"), which is not a party in this Action. (*See* Def.'s Mem. 1.)

Section 1.15 of the Mortgage Agreement stated:

> The Rents of the Mortgaged Property are hereby transferred and assigned to the Mortgagee, and the Mortgagee shall have the right to enter upon the Mortgaged Property for the purpose of collecting the same and to let and operate the Mortgaged Property or any part thereof and to apply the Rents, either in whole or in part, as the Mortgagee elects, to the payment of all charges and expenses of the Mortgaged Property or in reduction of any part of the Debt or other sums due under the Note or this Mortgage. This assignment and grant shall continue in effect until the Debt and all other obligations secured by this Mortgage are paid in full. The Mortgagee hereby waives the right to enter upon the Mortgaged property for the purpose of collecting the Rents and the Mortgagor shall have a license to collect and receive the Rents until an Event of Default hereunder, but such license of the Mortgagor may be revoked by the Mortgagee upon any such Event of Default. From and after the occurrence of an Event of Default hereunder all Rents collected or received by Mortgagor shall be accepted and held for Mortgagee in trust and shall not be commingled with the funds and property of Mortgagor, but shall be promptly paid over to Mortgagee. The Mortgagee may apply all Rents or any part thereof so received hereunder, after the payment of all of its expenses including costs and attorneys' fees, to the Debt in such manner as it elects or at its option the entire amount or any part thereof so received may be released to the Mortgagor.

(Def.'s Decl. Ex. C ("Mortgage Agreement") § 1.15.) On June 6, 2012, Leeber transferred the Property to the Bernard Cohen Revocable Trust (the "Trust"), (*see* Pls.' Sur-Reply Decl. ¶ 5; Pls.' Sur-Reply Decl. Ex. 8 ("Deed")), and on July 23, 2012, the Trust assigned the lease between Leeber and Trustco back to Leeber, (*see* Pls.' Sur-Reply Decl. ¶ 5; Pls.' Sur-Reply Decl. Ex. 9 ("Assignment of Lease")).

On March 28, 2017, Plaintiffs received a letter from Defendant, a tenant of the Property, stating that, due to "hazardous environmental conditions," it planned to terminate its lease as of March 31, 2017 and claim constructive eviction. (*See* Summary Judgment Opinion 13.) From April 1, 2017, Defendant paid no further rent on its lease, and Leeber was thus unable to pay its Mortgage. (*See* Pls.' Mem. 5.) On April 21, 2017, Leeber initiated the instant Action to recover damages from Defendant for breach of the lease. (*See* Compl. (Dkt. No. 1).) On July 13, 2017,

Flushing Bank commenced a foreclosure action in New York Supreme Court, Rockland County against Plaintiffs, captioned *Flushing Bank v. Leeber Realty LLC et al.*, Index No. 033167/2017 (the "Foreclosure Action"). (*See* Pls.' Mem. 5; Pls.' Decl. ¶ 5; Pls.' Decl. Ex. 2 ("Foreclosure Action Docket").) In an email on August 28, 2017, Flushing Bank informed Plaintiffs that it was aware of this Action against Defendant, (*see* Pls.' Decl. ¶ 5; Pls.' Decl. Ex. 1 ("Aug. 28, 2017 Email"), and on September 8, 2017, Defendant's counsel asked Cohen in his deposition about the Foreclosure Action commenced by Flushing Bank, (*see* Pls.' Decl. Ex. 5 ("Cohen Dep. Excerpt")).

On November 5, 2017, Flushing Bank applied for the appointment of a receiver (the "Receiver") in the Foreclosure Action, which was granted on March 26, 2018. (*See* Def.'s Mem. 2; Def.'s Decl. Ex. E ("Order Appointing Receiver"); Maria Aff.) On June 1, 2018, this Court granted summary judgment in favor of Plaintiffs on Defendant's claim of constructive eviction, finding that Defendant failed to provide notice of the alleged hazardous condition. (*See* Summary Judgment Opinion 31–33.) Defendant did not raise any arguments based on the Foreclosure Action or the Receiver in its summary judgment papers.

On June 21, 2018, Defendant substituted its counsel in this Action. (*See* Consent Order Granting Substitution of Attorney ("Substitution") (Dkt. No. 82).) On July 17, 2018, the Receiver filed his oath and bond with the state court, (*see* Pls.' Decl. Exs. 3 ("Oath of Receiver"), 4 ("Bond of Receiver")), and on the same day Leeber filed for Chapter 11 bankruptcy protection, (*see* Pls.' Decl. Ex. 6 ("Bankruptcy Petition")). On July 18, 2018, the Receiver filed an affidavit in connection with Defendant's Motion To Vacate asserting that he is the true party in interest and the only entity entitled to collect rents on the Property. (*See* Maria Aff. ¶¶ 4–5.)

B. Procedural History

As noted, Leeber initiated this Action on April 21, 2017. (*See* Compl.) On October 6, 2017, Plaintiffs filed an Amended Complaint adding Cohen as a Plaintiff. (*See* Am. Compl.) Plaintiffs filed a Motion for Summary Judgment and accompanying papers on December 26, 2017. (*See* Dkt. Nos. 53, 54, 55, 56, 57.) Defendant filed an Opposition on January 22, 2018, (*see* Dkt Nos. 58, 59), and Plaintiffs filed a Reply on February 5, 2018, (*see* Dkt Nos. 65, 55). On June 4, 2018, the Court granted summary judgment in favor of Plaintiffs on Defendant's constructive eviction claim, as well as on Plaintiffs' claim that Defendant failed to notify Plaintiffs of the defective conditions at issue. (*See* Summary Judgment Opinion 25–26, 31–33.) With respect to the calculation of damages, the Court agreed with Plaintiffs that the acceleration clause in the disputed lease was enforceable, but found for Defendant regarding whether Plaintiffs were entitled to accelerated rent for the five-year renewal term the Parties agreed to in 2008. (*See id.* 36–37, 40–41.)

On June 25, 2018, Defendant's new counsel filed a pre-motion letter requesting a conference in advance of filing a motion to vacate the Summary Judgment Opinion. (*See* Dkt. No. 83.) With leave of the Court, (*see* Dkt. No. 89), Defendant filed the instant Motion on July 18, 2018, (*see* Def.'s Mot.; Def.'s Decl.; Maria Aff.; Def.'s Mem.). Plaintiffs filed an Opposition to Defendant's Motion on July 25, 2018. (*See* Pls.' Mem.; Pls.' Decl.) Defendant filed a Reply on August 1, 2018. (*See* Def.'s Reply; Def.'s Reply Decl.)

On August 10, 2018, with leave of the Court, Plaintiffs filed a Sur-Reply, (*see* Pls.' Sur-Reply; Pls.' Sur-Reply Decl.), and Defendant filed a Response on August 20, 2018, (*see* Def.'s Resp.). On October 25, 2018, Plaintiffs filed a letter requesting an expedited decision on the pending motion and leave to supplement the record with an order issued in Plaintiff Leeber's

bankruptcy case, and attached an order from the bankruptcy court lifting the automatic stay

pursuant to 11 U.S.C. § 362(a) on Flushing Bank's Foreclosure Action against Plaintiffs, but

declining to modify the stay with respect to this litigation.  (*See* Letter Mot. to Expedite ("Mot.

To Expedite") (Dkt. No. 107).)  Defendant responded requesting that the Court decline to

consider the submission or be granted permission to respond to it.  (*See* Dkt. No. 108.)  On

October 30, 2018, the Court issued an Order staying the case pending resolution of Leeber's

bankruptcy proceeding.  (*See* Stay Order (Dkt. No. 110).)  Plaintiffs moved for reconsideration

of the Stay Order on November 7, 2018.  (*See* Pls.' Not. of Mot. for Reconsideration (Dkt. No.

111); Pls.' Mot. for Reconsideration (Dkt. No. 112); Pls.' Decl in Supp. of Mot. for

Reconsideration (Dkt. No. 113).)  The Court declined to lift the stay absent an order from the

bankruptcy court directing the stay be lifted.  (*See* Dkt. No. 114.)  Plaintiffs obtained an

Amended Order from the bankruptcy court and filed it with this Court on November 9, 2018.

(*See* Letter from Michael A. Freeman, Esq. to Court (Nov. 9, 2018) ("Nov. 9 Letter") Ex. 1

("Amended Order") (Dkt. No. 115).)  The bankruptcy court did not vacate the stay with respect

to Flushing Bank's interest in this Action, "including, but not limited to the issues raised and the

rents which are the subject" of this case, but ordered "that the automatic stay shall not preclude

or impede [Plaintiffs'] ability to continue prosecuting [this Action]."  (*Id.* at 2.)  The Amended

Order also stated that "[t]his order does not permit the State Court receiver to exercise any rights

or control over [this Action] or the rents which are the subject of th[is] [A]ction."  (*Id.*)  In

response, the Court lifted the stay on the same day and agreed to decide Defendant's Motion as

soon as possible.  (*See* Order Lifting Stay (Dkt. No. 116).)

## II.  Discussion

### A.  Standard of Review

Motions to set aside an order dismissing a case are properly brought under Rule 60(b) of the Federal Rules of Civil Procedure, which provides that, "[o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding."  Fed. R. Civ. P. 60(b). "Properly applied[,] Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments."  *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (citations omitted).  "In other words it should be broadly construed to do substantial justice, yet final judgments should not be lightly reopened."  *Id.* (citations and quotation marks omitted). "Rule 60(b) provides a mechanism for extraordinary judicial relief available only if the moving party demonstrates exceptional circumstances, and relief under the rule is discretionary." *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 126 (2d Cir. 2009) (citation, quotation marks, and alteration omitted); *see also Mendell ex rel. Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990) ("Motions under Rule 60(b) are addressed to the sound discretion of the district court and are generally granted only upon a showing of exceptional circumstances." (citation omitted)). The movant must adduce "highly convincing material" in support of the motion.  *United States v. Cirami*, 563 F.2d 26, 33 (2d Cir. 1977).

Rule 60(b) provides six grounds for relief:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "Finally, even where a movant can demonstrate that one of the enumerated grounds in Rule 60(b) applies, in order to prevail the movant must still demonstrate a strong case that the movant has a meritorious claim." *EMI Entm't World, Inc. v. Karen Records, Inc.*, No. 05-CV-390, 2013 WL 2480212, at *2 (S.D.N.Y. June 10, 2013) (quotation marks omitted).

Defendant argues that it is entitled to relief under subsections (1), (4), and (6) of Rule 60(b). The Court will address each in turn.

### B. Analysis

#### 1. Rule 60(b)(1)

Under Rule 60(b)(1), the Court may vacate an Order on the basis of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). "Rule 60(b)(1) motions premised upon mistake are intended to provide relief to a party in only two instances: (1) when the party has made an excusable litigation mistake . . . or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order." *Bey v. Iaquinto*, No. 12-CV-5875, 2016 WL 462412, at *4 (S.D.N.Y. Feb. 4, 2016) (citation and quotation marks omitted). Defendant argues that that the mistake justifying reconsideration of the Court's Summary Judgment Opinion is that Plaintiff lacked standing to bring this case because Flushing Bank, and later the Receiver, were the only true parties in interest. (Def.'s Mem. 7–9.)

"The jurisdiction of federal courts is defined and limited by Article III of the Constitution . . . [, and] the judicial power of federal courts is constitutionally restricted to 'cases' and 'controversies.'" *Flast v. Cohen*, 392 U.S. 83, 94 (1968). "[A]t [the] uncontroverted core [of the 'case or controversy' requirement] lies the principle that, at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural." *Russman v. Bd. of Educ.*, 260 F.3d

114, 118 (2d Cir. 2001). "In order to meet that requirement, plaintiffs must, among other things, establish that they have standing to sue." *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) (citation omitted). To meet that minimum constitutional threshold of standing, a plaintiff must establish three things:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations, quotation marks, and alterations omitted). Defendant essentially argues that Plaintiffs have not suffered an injury here because they did not have a legally protected interest in the Property rents. In support of its argument, Defendant primarily relies on *EMI Entertainment World*, in which the court vacated a judgment for copyright infringement upon learning that the plaintiff did not in fact own the copyright at issue. *See EMI Entm't World*, 2013 WL 2480212, at *3–4. Defendant notes that Leeber was in default on its Mortgage before bringing this Action, thereby entitling Flushing Bank, and only Flushing Bank, to collect rents on the Property pursuant to § 1.15 of the Mortgage Agreement, and that once appointed the Receiver was the sole entity entitled to collect rents. (*See* Def.'s Mem. 5, 7–9.)

The Court finds Defendant's argument unpersuasive. At the outset, the Court notes that courts in this circuit consistently hold that "[a] defeated litigant cannot set aside a judgment . . . because he failed to present on a motion for summary judgment all of the facts known to him that might have been useful to the court." *Cong. Fin. Corp. v. John Morrell & Co.*, No. 90-CV-7191, 1992 WL 135581 , at *2 (S.D.N.Y. June 4, 1992) (quoting 11 Charles A. Wright & Arthur

Miller, Federal Practice and Procedure § 2858, at 173 (1973) (quotation marks omitted)); *see also Nemaizer*, 793 F.2d at 62 ("[A]n attorney's failure to evaluate carefully the legal consequences of a chosen course of action provides no basis for relief from judgment."); *United States v. Erdoss*, 440 F.2d 1221, 1223 (2d Cir. 1971) ("The law in this circuit is reasonably clear when a conscious decision has been made by counsel, ignorance of the law is not the sort of excusable neglect contemplated by Federal Civil Rule 60(b) . . . as ground for vacating an adverse judgment." (citation and quotation marks omitted)); *Beeland Interests, Inc. v. Armstrong*, No. 95-CV-8132, 2000 WL 1372999, at *5 (S.D.N.Y. Sept. 22, 2000) (Mag. Op. & Order) ("Plaintiff cannot use a Rule 60(b) motion to assert new legal theories simply because the legal theories that actually were asserted have been rejected.").

There is no dispute that Defendant was aware of the Foreclosure Action since at least September 8, 2017.  (*See* Cohen Dep. Excerpt)  Defendant's prior counsel's failure to raise Flushing Bank's or the Receiver's interest in the rents at the summary judgment stage is not the sort of mistake or excusable neglect that would justify vacating the Court's Summary Judgment Opinion.  *See Hall v. Daka Int'l, Inc.*, 172 F.R.D. 19, 21–22 (N.D.N.Y. 1997) (finding that failure to contact a potential witness who the plaintiff knew might offer probative evidence before summary judgment was granted did not warrant relief under Rule 60(b)(1)); *Cong. Fin. Corp.*, 1992 WL 135581, at *3 (finding Rule 60(b) "does not provide an appropriate avenue for relief" even if failure to raise a legal defense was due to error or mistake of counsel, because "neither ignorance nor carelessness on the part of an attorney will provide grounds for Rule 60(b) relief"); *Patel v. Lutheran Med. Ctr., Inc.*, 775 F. Supp. 592, 598 (E.D.N.Y. 1991) (denying motion for relief from judgment under Rule 60(b)(1) where the plaintiff's "neglect was his and his attorney's failure to marshall all the facts within his knowledge in opposing the

motion for summary judgment"); *United States v. Kirksey*, 631 F. Supp. 165, 168 (S.D.N.Y. 1986) ("If the decision not to defend, or not to introduce certain evidence, was made consciously, on the basis of free knowledge of the issues involved, the party cannot claim mistake, inadvertence, surprise, or excusable neglect." (citation and quotation marks omitted)).

Defendant argues, citing *EMI Entertainment World*, 2013 WL 2480212, at *2, that its failure to raise lack of standing earlier in this Action is irrelevant because "a claim that a party lacks standing to bring a suit is an attack on the court's subject matter jurisdiction," and therefore "standing cannot be waived by either party and, in fact, the court has an obligation to raise the matter sua sponte." (Def.'s Mem. 8–9 (italics omitted).) The Court agrees that "[l]ack of standing of the party bringing suit would result in a lack of jurisdiction of the Court to hear the matter and would require a dismissal of the action." *EMI Entertainment World*, 2013 WL 2480212, at *2. However, the Court concludes that Plaintiffs did not lack standing to bring this Action.

"[S]tanding is measured as of the time the suit is brought." *Comer v. Cisneros*, 37 F.3d 775, 791 (2d Cir. 1994) (citation omitted); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (noting that courts "have an obligation to assure ourselves that [a plaintiff] had Article III standing at the outset of the litigation"); *Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.À.R.L.*, 790 F.3d 411, 426 (2d Cir. 2015) ("[S]tanding 'must exist at the commencement of the litigation.'" (quoting *Friends of the Earth*, 528 U.S. 167)); *cf. EMI Entertainment World*, 2013 WL 2480212, at *2 (vacating copyright infringement judgment where the plaintiff "does not have, *and has never had*, direct ownership of any of the copyrights at issue in this lawsuit" (emphasis added)). However, "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue

throughout its existence (mootness)." *Friends of the Earth, Inc.*, 528 U.S. at 189 (citation and quotation marks omitted). As the Supreme Court has emphasized,

> Standing doctrine functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake. In contrast, by the time mootness is an issue, the case has been brought and litigated, often . . . for years. To abandon the case at an advanced stage may prove more wasteful than frugal. This argument from sunk costs does not license courts to retain jurisdiction over cases in which one or both of the parties plainly lack a continuing interest, as when the parties have settled or a plaintiff pursuing a nonsurviving claim has died.

*Id.* at 191–92; *see also Powell v. McCormack*, 395 U.S. 486, 496 (1969) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." (citation omitted)).

Defendant argues that because Plaintiffs defaulted on their Mortgage after April 1, 2017, but initiated this Action on April 21, 2017, they lacked standing at the outset because they no longer had a legal interest in the rents upon default. (Def.'s Mem. 7–9.) Implicit in Defendant's argument is the assumption that § 1.15 of the Mortgage Agreement was self-executing, and that Flushing Bank therefore automatically became the sole entity entitled to collect rents upon the moment of Leeber's default. However, "[u]nder New York law, an assignment of rent clause in a mortgage operates merely as a pledge of rents, not as a direct conveyance." *641 Ave. of Americas Ltd. P'ship v. 641 Assocs., Ltd.*, 189 B.R. 583, 590 (S.D.N.Y. 1995) (citation omitted). "[A]n assignment of rents becomes enforceable when the assignee takes affirmative steps to assert his rights, such as appointing a receiver to collect the rents, taking possession of the property, commencing foreclosure proceedings, or seeking an order for sequestration of rents . . . ." *Id.*; *see also Builders Bank v. Rockaway Equities, LLC*, No. 08-CV-3575, 2011 WL 4458851, at *10 (E.D.N.Y. Sept. 23, 2011) ("The mortgagee generally has an equitable right to collect rather than automatic legal title to rents upon default." (citation omitted)); *In re Fin. Ctr.*

*Assocs. of E. Meadow, L.P.*, 140 B.R. 829, 833 (Bankr. E.D.N.Y. 1992) ("Just as . . . the holder

of a properly recorded mortgage may not take possession and sell mortgaged property merely

upon a default without a foreclosure and sale, so an assignee of rents as additional security may

not receive those rents without the additional step of obtaining possession through the

appointment of a receiver."). "In those cases where a rent assignment clause was held to be self-

executing, the courts found that the parties intended to effect an absolute and unqualified

assignment from the time of default to take effect as of the date of the mortgage." *Builders

Bank*, 2011 WL 4458851, at *10 (collecting cases).

   Here, the language of § 1.15 does not indicate that the parties intended the clause to be

self-executing. It specifically includes permissive language stating that the Mortgagor's license

to collect and receive rents "*may* be revoked by the Mortgagee upon any such Event of Default,"

and contemplates the Mortgagor continuing to collect rents upon default to be "held for [the]

Mortgagee In trust." (Mortgage Agreement § 1.15 (emphasis added).) Furthermore, § 1.15

contains no language stating that the clause is intended as an "absolute" assignment, and because

the assignment extinguishes upon full payment of the Mortgage, it is clearly intended as

additional security for payment of the Mortgage. (*Id.* ("This assignment and grant shall continue

in effect until the Debt and all other obligations secured by this Mortgage are paid in full.").)

Courts routinely find that similar, and even significantly more expansive, language still fails to

demonstrate that the parties intended the clause to be self-executing. *See, e.g.*, *In re S. Side

House, LLC*, 474 B.R. 391, 411 (Bankr. E.D.N.Y. 2012) (finding assignment of rents clause non-

self-executing even where clause stated that it is "intended by Borrower [as] a present, absolute

assignment and not an assignment for additional security only" and that on event of default "the

license [to collect rents] shall automatically be revoked, and Lender shall immediately be entitled

to possession of all [r]ents" (quotation marks omitted)); *Builders Bank*, 2011 WL 4458851, at *11 (finding assignment of rents clause non-self-executing that was "conditioned on a default, at which time the lender is entitled to exercise any and all remedies provided under the mortgage or take possession of the premises upon demand and with process of law"); *641 Ave. of Americas Ltd. P'ship*, 189 B.R. at 591 (finding assignment of rents clause included "as additional security for the [l]oan" required lender to "take some affirmative steps toward asserting its interest" in the rents upon default); *In re Constable Plaza Assocs., L.P.*, 125 B.R. 98, 101–02 (Bankr. S.D.N.Y. 1991) (finding assignment of rents clause was for additional security, and therefore not an absolute assignment, because "when the mortgage debt was satisfied, the debtor's right to receive the rents resumed," and noting that lender "was required to obtain the appointment of a receiver . . . in order to establish its right to collect the rents"); *cf. Fed. Home Loan Mortg. Corp. v. Spark Tarrytown, Inc.*, 822 F. Supp. 137, 139 (S.D.N.Y. 1993) (finding language stating that borrower "hereby absolutely and unconditionally assigns and transfers to [l]ender all rents and revenues of the [p]roperty . . . regardless of to whom the rents and revenues of the [p]roperty are payable" and that the borrower "shall collect and receive all rents . . . as trustee for the benefit of the [l]ender" entitled a mortgagee plaintiff to rents "once the [plaintiff] gives proper notification" (citation omitted)).

Because the Court finds the assignment of rents clause was non-self-executing, Flushing Bank was required to take affirmative steps to enforce its right to collect rents after Plaintiffs defaulted. It did so, at the earliest, when it filed the Foreclosure Action on July 13, 2017, after Plaintiffs initiated this Action. (*See* Pls.' Mem. 5.) Plaintiffs therefore had standing at the outset of this case to sue Defendant for payment of the rent.

Moreover, the initiation of the Foreclosure Action, by itself, changes nothing. Even though filing the Foreclosure Action on July 13, 2017 may have been the first step taken by Flushing Bank toward vindicating its interest in the rents, no action was taken to collect rents on the Property until at least July 18, 2018, when the Receiver filed an affidavit in this case, one day after Leeber filed for bankruptcy. (*See generally* Maria Aff.) Even once the Receiver was appointed on March 23, 2018, but before it was qualified, Defendant made no apparent effort to prevent Plaintiffs from pursuing this Action or to intervene until July 10, 2018, over a month after the Court issued its Summary Judgment Opinion. (*See* Bankruptcy Petition.)

Furthermore, at all times Plaintiffs retained a residual interest in the rents such that even if Flushing Bank or the Receiver possessed a valid interest in collecting rents on the Property, Plaintiffs still had "a legally cognizable interest in the outcome" of this Action. *Powell*, 395 U.S. at 496. "Under New York law, a borrower retains an interest in rents even after a foreclosure proceeding is initiated and a receiver is appointed to collect the rents. . . . Significantly, while the Lender's affirmative steps are sufficient to give it an enforceable interest in the Rents, the Debtor retains title to them." *In re S. Side House, LLC*, 474 B.R. at 411; *see also In re Loco Realty Corp.*, No. 09-11785, 2009 WL 2883050, at *5 (Bankr. S.D.N.Y. June 25, 2009) ("A receiver only effectuates a change in who has a right to possess the rents, not title."); *In re Koula Ents., Ltd.*, 197 B.R. 753, 757 (Bankr. E.D.N.Y. 1996) (rejecting a creditor's argument that "under New York law, the appointment of a receiver in a mortgage foreclosure action transfers title to the rents to the bank"); *In re Constable Plaza Assocs., L.P.*, 125 B.R. at 101 (finding appointment of a receiver "did not cut off all of the debtor's property rights with respect to the rents" because the assignment of rents clause served as additional security for the mortgage such that "when the mortgage debt was satisfied, the debtor's right to receive the rents resumed").

This would be true even if § 1.15 were an absolute assignment, and therefore self-executing.  *See In re Loco Realty Corp.*, 2009 WL 2883050, at *5 ("[A]n absolute assignment of rents prepetition does not necessarily mean that the estate has no interest in the rents for the purposes of a § 541 analysis." (citation omitted)); *In re Constable Plaza Assocs., L.P.*, 125 B.R. at 103 ("Even if [the mortgagee] had an absolute assignment, rather than a pledge which required further action, it would not follow that the debtor's interest in the rent was totally cut off.").

Here, the assignment of rents clause in the Mortgage Agreement served the same residual purpose as in *In re S. Side House*; that is, "the assignment provides that the Rents revert back to the Debtor when the mortgage is satisfied.  Such language shows that the assignment was for additional security, because the only permissible use for rent is to pay down the mortgage, and once the mortgage is paid down the assignment is extinguished."  *In re S. Side House*, 474 B.R. at 411 (citation, alteration, and quotation marks omitted).  Section 1.15 of the Mortgage Agreement provides that "[t]his assignment and grant shall continue in effect until the Debt and all other obligations secured by this Mortgage are paid in full."  (Mortgage Agreement § 1.15.) Plaintiffs thus retained a reversionary interest in the rents throughout this litigation.  "In view of the fact that the debtor retains a residual interest in the rents assigned," *In re Constable Plaza Assocs., L.P.*, 125 B.R. at 103, Plaintiffs' interest in the rents was not fully extinguished by either the initiation of the Foreclosure Action or the appointment of the Receiver.  As a result, Plaintiffs had adequate standing at the beginning of and throughout this case, and Defendant's Motion To Vacate under Rule 60(b)(1) is denied.

2.  Rule 60(b)(4)

Defendant also moves to vacate the Summary Judgment Opinion under Rule 60(b)(4), which allows a Court to vacate a judgment if "the judgment is void."  Fed. R. Civ. P. 60(b)(4).  A

judgment is void under Rule 60(b)(4) of the Federal Rules of Civil Procedure "only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." *Grace v. Bank Leumi Tr. Co. of N.Y.*, 443 F.3d 180, 193 (2d Cir. 2006) (citation and quotation marks omitted). Defendant argues that the Court lacked subject matter jurisdiction after the Receiver was appointed. For the same reasons it denied Defendant's Motion under Rule 60(b)(1), as well as those discussed below, the Court disagrees.

"A party that has had an opportunity to litigate the question of subject matter jurisdiction may not . . . reopen that question in a collateral attack upon an adverse judgment." *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982) (citations omitted). "Contrary case law and commentators' views permitting any collateral attack on a prior judgment under Rule 60(b)(4) always involve a clear usurpation of power by a district court, and not an error of law in determining whether it has jurisdiction." *Nemaizer*, 793 F.2d at 65.

> Since a court has power to determine its own jurisdiction and, in fact, is required to exercise that power sua sponte, it does not plainly usurp jurisdiction when it merely commits an error in the exercise of that power. Rather, a court will be deemed to have plainly usurped jurisdiction only when there is a total want of jurisdiction and no arguable basis on which it could have rested a finding that it had jurisdiction. When a district court has not explicitly noted why it assumed jurisdiction over a suit, appellate courts will independently examine the record to determine whether a reasonable basis existed for the lower court's implicit finding that it had jurisdiction.

*Id.* (citations, italics, and quotation marks omitted); *see also Kirke v. Howe*, 173 F.3d 844 (2d Cir. 1999) (noting that examination of a court's finding that it had jurisdiction "is limited to whether a reasonable basis for the exercise of jurisdiction existed in the district court, and not whether the district court's jurisdictional determination was legally correct" (citing *Nemaizer*, 793 F.2d 58)); *Badian v. Brandaid Commc'ns Corp.*, No. 03-CV-2424, 2005 WL 1083807, at *1

(S.D.N.Y. May 9, 2005) (denying motion to vacate judgment under Rule 60(b)(4) where "there [was] at minimum an arguable basis to find subject matter jurisdiction").

There is no basis on which to find that the Court "plainly usurped jurisdiction." *Nemaizer*, 793 F.2d at 65. Jurisdiction was clearly proper at the outset of this matter for the reasons outlined above, and Defendant failed to raise a jurisdictional challenge at any point prior to the Court's entry of summary judgment in favor of Plaintiffs. Furthermore, as discussed, the appointment of a receiver does not cut off all property interests a mortgagor has in rents to a property in foreclosure. *See In re S. Side House, LLC*, 474 B.R. at 411 ("Under New York law, a borrower retains an interest in rents even after a foreclosure proceeding is initiated and a receiver is appointed to collect the rents."); *see also In re Constable Plaza Assocs., L.P.*, 125 B.R. at 102–03 ("Even if [the lender] had an absolute assignment, rather than a pledge which required further action, it would not follow that the debtor's interest in the rent was totally cut off. . . . [T]he debtor retains residual interest in the rents assigned.").

Plaintiff primarily relies on a state court case, *Chase Manhattan Bank v. Brown & E. Ridge Partners*, 672 N.Y.S.2d 206 (App. Div. 1998), for the proposition that the appointment of a receiver deprives a mortgagor of any right to collect rents on a property in foreclosure, and that a judgment for unpaid rents obtained by the mortgagor does not change the analysis. Notably, the court in *Chase Manhattan Bank* did not vacate the underlying judgment for unpaid rents for lack of jurisdiction; rather, one of the defendants moved for a judicial determination of the respective rights of the defendants and the receiver to the as-yet-unpaid judgment, and the court directed the judgment be paid to the receiver. *Id.* at 208–09. Importantly, the court observed that "[e]ntry of the judgment did not alter the substance of the obligation of [the tenant] to pay the accrued rent on its portion of the mortgaged premises or the right of the [defendant] to collect

it. Rather, the judgment is merely the old debt in a new form." *Id.* at 208 (citation and quotation marks omitted).

Here, Leeber has initiated bankruptcy proceedings, and Flushing Bank has appropriately sought to vindicate its rights to any debt owed in that proceeding. (*See* Amended Order.) The rights to the proceeds of any judgment issued in this Action may ultimately be litigated in that proceeding, but that does not provide this Court with any reason to vacate as void its Summary Judgment Opinion as between the Parties in this case. Defendant's Motion To Vacate the Court's Summary Judgment Opinion under Rule 60(b)(4) is therefore denied.

### 3. Rule 60(b)(6)

Defendant also moves to vacate the Summary Judgment Opinion under Rule 60(b)(6), which provides that a judgment may be vacated for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). "While Rule 60(b)(6) represents a grand reservoir of equitable power to do justice in a particular case, that reservoir is not bottomless and may only be tapped when the moving party demonstrates that extraordinary circumstances warrant relief." *Bey*, 2016 WL 462412, at *5 (citations, alteration, and quotation marks omitted). "Rule 60(b)(6) only applies if the reasons offered for relief from judgment are not covered under the more specific provisions of Rule 60(b)(1)–(5)." *Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000) (citation omitted); *see also Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 863 & n.11 (1988) ("Rule 60(b)(6) . . . grants federal courts broad authority to relieve a party from a final judgment . . . provided that the motion . . . is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)." (citation and quotation marks omitted)); *Kurfirst v. Birnbaum*, No. 95-CV-1587, 1996 WL 612489, at *2 (E.D.N.Y. Oct. 19, 1996) ("Subsections (1) and (6) are

mutually exclusive, so that any conduct which generally falls under the former cannot stand as a ground for relief under the latter.").

Defendant argues, without citing case law, that it is entitled to relief under this subsection because Plaintiffs failed to inform Defendant that the Receiver had been appointed, thereby preventing it from raising this challenge sooner, and because of "the possibility that Trustco Bank could be exposed to double liability due to this failure." (Def.'s Mem. 10.) In doing so, Defendant expressly reiterates its arguments under Rules 60(b)(1) and (b)(4), which the Court has rejected. (*See* Def.'s Mem. 5 ("Plaintiffs should have notified this Court that, as of March 23, 2018, the Receiver was the only party entitled to collect rents for the demised premises."), 6 ("Trustco Bank runs the risk of double payment due to Plaintiffs' improper pursuit of the instant [A]ction.").) Therefore, Defendant is not entitled to relief under Rule 60(b)(6), and its Motion To Vacate on this basis is denied.

### 4. Federal Diversity Jurisdiction

Finally, Defendant argues that the absence of diversity jurisdiction under 28 U.S.C. § 1332 serves as an independent ground for vacating the Summary Judgment Opinion and dismissing this Action. Federal courts may exercise diversity jurisdiction under 28 U.S.C. § 1332 "only if diversity of citizenship among the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizens of the same State." *Wisconsin Dep't of Corrs. v. Schacht*, 524 U.S. 381, 388 (1998) (italics omitted). Defendant argues that because Flushing Bank is the true party in interest, and because Defendant, Flushing Bank, and the Receiver are all citizens of New York, there is no complete diversity among the parties. (*See* Def.'s Mem. 11.)

Although the Court agrees that "[f]ailure of subject matter jurisdiction . . . is not waivable and may be raised at any time by a party or by the court sua sponte," *Oscar Gruss & Son, Inc. v.*

*Hollander*, 337 F.3d 186, 193 (2d Cir. 2003) (citation and italics omitted), because, as discussed above, the Court finds that Plaintiffs had sufficient interest in the rents at issue to maintain this Action, and because "there [was] at minimum an arguable basis to find subject matter jurisdiction," *Badian*, 2005 WL 1083807, at *1, the Court rejects Defendant's argument that the Action must be dismissed for lack of subject matter jurisdiction.

Moreover, even assuming that Flushing Bank or the Receiver has, at various points in time, each possessed an interest in the rents, they are not indispensable parties such that their mere existence destroys this Court's diversity jurisdiction. *See Audi of Smithtown, Inc. v. Volkswagen of Am., Inc.*, No. 08-CV-1773, 2009 WL 385541, at *4 (E.D.N.Y. Feb. 11, 2009) ("[A] necessary or indispensable party to a lawsuit, even where no specific cause of action is asserted against it, should be considered for diversity of jurisdiction purposes."). Notably, Defendant has not cited a single case in which a court dismissed a lawsuit to recoup unpaid rents after appointment of a receiver or the initiation of a foreclosure action based on lack of diversity jurisdiction.

In determining whether litigation may proceed in the absence of a necessary party, courts must consider:

> (1) whether the party sought to be joined has an interest in having a forum and whether an adequate alternate forum exists; (2) the interest of the party seeking joinder in avoiding "multiple litigation, or inconsistent relief, or sole responsibility for a liability that he shares with another;" (3) "the interest of the outsider whom it would have been desirable to join;" [and] (4) "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies."

*Randolph Found. v. Duncan*, No. 00-CV-6445, 2002 WL 32862, at *7 (S.D.N.Y. Jan. 11, 2002) (quoting *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 109–11 (1968)). "The major question is whether the court can render a decision which will not impair the rights of the absent party." *Id.* (citation and quotation marks omitted).

As discussed, the Mortgage Agreement clearly contemplated Leeber's right to continue to collect rents on behalf of Flushing Bank even upon default. (Mortgage Agreement § 1.15 ("From and after the occurrence of an Event of Default hereunder all Rents collected or received by Mortgagor shall be accepted and held for Mortgagee in trust.").) Both the language of the Mortgage Agreement and the caselaw in this circuit lead to the conclusion that Leeber was entitled to continue to collect rents on the Property until Flushing Bank took affirmative steps to enforce its right to do so, and that Flushing Bank is therefore not indispensable in a suit to collect those rents. *See NWL Properties, Inc. v. 401 E. 89th St. Owners, Inc.*, No. 95-CV-85, 1995 WL 221078, at *3 (S.D.N.Y. Apr. 12, 1995) ("[N]either [the mortgagee] nor the receiver are entitled to the funds collected between the notice of default and the appointment of the receiver." (citation omitted)); *In re Constable Plaza Assocs., L.P.*, 125 B.R. at 102 ("[The lender] was required to obtain the appointment of a receiver, which it did, in order to establish its right to collect the rents under the assignment of rents clause in the mortgage.").

Further, the Court agrees with Plaintiffs' argument that the Receiver was not authorized to collect rents due until he filed his oath and bond on July 17, 2018. (*See* Order Appointing Receiver 3 ("[B]efore entering upon his/her duties, the Receiver shall be sworn faithfully and . . . shall . . . file with the Clerk of the Court a bond . . . conditioned for the faithful performance of his/her duties as such Receiver."), 4–5 ("[A]ny person or entity holding any deposits or advances of rental as security under any lease or license agreement affecting space in the Premises affected by this action shall turn same over to the Receiver within five (5) days *after the Receiver shall have qualified*." (emphasis added)).) *See NWL Properties, Inc.*, 1995 WL 221078, at *2 ("*Once qualified*, a receiver is empowered to collect rents becoming due both after his appointment, and those remaining unpaid prior to his appointment." (emphasis added) (citations omitted)); *Chem.*

*Bank v. Evans & Hughes Realty, L.P.*, 613 N.Y.S.2d 239, 241 (App. Div. 1994) ("The receiver . . . had no authority to pursue rents that had already been legitimately paid to the owner before he became 'qualified' to collect them." (citation omitted)); *Morris v. Davis*, 219 N.Y.S.2d 279, 279 (Sup. Ct. 1961) ("The Receiver, although duly appointed, not having qualified until July 13, 1961[,] was not entitled to collect rents due and unpaid prior to said date." (citing *Dyker Heights Home for Blind Children v. Stolitzky*, 294 N.Y.S. 15 (App. Div. 1937))).  Although once qualified the Receiver may have been entitled to collect any as yet unpaid rents relating back to the date of his appointment, *see Gasser v. Infanti Int'l, Inc.*, 363 F. Supp. 2d 508, 511 (E.D.N.Y. 2005) ("[W]here . . . the Receiver files a duly approved bond, his rights relate back to the date when the order of his appointment was granted and entered, so as to defeat rights obtained by third parties in the interim."), on the day this Court's Summary Judgment Opinion issued he was not so qualified and therefore could not have been a party to this Action, much less an indispensable one for purposes of diversity jurisdiction.

Additionally, given the fact that Flushing Bank and the Receiver are prevented from seeking any recovery of the rents that are the subject of this Action due to the automatic stay under 11 U.S.C. § 362(a), (*see* Amended Order 2–3), they cannot be necessary or indispensable parties to this Action.  Indeed, they are not even permissible parties to this Action and are barred by the bankruptcy court from intervening.  (*See id.* at 2 ("[T]he automatic stay under section 362(d) of the Bankruptcy Code is not vacated with respect to [this Action], including, but not limited to the issues raised and the rents . . . ."); *id.* at 3 ("This order does not permit the State Court receiver to exercise any rights or control over [this Action] or the rents which are the subject of th[is] [A]ction, and . . . the automatic stay shall not preclude or impede [Leeber's] ability to continue prosecuting [this Action].").)  *See In re Constable Plaza Assocs., L.P.*, 125

B.R. at 103 ("A custodian with knowledge of a bankruptcy case, such as the receiver in this case, has an absolute duty under 11 U.S.C. § 543 to refrain from any further action in the administration of property of the debtor's estate . . . ."); *In re Carmania Corp., N.V.*, 154 B.R. 160, 164 (S.D.N.Y. 1993) ("In the case at hand, enforceability [of the lender's right to collect rents] under state law was cut off by the bankruptcy filing.  That is, the Bank had begun foreclosure proceedings and had requested the appointment of a receiver to collect the rents when the Debtor filed under Chapter 11, automatically staying foreclosure and appointment of the receiver.").  The Amended Order, which allows Plaintiffs to proceed with this Action but prevents Flushing Bank or the Receiver from intervening, aligns with the purpose of the automatic stay under 11 U.S.C. § 362(a), which "is to preserve the property of the debtor's estate for the benefit of all the creditors."  *In re Taub*, 427 B.R. 208, 220–21 (E.D.N.Y. 2010) (citation and quotation marks omitted).  Because the automatic stay's primary purpose is to preserve a bankrupt's estate for the benefit of all creditors, courts consistently hold that actions brought *by* a debtor are not subject to the automatic stay.  *See Koolik v. Markowitz*, 40 F.3d 567, 568 (2d Cir. 1994) (per curiam) ("This Court has recognized that the automatic stay is applicable only to proceedings 'against' the debtor." (citation omitted)); *see also Martin-Trigona v. Champion Fed. Sav. & Loan Ass'n*, 892 F.2d 575, 577 (7th Cir. 1989) ("[T]he automatic stay is inapplicable to suits *by* the bankrupt . . . .  This appears from the statutory language, which refers to actions 'against the debtor,' and to acts to obtain possession of or exercise control over 'property of the estate,' and from the policy behind the statute, which is to protect the bankrupt's estate from being eaten away by creditors' lawsuits and seizures of property before the trustee has had a chance to marshal the estate's assets and distribute them equitably among the creditors." (citations omitted)); *Carley Capital Grp. v. Fireman's Fund Ins. Co.*, 889 F.2d 1126, 1127 (D.C.

Cir. 1989) (finding § 362(a) "does not address actions brought *by* the debtor which would inure to the benefit of the bankruptcy estate"); *Vitranschart, Inc. v. Levy*, No. 00-CV-3618, 2000 WL 1239081, at *5 (S.D.N.Y. Aug. 31, 2000) ("[T]he automatic stay provision applies only to claims 'against the debtor' and not to claims brought by the debtor against other parties."); *Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 499 (E.D.N.Y. 1998), *aff'd*, 205 F.3d 1327 (2d Cir. 2000) ("The § 362 stay provision 'does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate.'" (quoting *Carley Capital Group*, 889 F.2d at 1127)); *In re Fin. News Network Inc.*, 158 B.R. 570, 573 (S.D.N.Y. 1993) ("Since [§] 362 mandates a stay only of litigation 'against the debtor' designed to seize or exercise control over the property of the debtor, it does not prevent entities against whom the debtor proceeds in an offensive posture—for example, by initiating a judicial or adversarial proceeding—from 'protecting their legal rights.'" (quoting *Martin-Trigona*, 892 F.2d at 577) (citation omitted)).

As a creditor of Leeber, Flushing Bank's relief lies with the bankruptcy court, which is an "adequate alternative forum" in which the bank can protect its interest.[1] Thus, even if the Receiver was entitled to collect rents on the Property upon qualifying, the lease is now part of the bankruptcy estate and the bankruptcy court has expressly ordered that the Receiver may not seek to collect the underlying rents. (*See* Amended Order 1–2.)

Finally, both Flushing Bank and the Receiver, despite full awareness of the circumstances underlying this Motion, (*see* Pls.' Decl. Ex. 1), failed to intervene in this Action, and Defendant failed to raise any argument based on Plaintiffs' lack of interest in the litigation until after

---

[1] The Court rejects Defendant's argument that the bankruptcy filing is irrelevant because the Property was transferred to the Trust on June 6, 2012. (Def.'s Reply 10–13.) Plaintiffs have demonstrated that Leeber retained the rights to the lease between Leeber and Defendant, (*see* Pls.' Sur-Reply Decl. ¶¶ 5–8; Assignment of Lease), and it is the rents due under the lease, and not the title to the real property, that is at issue in this Action.

summary judgment was granted, which weighs against finding that either Party's interest in its outcome, and inability to protect that interest, makes them indispensable. Further, the interest of the courts and the public in a "complete, consistent, and efficient settlement" of this matter, *Randolph Found.*, 2002 WL 32862, at \*7, is better served by maintaining the fully and fairly litigated judgment, and allowing the bankruptcy court to address Flushing Bank's interest in the Property, than by re-opening this matter to address arguments that could have been raised at any time.

Accordingly, because the Court finds that Flushing Bank and the Receiver are not indispensable parties such that they must be considered in determining whether diversity jurisdiction exists, Defendant's Motion To Vacate and dismiss this case for lack of subject matter jurisdiction is denied.

## III. Conclusion

For the foregoing reasons, Plaintiffs' Motion to Vacate the Court's June 4, 2018 Summary Judgment Opinion is denied. The Clerk of Court is respectfully directed to terminate the pending Motion. (Dkt. No. 92.) Plaintiffs should submit a revised calculation of attorneys' fees and damages in accordance with this Opinion and a proposed judgment within 14 days.

SO ORDERED.

DATED:    February **2**, 2019
          White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE